UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CIVIL ACTION

| | |
|---|---|
| PHILLIP A. KAWA, <br><br> Plaintiff, <br><br> v. <br><br> VERIZON COMMUNICATIONS INC., <br><br> Defendant. | Civil Action No. 04-11952 MLW |

## DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, defendant submits this statement of undisputed material facts in support of its motion for summary judgment.

### A.  Phillip and Theresa Kawa

1. Plaintiff Phillip Kawa is the husband of Theresa Kawa, a former non-management employee of defendant Verizon Communications Inc. Ms. Kawa began working for a Verizon predecessor company on September 20, 1973. (Ex. A10, at V00377).

2. As a non-management employee working for a plan participating company, Ms. Kawa was eligible to accrue benefits under the Verizon Plan. (Ex. A6, §§ 2.27, 2.47, 3.1, at V00016, V00022, V00027). Plaintiff is Ms. Kawa's beneficiary under the Verizon Plan. (Ex. A6, § 2.12, at V00014; Pl.'s Compl. ¶ 4).

3. During her employment, Ms. Kawa was a member of the International Brotherhood of Electrical Workers ("IBEW"), a union that represents Verizon employees in New England. (Ex. A8, at V00345).

4.  On July 17, 2002, Ms. Kawa volunteered to participate in the Enhanced Income Protection Plan ("EIPP"), a voluntary severance program offered by Verizon to New England IBEW-member employees. (*Id.*). Verizon accepted Ms. Kawa for EIPP participation on August 14, 2002. (Ex. A4, at V00328). Under the terms of the acceptance, Ms. Kawa's last day on Verizon's payroll was to be August 17, 2002. (*Id.*; Ex. A8, at V00345).

5.  Despite her August 17, 2002 scheduled off-payroll date, Ms. Kawa remained on Verizon's active payroll until her death on February 23, 2003. (Ex. A9, at V00358-59; Ex. B, Lonero Decl., ¶ 5).

6.  Verizon has a long-standing unwritten policy that New England IBEW-member employees who accept severance under an income protection program, but who are receiving short-term disability payments as of their scheduled severance date, remain on Verizon's active payroll until they exhaust their short-term disability benefits. (Ex. A9, at V00359; Ex. B., Lonero Decl., ¶ 4).

7.  Ms. Kawa began receiving short-term disability benefits from Verizon on May 5, 2002. (Ex. A4, at V00327; Ex. A10, at V00378). Ms. Kawa continued to receive these benefits until her death. (*Id.*).

8.  On February 10, 2003, Theresa Kawa began her pension commencement process on Verizon's "Your Benefits Resources" website, which is administered for Verizon by Hewitt Associates. (Ex. A2, at V00338; Ex. C, Fish Decl., ¶¶ 6-7, Ex. C2, at V00353). Ms. Kawa elected a last day on Verizon's payroll of May 4, 2003, and an Annuity Starting Date of May 5, 2003. (Ex. C, Fish Decl., ¶¶ 8-9; Ex. C2, at V00353).

**B.   Theresa Kawa's Verizon Pension Benefit**

9.  At the time of her death, Theresa Kawa was eligible to receive a service pension under the Verizon Plan. (Ex. A6, § 4.1, ex. IV, at V00028, V00094-V00100).

2

10. Benefits payments under the Verizon Plan commence on a participant's Annuity Starting Date. (Ex. A6, § 2.4, at V00010; Ex. A5, at V00321). According to the terms of the plan, "[u]nless an earlier Annuity Starting Date has been elected by the Participant, payment of a Service Pension shall commence on the *later of* the Participant's Normal Retirement Age or the day following his or her Separation From Service." (Ex. A6, § 4.1(b), at V00028 (emphasis added)). For employees who have participated in the Plan for at least five years, the Plan defines "Normal Retirement Age" as age 65. (*Id.*, § 2.44, at V00022).

11. Certain plan participants may also elect an earlier Annuity Starting Date. (Ex. A5, at V00321). One such group of participants consists of IBEW-New England employees who left Verizon's employment between March 1, 2001 and January 1, 2004, and were eligible for either a service pension or a deferred vested pension as of the date of their separation from service. (Ex. A6, § 6.11(a)(1), at V00050).

12. Because Theresa Kawa was eligible for a service pension, under this Verizon Plan provision she could elect to have her pension "begin on an Annuity Starting Date that is the day following . . . her Separation From Service." (*Id.*, § 6.11(b), at V00051).

13. The Verizon Plan also provides a coordination rule for participants who are eligible to commence a pension, but who also are receiving short-term disability benefits. (Ex. A6, §§ 4.3(e), 6.11(c)(2)(F), at V00031, V00053).

14. Under this coordination rule, Theresa Kawa could elect from one of two options regarding her Annuity Starting Date. (Ex. A5, at V00321-22). First, she could choose to separate from service with an Annuity Starting Date of August 18, 2002, or any later date prior to the exhaustion of her disability benefits. (Ex. A6, § 6.11(c)(2)(F)(i), at V00053). Election of this option would require Theresa Kawa to discontinue receipt of her short-term disability

3

benefits as of her Annuity Starting Date. (*Id.*, § 4.3(e), at V00031). Alternatively, she could select as an Annuity Starting Date the day following exhaustion of her short-term disability benefits. (*Id.*, § 6.11(c)(2)(F)(ii), at V00053). Because her disability benefits were due to end on May 4, 2003, Theresa Kawa's Annuity Starting Date under this option would be May 5, 2003.

15. Under the Verizon Plan, election of an Annuity Starting Date initiates the benefits commencement process. (*See generally* Ex. A7, at V00289). The Summary Plan Description explains this process to participants, stating that: "[i]n general, your pension benefits will not be paid automatically after you separate from active service." (Ex. A7, at V00289). "You should apply for your benefits a few months prior to your planned benefit starting date. You must call the benefits administrator to request the necessary forms. It is recommended that you complete and return the forms as soon as possible, but no sooner than 90 days before the date you want payments to begin." (*Id.*).

16. Following a participant's election of an Annuity Starting Date, the Verizon Plan's Benefit Administrator is generally required to provide the pension application, and a notice informing the participant of her pension options, within 30 to 90 days prior to the participant's selected Annuity Starting Date. (Ex. A6, § 6.3, at V00047-48). This application includes certain mandatory paperwork that must be completed by the participant prior to pension commencement. (Ex. A5, at V00322). This paperwork includes an election of the form of benefit payment, and a form for spousal consent to a method of payment other than a 50-percent joint and survivor annuity, the automatic form of pension payment under the Verizon Plan. (Ex. A6, §§ 6.2, 6.4-6.5, at V00047, V00048-49).

17. Because Ms. Kawa selected an Annuity Starting Date on May 5, 2003, the Benefit Administrator was required to provide Ms. Kawa with the benefit commencement

paperwork between 30 and 90 days prior to May 5, 2003. (Ex. A6, § 6.3, at V00047-48). According to Verizon's records, this paperwork was scheduled to be mailed to Ms. Kawa on March 10, 2003 – 56 days prior to May 5, 2003. (Ex. C, Fish Decl., ¶¶ 11, 13; Ex. C3, at V00354).

18. Because Ms. Kawa had neither received nor completed this paperwork at the time of her death, she had not completed the benefit commencement process. (Ex. A6, § 6.12, at V00053).

### C.  Phillip Kawa's Death Benefit

19. Article VII of the Verizon Plan governs benefit determinations for participants who die before their Annuity Starting Date. (Ex. A6, §§ 7.1, 7.2, at V00053-60; *see also* Ex. A7, at V00291-92). Under this Article, participants who die prior to their Annuity Starting Date are not entitled to have a benefit paid to their estate. (Ex. A6, §§ 7.1(c), 7.2(c), at V00054-60). However, their beneficiaries are entitled to receive a death benefit from the Verizon Plan. (*Id.*, §§ 7.1(c)(1), 7.2(c)(1), at V00055, V00057-58).

20. Under Article VII, a surviving beneficiary is entitled to receive the survivor portion of a 65-percent joint and survivor annuity based on the particpant's accrued benefit, or a lump sum benefit equal to the actuarial equivalent value thereof. (Ex. A6, §§ 7.1(c)(4), 7.2(c)(4), at V00056, V00059).

21. If a participant dies while on Verizon's active payroll, and prior to her Annuity Starting Date, her beneficiary's benefit is calculated under Verizon Plan § 7.1(c)(4). (Ex. A6, § 7.1(c)(4), at V00056). Under section 7.1(c)(4), a beneficiary is entitled to receive either the survivor portion of a 65-percent joint and survivor annuity, or a lump sum equal to the actuarial equivalent present value of that annuity. (*Id.*). This annuity is unreduced for early commencement. (*Id.*)

22. If a participant dies after separation from service, but prior to her Annuity Starting Date, her beneficiary's benefit is calculated under Verizon Plan section 7.2(c)(4). (Ex. A6, § 7.2(c)(4), at V00059-60). The benefit under section 7.2(c)(4) is also either the survivor portion of a 65-percent joint and survivor annuity, or a lump sum equal to the actuarial equivalent present value of that annuity. (*Id.*). However, this annuity may be reduced for early commencement. (*Id.*)

23. Subsequent to Ms. Kawa's death, plaintiff commenced receipt of a 65%-percent joint and survivor annuity, effective February 24, 2003 and unreduced for early commencement, as Ms. Kawa's surviving beneficiary. (Ex. A5, at V00320-21; Ex. C1, at V00409).

D.   **The Verizon Pension Plan for New York and New England Associates**

24. The Verizon Plan contains an internal benefit claims review procedure for participants and beneficiaries who contend they are owed benefits under the terms of the Plan. (Ex. A6, §§ 14.4, 14.5, at V00077-78).

25. Under this procedure, a participant or beneficiary is required to submit his claim for benefits in writing to the Verizon Claims Review Unit, explaining why he believes he is entitled to receive particular retirement benefits, and providing any documentation that he believes supports his claim. (*Id.*, §§ 2.16, 14.4, 14.5, at V00014, V00077-78; Ex. A, Fish Decl., ¶ 3).

26. If this initial claim is partly or completely denied, the participant or beneficiary may file an appeal with the Verizon Claims Review Committee. (*Id.*, §§ 2.5, 14.4, 14.5, at V00010-11, V00077-78).

27. The Verizon Plan confers upon the Claims Review Unit and the Claims Review Committee "full discretion . . . to interpret the Plan and resolve ambiguities therein."

6

(*Id.*, § 14.4, at V00077). This power includes the discretion "to determine whether a claimant is eligible for benefits," and "to decide the amount, form, and timing of benefits." (*Id.*).

### E.     Plaintiff Phillip Kawa's Administrative Benefits Claim

28. In May 2003, plaintiff made use of the administrative claims review procedure by filing a benefits claim with the Verizon Claims Review Unit. (Ex. A1, at V00341-44). Plaintiff amended his claim in June 2003, and submitted further documentation in support of his claim. (Ex. A2, at V00336-40). Plaintiff challenged Verizon's determination that, under the terms of the Verizon Plan, he was entitled as Theresa Kawa's beneficiary to the survivor portion of a 65-percent joint and survivor annuity. (Ex. A1, at V00344; Ex. A2, at V00338). Plaintiff asserted that because Ms. Kawa had begun the pension commencement process on Verizon's "Your Benefits Resources" website prior to her death, Ms. Kawa's estate was entitled to the lump sum value of her accrued pension benefit. (*Id.*). Plaintiff thus demanded payment "of the full cashout pension to [Ms. Kawa's] estate for the unreduced amount that Verizon agreed to on the date the contract was made." (*Id.*).

29. After obtaining and reviewing information relevant to plaintiff's claim, the Verizon Claims Review Unit denied plaintiff's request. (Ex. A3, at V00396-V00402). In a July 29, 2003 letter, the Claims Review Unit explained that because Theresa Kawa's separation from service occurred due to her death, plaintiff's death benefit as Ms. Kawa's beneficiary was properly calculated as the survivor portion of a 65-percent joint and survivor annuity. (*Id.*).

30. Specifically, the Claims Review Unit's letter explained that under Article VII of the Verizon Plan, plaintiff was eligible to receive a monthly annuity equal to the amount plaintiff would have received following Theresa Kawa's death if Ms. Kawa "had commenced an unreduced Service Pension on the day following her Separation From Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity." (*Id.*, at V00401; Ex. A6, § 7.1(c), at V00054-

56). The letter also clarified that this benefit was equal to a survivor annuity of $799.63 per month. (Ex. A3, at V00401).

### F. Phillip Kawa's Appeal to the Verizon Claims Review Committee

31. On August 5, 2003, plaintiff appealed the denial of his request for additional benefits. (Ex. A4, at V00327-35). In his appeal, he raised a new argument as to why he should be entitled to a full lump sum pension benefit. (*Id.*).

32. In the appeal letter, Plaintiff contended the Claims Review Unit had incorrectly concluded that Theresa Kawa was on the Verizon payroll as of the date of her death. (*Id.*, at V00327). Plaintiff asserted that "the 65-Percent Reduced Pension rule as defined in Article VII does not apply because as previously stated, [Kawa] was not on the payroll of the Participating Company (Verizon) and her separation was not due to her death." (*Id.*).

### G. The Denial of Phillip Kawa's Administrative Appeal

33. On November 10, 2003, the Verizon Claims Review Committee denied plaintiff's appeal. In a six-page decision letter, the Committee reviewed both the assertions raised in plaintiff's initial claim for benefits, and the new claim raised in plaintiff's appeal letter. (Ex. A5, at V00320-25).

34. First, the Committee analyzed whether Theresa Kawa was entitled to receive a full lump sum pension prior to her death. (*Id.*, at V00321-23). The Committee determined that Ms. Kawa was not entitled to receive a lump sum benefit because she died prior to her Annuity Starting Date. (*Id.*). The Committee further determined that Ms. Kawa had not completed the benefit commencement process before the date of her death. *(Id.)*.

35. Second, the Committee Second, the Committee considered plaintiff's right to a death benefit as Ms. Kawa's surviving beneficiary. (*Id.*, at V00323-25). The Committee determined that because Theresa Kawa was an active Verizon employee as of the date of her

8

death, Plaintiff's death benefit was correctly calculated under Article VII of the Verizion Plan as the survivor portion of a 65-percent joint and survivor annuity, unreduced for early payment. (*Id.*; Ex. A6, § 7.1(c), at V00054-56).

/s/ Frederick G. Sandstrom
Frederick G. Sandstrom (admitted *pro hac vice*)*
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
202-662-5000
202-778-5499 (Facsimile)

Attorney for Defendant Verizon Communications Inc.

* Admitted to the Bar of the State of Illinois. District of Columbia admission pending. Practice supervised by principals of the firm.

September 30, 2005