# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

PHILLIP A. KAWA, )
)
Plaintiff, )
)
v. )    Civil Action No. 04-11952 MLW
)
VERIZON COMMUNICATIONS INC., )
)
Defendant. )

## DECLARATION OF DAN FISH

I, DAN FISH, hereby declare:

1.  I am an employee of Hewitt Associates LLC ("Hewitt"). Hewitt is a global provider of outsourcing and consulting services. As part of its outsourcing services, Hewitt provides administrative services to employers in support of their benefits plans including pension plans. I am part of a team at Hewitt responsible for providing administrative services in support of Hewitt's client Verizon Communications Inc.'s ("Verizon") ERISA benefit plans.

2.  I am Project Manager of Hewitt's Verizon Claims Review Unit, where I have worked since February 2001. The Verizon Claims Review Unit assists Verizon in operating and maintaining several of the company's pension plans, including the Verizon Pension Plan for New York and New England Associates. The Verizon Claims Review Unit is responsible for numerous tasks, including responding to employees' requests for information and for responding to participants' and beneficiaries' claims for benefits based on guidance provided by Verizon. In my position, I am responsible for overseeing and executing various projects handled by the Verizon Claims Review Unit.

3.   Hewitt provides administrative services to Verizon in support of Verizon Pension Plan for New York and New England Associates.  This Plan contains a claims review procedure for participants and beneficiaries who contend they are owed benefits under the terms of the Plan.  Under this procedure, a participant or beneficiary is required to submit his claim for benefits in writing to the Verizon Claims Review Unit, explaining why he believes he is entitled to receive particular retirement benefits, and providing any documentation that he believes supports his claim.  If this claim is partly or completely denied, the participant or beneficiary may file an appeal with the Verizon Claims Review Committee.

4.   One individual who made use of this procedure is Phillip Kawa, the surviving spouse and beneficiary of Theresa Kawa, a former Verizon employee.  Mr. Kawa initiated his benefits claim in May 2003, and his final appeal was denied on November 10, 2003.

5.   The Verizon Benefits Center keeps copies of claims and appeals files generated in connection with claims for benefits.  These files consist of the documents submitted by the participant or beneficiary in the claims process, along with materials generated or relied upon by the plan fiduciary in resolving the claim for benefits.  I attest that the following documents, exhibits 1 through 10, are the complete claim and appeals files generated by the Verizon Claims Review Unit in connection with Mr. Kawa's claim.  These files comprise the complete administrative record provided by Hewitt to the Verizon Claims Review Committee.

6.   Exhibit 1 is a true and genuine copy of Phillip Kawa's claim initiation form, signed and dated May 13, 2003, received by Hewitt.  This is the document by which Mr. Kawa asserted his claim for additional benefits.

7.   Exhibit 2 is a true and genuine copy of a second claim initiation form submitted by Phillip Kawa, signed and dated June 24, 2003, received by Hewitt.  This document

mirrors Mr. Kawa's first claim initiation form, but attaches additional documentation in support of his benefit claim.

8.  Exhibit 3 is a true and genuine copy of the letter from  Verizon Claims Review Unit, dated July 29, 2003, denying Mr. Kawa's benefit claim.  This letter set forth the reasons why Mr. Kawa's claim could not be granted.

9.  Exhibit 4 is a true and genuine copy of Phillip Kawa's August 5, 2003 letter to the Verizon Claims Review Committee appealing the denial of his benefit claim.

10. Exhibit 5 is a true and genuine copy of the Claims Review Committee's letter, dated November 10, 2003, denying Mr. Kawa's appeal.

11. Exhibit 6 is a real and true copy of the Verizon Pension Plan for New York and New England Associates, with amendments, provided by Verizon to Hewitt.

12. Exhibit 7 is a real and true copy of the Summary Plan Description for the Verizon Pension Plan for New York and New England Associates provided by Verizon to Hewitt.

13. Exhibit 8 is a true and genuine copy of Theresa Kawa's IBEW-New England Enhanced Income Protection Plan ("EIPP") Employee Volunteer form, dated July 17, 2002.

14. Exhibit 9 consists of workflows for both Phillip and Theresa Kawa.

15. Exhibit 10 consists of the agenda item, and attachments, for the Verizon Claims Review Committee's October 21, 2003 consideration of Phillip Kawa's benefit appeal.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

September 28, 2005

/s/ Dan Fish

Dan Fish

# EXHIBIT A1



**Claim Initiation Form**

Statement Date  05-07-2003

001390
PHILLIP A. KAWA
61 Curtis Circle
E Weymouth MA  02189

To make an official claim under Verizon Communications, Inc.'s "claims procedures," as defined under Section 503 of the Employee Retirement Income Security Act of 1974 (ERISA), you must complete and return all original pages of this form, including any documentation you feel supports your claim, to:

Verizon Claims Review Unit
Post Office Box 1438
Lincolnshire, IL  60069-1438

## Claim Information

Employee    PHILLIP A. KAWA

Employee Social Security Number    *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*

This claim is for:

Claimant Name    *KAWA          THERESA        A*
                  Last Name      First Name     Middle Initial

Claimant Address    *61 Curtis Circle  Weymouth MA 02189*
                     City             State      ZIP Code

Claimant Social Security Number    *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*

delivered by **Hewitt**

V00341

  0072230095  V8730-001390  

Claim Initiation Form                                                    Page 2

*This claim relates to Verizon Communications, Inc.'s:*

☑ Pension Plan
☐ Savings Plan
☐ Medical Plan
☐ Dental Plan
☐ Short–Term/Sickness Disability Plan
☐ Long–Term Disability Plan
☐ Life Insurance Plan
☐ Other  _____
                *Benefit Plan Name*

## Benefit or Coverage Claimed

Please provide a description of the nature of your claim (e.g., eligibility for benefits, determination of service, etc.) and a statement of the reasons why you think you are entitled to such coverage or benefit. Also, enclose with this form any documentation you feel supports your claim. **Please do not submit any original documentation. Documents submitted for claim processing cannot be returned to you.** If you need additional space, attach a separate piece of paper.

THIS FORM IS AN APPEAL REGARDING VERIZONS Reduction IN THERESA A. KAWA'S CASH OUT PENSION AMOUNT. PLEASE SEE THE ATTACHED LETTER FOR DETAILS

V00342

0072230095  V8730–001390

Claim Initiation Form                                                      Page 3

# Claims Procedure

The Summary Plan Description for the Plan under which you are filing this claim describes the claims and appeals procedure.

Normally, the Verizon Claims Review Unit will process your claim within a reasonable period of time after receiving this form. If the Verizon Claims Review Unit needs additional time to process your claim, you will receive a written notice of the need for a longer processing period, the reasons for the longer period, and a date on which you can expect your claim to be processed. You will receive written notice of a longer processing period within the original time period the Verizon Claims Review Unit had to process the claim under ERISA.

The Verizon Claims Review Unit will send you a written notice of its determination of your claim. You will receive this written notice within the time period allowed under ERISA. If the Verizon Claims Review Unit denies your claim, the written notice will provide you with the information required by ERISA. Refer to the Summary Plan Description for the plan under which you are making this claim for information on how to appeal a claim denial.

# Claimant Acknowledgment and Signature

By my signature below, I formally file a claim under the plan identified above. I further acknowledge by my signature that I have reviewed and understand the information contained in this form, the information contained in the summary plan description for the aforementioned plan, and any other plan–related information previously provided to me. I also understand that any rights under such plan are governed by the claims procedure of the plan.

*Philip A Kenwa*                           *May 13, 2003*
_Claimant Signature_                        _Date_

# For More Information

If you need additional information, access the *Your Benefits Resources*™ Web site at http://resources.hewitt.com/verizon or contact the Verizon Benefits Center by calling Verizon Benefits Connect at 1–866–998–8777. The Interactive Voice Response (IVR) system is available 24 hours a day, Monday through Saturday and from 1:00 p.m. to midnight, Eastern time, on Sunday. Verizon Benefits Center representatives are available between 8:00 a.m. and 6:00 p.m. , Eastern time, Monday through Friday.

*Your Benefits Resources*™ is a trademark of Hewitt Associates LLC.

V00343

Phillip Kawa
61 Curtis Circle
East Weymouth, MA 02189-3067


Verizon Claims Review Unit
Post Office Box 1438
Lincolnshire, IL 60069-1438

May 13, 2003


Dear Sir or Madam,

On behalf of the Estate of Theresa Kawa I am appealing the decision to reduce Theresa's pension to the 65% amount on the grounds that Theresa entered into a binding retirement agreement as presented online by the Verizon website Hewitt.Com.

Theresa, in my presence, completed the Hewitt.com application on February 10, 2003. When Theresa clicked the <u>RETIRE NOW</u> link and filled in the required information we believed that she entered into a binding agreement with Verizon and also irrevocable by Verizon. We were never informed on the Hewitt site or Theresa's manager that any further action would be required by Theresa in order to retire.

I believe that the 65% reduction rate is unfair and not applicable because a contract was made between Theresa and Verizon. An offer and acceptance was completed through the Hewitt.com website on February 10, 2003.

I am requesting that Verizon review this matter and arrange to make payment of the full cashout pension to Theresa's estate in the amount that Verizon agreed to on the date the contract was made.

Sincerely,

*Phillip A. Kawa*

Phillip A. Kawa

V00344

# EXHIBIT A2



# Claim Initiation Form

Statement Date 05-07-2003

001390
PHILLIP A. KAWA
61 Curtis Circle
E Weymouth MA   02189

To make an official claim under Verizon Communications, Inc.'s "claims procedures," as defined under Section 503 of the Employee Retirement Income Security Act of 1974 (ERISA), you must complete and return all original pages of this form, including any documentation you feel supports your claim, to:

Verizon Claims Review Unit
Post Office Box 1438
Lincolnshire, IL  60069-1438

## Claim Information

Employee     PHILLIP A. KAWA

Employee Social Security Number    *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*

This claim is for:
Claimant Name    *KAWA        THERESA        A*
                           Last Name             First Name          Middle Initial
Claimant Address    *61 Curtis circle Weymouth MA 02189*
                             City                   State        ZIP Code
Claimant Social Security Number    *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*

delivered by **Hewitt**

0072230095  V8730-001390



V00336

Claim Initiation Form

*This claim relates to Verizon Communications, Inc.'s:*

- ☑ Pension Plan
- ☐ Savings Plan
- ☐ Medical Plan
- ☐ Dental Plan
- ☐ Short–Term/Sickness Disability Plan
- ☐ Long–Term Disability Plan
- ☐ Life Insurance Plan
- ☐ Other _____
       *Benefit Plan Name*

## Benefit or Coverage Claimed

Please provide a description of the nature of your claim (e.g., eligibility for benefits, determination of service, etc.) and a statement of the reasons why you think you are entitled to such coverage or benefit. Also, enclose with this form any documentation you feel supports your claim. **Please do not submit any original documentation. Documents submitted for claim processing cannot be returned to you.** If you need additional space, attach a separate piece of paper.

This FORM is AN APPEAL REGARDING
VERIZONS Reduction in THERESA A.
KAWA's CASH OUT PENSION AMOUNT.
PLEASE SEE THE ATTACHED LETTER
FOR DETAILS AND Supporting
Document

*Phil Kawa*

0072230095  V8730-001390

Phillip Kawa
61 Curtis Circle
East Weymouth, MA 02189-3067

Verizon Claims Review Unit
Post Office Box 1438
Lincolnshire, IL 60069-1438

June 24, 2003

RETIREMENT PENSION APPEAL

Dear Sir or Madam,

On February 23, 2003 my wife and Verizon employee, Theresa Kawa died from complications as a result of a bone marrow transplant for the disease Plasma Cell Leukemia.

On behalf of the Estate of Theresa Kawa I am appealing Verizons decision to reduce Theresa's pension to the 65% amount on the grounds that Theresa entered into a binding retirement agreement as presented online by the Verizon website Hewitt.Com prior to her death.

On February 10, 2003 Theresa, in my presence and assistance completed the Hewitt.com retirement application a laptop computer in her hospital room.
When Theresa clicked the <u>RETIRE NOW</u> link and filled in the required information she believed that she entered into a binding agreement with Verizon and also irrevocable by Verizon. Although a later date for actual retirement was selected Theresa believed that her "papers were in" and her family would be protected from reductions in the event that anything would happen to her. We were never informed on the Hewitt site or Theresa's manager that any further action would be required by Theresa in order to retire.
Theresa went into a seizure on February 16, 2003 and did not recover.

Reducing Theresa's retirement to 65% is not applicable because a contract was made between Theresa and Verizon on the Hewitt.com website. The offer to retire was made by Verizon. Theresa completed acceptance on the Hewitt.com website February 10, 2003.

A copy of the Hewitt.com web page is enclosed as a supporting document.

I am requesting that Verizon review this matter and arrange to make payment of the full cashout pension to Theresa's estate for the unreduced amount that Verizon agreed to on the date the contract was made.

Sincerely,

Phillip A. Kawa

V00338

Your Benefits Resources - Pension

Page 1 of 1

*This option to complete The retirement process was selected Feb 10 2003*

## Your Benefits Resources

**verizon**    LOG OFF

How to Print This Page

### Pension

**Topics**

Health Insurance...

Pension

Personal Data/
Beneficiaries

Life Events

Benefits Manual

Other Sites

**Tools**

Your Secure Mailbox

Your Recent
Requests

Your Favorites

Contact Us

**Plan Ahead for Retirement**

- Project Your Retirement
  Income
- View Your Saved
  Projections
- Your Key Benefit
  Payment Dates

**Learn More**

- Benefits Manual -
  Pension
- How to Choose the Best
  Form of Payment

**Get Ready to Retire**

- Preparing to Retire in the
  Next Few Years
- Understanding Social
  Security Retirement
  Benefits

- How Benefits Are
  Calculated
- Current and Future
  Interest Rates

**Retire**

- Retirement Checklist
- Retire Now
- Change or Cancel Your
  Retirement

- Visit the Education Center
  on Harrisdirect®

About the Site | Top Questions | Contact Us | Legal Information | Privacy Statement | Log Off
Health Insurance... | Pension | Personal Data/Beneficiaries | Life Events | Other Sites

Copyright © 1997-2003 Hewitt Management Company LLC

https://lb32.resources.hewitt.com/sg1dgp7/tbiappt200/TbiaTrnsPage?nodeId=PensionPage&u=1053356441165&llId=global&l...    5/19/2003

V00339

Claim Initiation Form                                                                    Page 3

## Claims Procedure

The Summary Plan Description for the Plan under which you are filing this claim describes the claims and appeals procedure.

Normally, the Verizon Claims Review Unit will process your claim within a reasonable period of time after receiving this form. If the Verizon Claims Review Unit needs additional time to process your claim, you will receive a written notice of the need for a longer processing period, the reasons for the longer period, and a date on which you can expect your claim to be processed. You will receive written notice of a longer processing period within the original time period the Verizon Claims Review Unit had to process the claim under ERISA.

The Verizon Claims Review Unit will send you a written notice of its determination of your claim. You will receive this written notice within the time period allowed under ERISA. If the Verizon Claims Review Unit denies your claim, the written notice will provide you with the information required by ERISA. Refer to the Summary Plan Description for the plan under which you are making this claim for information on how to appeal a claim denial.

## Claimant Acknowledgment and Signature

By my signature below, I formally file a claim under the plan identified above. I further acknowledge by my signature that I have reviewed and understand the information contained in this form, the information contained in the summary plan description for the aforementioned plan, and any other plan-related information previously provided to me. I also understand that any rights under such plan are governed by the claims procedure of the plan.

_Phillip A. Karm_                                      _6/27/03_
Claimant Signature                                       Date

## For More Information

If you need additional information, access the *Your Benefits Resources*™ Web site at **http://resources.hewitt.com/verizon** or contact the Verizon Benefits Center by calling Verizon Benefits Connect at **1–866–998–8777**. The Interactive Voice Response (IVR) system is available 24 hours a day, Monday through Saturday and from 1:00 p.m. to midnight, Eastern time, on Sunday. Verizon Benefits Center representatives are available between 8:00 a.m. and 6:00 p.m. , Eastern time, Monday through Friday.

*Your Benefits Resources*™ is a trademark of Hewitt Associates LLC.



# EXHIBIT A3

5

Verizon Benefits Center

**veri_on**

100 Half Day Road
PO Box 1457
Lincolnshire, IL 60069-1457

Phone 866 998-8777

July 29, 2003

Private and Confidential

Mr. Phillip A. Kawa
61 Curtis Circle
East Weymouth, MA 02189

Dear Mr. Kawa:

Subject: Ms. Theresa A. Kawa

On May 16, 2003, the Verizon Claims Review Unit received your Claim Initiation Form dated May 13, 2003. In your Claim Initiation Form, you request additional pension benefits under the Verizon Pension Plan for New York and New England Associates (the "Plan") as the surviving spouse and beneficiary of Ms. Theresa A. Kawa. As we reviewed your request, we analyzed the following: the information provided in your Claim Initiation Form, Verizon's records and the relevant materials from the Plan.

In your Claim Initiation Form, you request an unreduced Pre-Retirement Death Benefit under the Plan. You state the initiation of Ms. Kawa's retirement on February 10, 2003 constitutes a binding and irrevocable agreement between Ms. Kawa and Verizon. You also state in your Claim Initiation Form that Ms. Kawa was never informed that she would have to take any further action in order to retire.

Verizon's records reflect you are Ms. Kawa's surviving spouse and Beneficiary under the Plan. Ms. Kawa's Net Credited Service Date was September 20, 1973. On February 10, 2003, she initiated the retirement process on the Your Benefits Resources web site, using a Last Day on Active Payroll of May 4, 2003, and a Pension Effective Date of May 5, 2003. However, Verizon's records also reflect her Separation From Service was due to her death on February 23, 2003.

**Relevant Plan Provisions**
Article VII of the Plan, entitled "Pre-Retirement Death Benefits", provides benefits under the Plan when an Employee separates from service with Verizon due to death. Article VII, Section 7.1 of the Plan, entitled "Separation From Service Due to Death", states, in pertinent part:

(c)    **Separation From Service Due to Death Occurring On or After January 1, 2001 For a Participant Who is an Eligible Employee On or After August 6, 2000.** The following provisions apply in the case of a Vested Participant who is an Eligible Employee at some time on or after August 6, 2000 and whose Separation From Service occurs due to death on or after January 1, 2001:

Mr. Phillip A. Kawa
Page 2
July 29, 2003

(1)    **In General.** A death benefit shall be paid to the Beneficiary of a Vested Participant whose Separation From Service is due to death on or after January 1, 2001. If (A) the Participant pursuant to (2), below, dies before the benefit described in this subsection is paid or begins pursuant to (3), below, or (B) if the Participant has no Beneficiary pursuant to (2), below, the benefit is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2)    **Beneficiary.** A Participant's Beneficiary shall be determined under the following rules:

     (A)    A Participant may designate any living person as his or her primary or contingent Beneficiary for the death benefit described in this section 7.1(c), and may change such designation from time to time prior to his or her death or Annuity Starting Date, in accordance with procedures prescribed by the Plan Administrator. However, if the Participant is married, the Participant's surviving spouse is the Beneficiary, unless the Participant designates a person other than his or her spouse as primary Beneficiary and his or her spouse consents to such designation as described in section 7.3. Notwithstanding the preceding sentence, a Participant's election of a non-spouse Beneficiary made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs shall automatically become null and void as of such first day.

     (B)    If all designated primary and contingent Beneficiaries of a Participant die before benefits are paid or begin pursuant to (3), below, if the Participant has not designated a Beneficiary, if the Participant's surviving spouse has not consented to the Participant's designation of a non-spouse Beneficiary, or if the non-spouse designation was made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs and death occurs after such first day, the Beneficiary is the Participant's surviving spouse. If the Participant described in the preceding sentence has no surviving spouse, the Participant has no Beneficiary for purposes of this section 7.1(c).

(3)    **Form and Timing of Payment.** Subject to section 7.6, the following rules shall apply for purposes of determining the form and timing of payment to a Beneficiary under this section 7.1(c):

     (A)    **Payment to Non-Spouse Beneficiary.** If a Participant's Beneficiary is someone other than his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the

Beneficiary's lifetime; provided, however, that the death benefit shall be paid to the non-spouse Beneficiary in a lump sum as soon as administratively practicable following the Participant's death in the event the Participant's death occurs (i) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, or (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003.

(B)     **Payment to Spouse Beneficiary.** If a Participant's Beneficiary is his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the surviving spouse's lifetime, unless the surviving spouse of a Participant who dies prior to Normal Retirement Age elects to defer commencement of the monthly annuity to a date not later than the date the Participant would have attained Normal Retirement Age had he or she survived. Notwithstanding the preceding sentence, **in the event the Participant's death occurs (i) for IBEW-New England Employees, or after March 1, 2001 and prior to January 1, 2004, or (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003, the surviving spouse may elect to have the death benefit paid in a lump sum as soon as administratively practicable following the Participant's death. The surviving spouse's election shall be made within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. The surviving spouse may not defer payment of the lump sum to a later date, but may defer payment of the monthly annuity as described above.**

(4)     **Amount.** The following provisions shall determine the amount of any payment to be made to a Beneficiary under this section 7.1(c):

(A)     **Annuity Payment Amount.** The amount of each monthly annuity payment shall be equal to the amount the Beneficiary would have received following the Participant's death, if –

(i)     the Participant's Separation From Service had occurred on the day of his or her death,

(ii)     **the Participant had been eligible for and commenced receipt of an unreduced Service Pension on the day following such Separation From Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity (a Qualified 50-Percent Joint and Survivor Annuity if the**

Mr. Phillip A. Kawa
Page 4
July 29, 2003

           Beneficiary is not the Participant's surviving spouse and is more than 25 years younger than the Participant), and

(iii)    the amount payable during the Participant's lifetime had been reduced by applying Table 4B.

(B)    **Lump Sum Payment Amount.** The lump sum payable to a Beneficiary under this section 7.1(c) shall equal the actuarial equivalent present value (calculated using the assumptions in section 6.11(c)(2)(C)) of the monthly annuity otherwise payable to the Beneficiary on an Annuity Starting Date as of the day following the Participant's death, as determined under section 7.1(c)(4)(A). For purposes of applying the assumptions in section 6.11(c)(2)(C), the date of the Participant's death shall be the date of the Participant's Separation From Service and the Beneficiary's age shall be used in place of the Participant's age. (Emphasis supplied and added.)

Article II, Section 2.27 of the Plan states:

**Eligible Employee**
shall mean an Employee described in section 3.1. An Eligible Employee shall not include:

(a)    an individual classified by a Participating Company or an Affiliate as an independent contractor, consultant, or otherwise as a person who is not an evidenced by payroll records or a written agreement with the individual, regardless of any contrary governmental or judicial determination or holding relating to such status or tax withholding; or

(b)    an individual who renders services to a Participating Company or an Affiliate under circumstances in which his or her wages or remuneration is paid by a third party service provider or temporary service agency, regardless of any governmental or judicial determination or holding which characterizes the individual as an employee of a Participating Company or an Affiliate.

If an individual described in subsection (a) or (b) is subsequently reclassified as, or determined to be, an employee by a Participating Company, an Affiliate, the Internal Revenue Service, any other governmental agency or authority, or the judiciary, or if the Participating Company or Affiliate is required to reclassify such individual as an employee as a result of such reclassification or determination (including any reclassification by a Participating Company or Affiliate in settlement of a claim or action relating to such individual's employment status), such individual shall become eligible to become a participant in this Plan from the later of (i) the actual (and not the effective) date of such reclassification or determination (or the date as of which

Mr. Phillip A. Kawa
Page 5
July 29, 2003

such reclassification by a governmental body or the judiciary becomes final and not appealable), or (ii) the first date on which such individual is an Eligible Employee based on his or her employment status after the actual date of reclassification AND has satisfied any eligibility age and service requirements to become a Plan Participant.

Table 4B of the Plan states:

To determine the amount payable during the Participant's lifetime in a Joint and Survivor Annuity Form, reduce the Single Life Annuity amount by the applicable factor below. This table is applicable effective August 6, 2000 for purposes of determining pre-retirement death benefits under Article VII.

| Whole Years By Which Beneficiary's Age is Greater (+) or Less (−) Than Participant's Age* | 50% Joint and Survivor Annuity | 65% Joint and Survivor Annuity |
|---|---|---|
| + (13 or more) Older | N/A | 5.25% |
| + (10 to 12) Older | N/A | 5.75% |
| + (7 to 9) Older | N/A | 6.50% |
| + (4 to 6) Older | N/A | 7.75% |
| + 3 Older to −3 Younger | N/A | 9.00% |
| − (4 to 6) Younger | N/A | 10.50% |
| − (7 to 9) Younger | N/A | 11.75% |
| − (10 to 12) Younger | N/A | 12.25% |
| − (13 to 24) Younger | N/A | 13.00% |
| − (25 or more) Younger | 16.00% (Non-spouse only) | 20.75% (Spouse only) |

\*      Age is age on last day of calendar year in which Annuity Starting Date occurs.
(Emphasis supplied and added.)

Article VII, Section 7.5 of the Plan, entitled "Post-Election Death Benefit" states, in pertinent part:

If a Participant dies before his or her Annuity Starting Date but after electing a joint and survivor annuity with a survivor annuity greater than 50% that is payable to the Participant's surviving spouse, the elected joint and survivor annuity will be used to determine any survivor benefit for the spouse under Sections 7.1 and 7.2. In the event a Participant is reemployed after an Annuity Starting Date and, as a result, the Participant's benefit payments are suspended under Article IX, the prior Annuity Starting Date shall be cancelled and death benefits shall be payable under this Article VII during the period of suspension. The death benefit for a Participant described in the preceding sentence shall be based on the Participant's entire Plan benefit, adjusted as described in section 5.9, if appropriate.

Mr. Phillip A. Kawa
Page 6
July 29, 2003

**Analysis of Plan Provisions**
Ms. Theresa A. Kawa had over 5 years of ERISA service, and was on the payroll of the Participating Company. Therefore, she was a Vested Participant and an Eligible Employee until her death on February 23, 2003. Because she was a Vested Participant and Eligible Employee after August 6, 2000 and her Separation From Service occurred due to her death after January 1, 2001, your benefit as her Beneficiary is provided under Article VII of the Plan.

Had your spouse elected a survivor annuity greater than 50% prior to her death, that election would have been used in determining your survivor benefit. Because she did not elect an optional form of payment, you are eligible to receive a monthly annuity amount equal to the amount you would have received following your spouse's death if she had commenced an unreduced Service Pension on the day following her Separation From Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity. As Beneficiary to your spouse's pension you are eligible to receive a Survivor Annuity of $799.63 per month.

Based on the information available, your claim for additional pension benefits has been denied under the provisions of the Plan. The Employee Retirement Income Security Act ("ERISA") requires that plans be administered in accordance with their terms. If the Plan were to provide the benefits you have requested, Verizon and the Plan would be in violation of ERISA.

If you wish to have this matter reviewed by the Verizon Claims Review Committee (the "Committee"), you may write to the following address no later than 60 days from the date of this letter:

Verizon Claims Review Committee
c/o Verizon Claims Review Unit
Post Office Box 1438
Lincolnshire, IL 60069-1438

You should include:

- A copy of your claim denial notice;
- The reason(s) for the appeal; and
- Any additional information relevant to your claim.

If you request a review by the Verizon Claims Review Committee, the Committee will review your claim at its next scheduled meeting, generally held every four to six weeks. Please be advised that all decisions of the Committee are final. In addition, upon your request, you have the right to review documents relevant to your claim. If the Committee denies your claim, you have a right to bring a civil action under section 502(a) of ERISA.

Before you can bring any action at law or at equity to recover plan benefits, you must exhaust this process. Specifically, you must file an appeal as explained in this letter. The appeal must be finally

V00401

Mr. Phillip A. Kawa
Page 7
July 29, 2003

decided by the Claims Review Committee, the claims fiduciary for this Plan. The Claims Review Committee is authorized to finally determine appeals and interpret the terms of the Plan in its sole discretion.

While we understand this is not the outcome you requested, we hope this gives you a better understanding of why the request has been denied.

Sincerely,

Verizon Claims Review Unit

Dan Fish

# EXHIBIT A4

Phillip Kawa
61 Curtis Circle
East Weymouth, MA 02189-3067

Verizon Claims Review Committee
c/o Verizon Claims Review Unit
Post Office Box 1438
Lincolnshire, IL 60069-1438

August 5, 2003

RETIREMENT PENSION APPEAL

Dear Sir or Madam,

I received your letter dated July 29, 2003. After reviewing your statement and the copy of Article VII that you enclosed I wish to further appeal the decision of the Claims Review Unit on the grounds that the information provided by the Claims Unit is inaccurate and incorrect. Article VII does not apply to the case of Theresa Kawa mainly because Theresa was not on the payroll of the Participating Company (Verizon) and her separation was not due to her death.

Beginning May 5, 2002 and until Theresa's death in February 23, 2003 Theresa received insurance benefits administrated by Aetna Insurance Company paid by Verizon as a self-insured company.  Insurance benefits are not considered to be payroll. This benefit is allowed to be paid until it is exhausted which may have led the Claims Committee that Theresa was still on the payroll.

More importantly, I wish to state that on July 17, 2002 Theresa applied for and was granted the EIPP (Enhanced Income Protection Plan) and her "Off the Payroll' Date was August 17, 2002.  A copy of Theresa's EIPP acceptance letter from Verizon is enclosed.

Please review these facts and new information.  I am confident that you will agree that the 65-Percent Reduced Pension rule as defined in Article VII does not apply because as previously stated, Theresa was not on the payroll of the Participating Company (Verizon) and her separation was not due to her death.

Sincerely,

Phillip Kawa

Verizon Communications
1095 Ave of the Americas
New York City, New York 10036

**verizon**

August 14, 2002

THERESA KAWA
61 CURTIS CIRCLE
E WEYMOUTH, MA  02189


DEAR THERESA,


This letter is to inform you that your Enhanced Income Protection Plan (EIPP) Employee
Volunteer Form was received, and your election to accept the EIPP offer has been granted.

In accordance with the Offer, your last day on the payroll will be on 8/17/02.




Louis F. Leo
Director – Human Resources
Workforce Planning and Analysis



*COPY OF Claim Denial Notice*

Verizon Benefits Center

5
2
1
0
3

1
4
8
9

6
8

**verizon**

100 Half Day Road
PO Box 1457
Lincolnshire, IL 60069-1457

Phone 866 998-8777

July 29, 2003

Private and Confidential

Mr. Phillip A. Kawa
61 Curtis Circle
East Weymouth, MA 02189

Dear Mr. Kawa:

Subject: Ms. Theresa A. Kawa

On May 16, 2003, the Verizon Claims Review Unit received your Claim Initiation Form dated May 13, 2003. In your Claim Initiation Form, you request additional pension benefits under the Verizon Pension Plan for New York and New England Associates (the "Plan") as the surviving spouse and beneficiary of Ms. Theresa A. Kawa. As we reviewed your request, we analyzed the following: the information provided in your Claim Initiation Form, Verizon's records and the relevant materials from the Plan.

In your Claim Initiation Form, you request an unreduced Pre-Retirement Death Benefit under the Plan. You state the initiation of Ms. Kawa's retirement on February 10, 2003 constitutes a binding and irrevocable agreement between Ms. Kawa and Verizon. You also state in your Claim Initiation Form that Ms. Kawa was never informed that she would have to take any further action in order to retire.

Verizon's records reflect you are Ms. Kawa's surviving spouse and Beneficiary under the Plan. Ms. Kawa's Net Credited Service Date was September 20, 1973. On February 10, 2003, she initiated the retirement process on the Your Benefits Resources web site, using a Last Day on Active Payroll of May 4, 2003, and a Pension Effective Date of May 5, 2003. However, Verizon's records also reflect her Separation From Service was due to her death on February 23, 2003.

**Relevant Plan Provisions**
Article VII of the Plan, entitled "Pre-Retirement Death Benefits", provides benefits under the Plan when an Employee separates from service with Verizon due to death. Article VII, Section 7.1 of the Plan, entitled "Separation From Service Due to Death", states, in pertinent part:

    (c)    **Separation From Service Due to Death Occurring On or After January 1, 2001 For a Participant Who is an Eligible Employee On or After August 6, 2000.** The following provisions apply in the case of a Vested Participant who is an Eligible Employee at some time on or after August 6, 2000 and whose Separation From Service occurs due to death on or after January 1, 2001:

V00329

Mr. Phillip A. Kawa
Page 2
July 29, 2003

(1)  **In General.** A death benefit shall be paid to the Beneficiary of a Vested Participant whose Separation From Service is due to death on or after January 1, 2001. If (A) the Participant's Beneficiary pursuant to (2), below, dies before the benefit described in this subsection is paid or begins pursuant to (3), below, or (B) if the Participant has no Beneficiary pursuant to (2), below, the benefit is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2)  **Beneficiary.** A Participant's Beneficiary shall be determined under the following rules:

(A)  A Participant may designate any living person as his or her primary or contingent Beneficiary for the death benefit described in this section 7.1(c), and may change such designation from time to time prior to his or her death or Annuity Starting Date, in accordance with procedures prescribed by the Plan Administrator. However, if the Participant is married, the Participant's surviving spouse is the Beneficiary, unless the Participant designates a person other than his or her spouse as primary Beneficiary and his or her spouse consents to such designation as described in section 7.3. Notwithstanding the preceding sentence, a Participant's election of a non-spouse Beneficiary made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs shall automatically become null and void as of such first day.

(B)  If all designated primary and contingent Beneficiaries of a Participant die before benefits are paid or begin pursuant to (3), below, if the Participant has not designated a Beneficiary, if the Participant's surviving spouse has not consented to the Participant's designation of a non-spouse Beneficiary, or if the non-spouse designation was made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs and death occurs after such first day, the Beneficiary is the Participant's surviving spouse. If the Participant described in the preceding sentence has no surviving spouse, the Participant has no Beneficiary for purposes of this section 7.1(c).

(3)  **Form and Timing of Payment.** Subject to section 7.6, the following rules shall apply for purposes of determining the form and timing of payment to a Beneficiary under this section 7.1(c):

(A)  **Payment to Non-Spouse Beneficiary.** If a Participant's Beneficiary is someone other than his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the

Mr. Phillip A. Kawa
Page 3
July 29, 2003

Beneficiary's lifetime; provided, however, that the death benefit shall be paid to the non-spouse Beneficiary in a lump sum as soon as administratively practicable following the Participant's death in the event the Participant's death occurs (i) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, or (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003.

(B)    Payment to Spouse Beneficiary. If a Participant's Beneficiary is his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the surviving spouse's lifetime, unless the surviving spouse of a Participant who dies prior to Normal Retirement Age elects to defer commencement of the monthly annuity to a date not later than the date the Participant would have attained Normal Retirement Age had he or she survived. Notwithstanding the preceding sentence, in the event the Participant's death occurs (i) for IBEW-New England Employees, or after March 1, 2001 and prior to January 1, 2004, or (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003, the surviving spouse may elect to have the death benefit paid in a lump sum as soon as administratively practicable following the Participant's death. The surviving spouse's election shall be made within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. The surviving spouse may not defer payment of the lump sum to a later date, but may defer payment of the monthly annuity as described above.

(4)    Amount. The following provisions shall determine the amount of any payment to be made to a Beneficiary under this section 7.1(c):

(A)    Annuity Payment Amount. The amount of each monthly annuity payment shall be equal to the amount the Beneficiary would have received following the Participant's death, if —

(i)    the Participant's Separation From Service had occurred on the day of his or her death,

(ii)    the Participant had been eligible for and commenced receipt of an unreduced Service Pension on the day following such Separation From Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity (a Qualified 50-Percent Joint and Survivor Annuity if the

V00331

Mr. Phillip A. Kawa
Page 4
July 29, 2003

Beneficiary is not the Participant's surviving spouse and is more than 25 years younger than the Participant), and

(iii) the amount payable during the Participant's lifetime had been reduced by applying Table 4B.

(B) **Lump Sum Payment Amount.** The lump sum payable to a Beneficiary under this section 7.1(c) shall equal the actuarial equivalent present value (calculated using the assumptions in section 6.11(c)(2)(C)) of the monthly annuity otherwise payable to the Beneficiary on an Annuity Starting Date as of the day following the Participant's death, as determined under section 7.1(c)(4)(A). For purposes of applying the assumptions in section 6.11(c)(2)(C), the date of the Participant's death shall be the date of the Participant's Separation From Service and the Beneficiary's age shall be used in place of the Participant's age. (Emphasis supplied and added.)

Article II, Section 2.27 of the Plan states:

**Eligible Employee**
shall mean an Employee described in section 3.1. An Eligible Employee shall not include:

(a) an individual classified by a Participating Company or an Affiliate as an independent contractor, consultant, or otherwise as a person who is not an evidenced by payroll records or a written agreement with the individual, regardless of any contrary governmental or judicial determination or holding relating to such status or tax withholding; or

(b) an individual who renders services to a Participating Company or an Affiliate under circumstances in which his or her wages or remuneration is paid by a third party service provider or temporary service agency, regardless of any governmental or judicial determination or holding which characterizes the individual as an employee of a Participating Company or an Affiliate.

If an individual described in subsection (a) or (b) is subsequently reclassified as, or determined to be, an employee by a Participating Company, an Affiliate, the Internal Revenue Service, any other governmental agency or authority, or the judiciary, or if the Participating Company or Affiliate is required to reclassify such individual as an employee as a result of such reclassification or determination (including any reclassification by a Participating Company or Affiliate in settlement of a claim or action relating to such individual's employment status), such individual shall become eligible to become a participant in this Plan from the later of (i) the actual (and not the effective) date of such reclassification or determination (or the date as of which

Mr. Phillip A. Kawa
Page 5
July 29, 2003

such reclassification by a governmental body or the judiciary becomes final and not appealable), or (ii) the first date on which such individual is an Eligible Employee based on his or her employment status after the actual date of reclassification AND has satisfied any eligibility age and service requirements to become a Plan Participant.

Table 4B of the Plan states:

To determine the amount payable during the Participant's lifetime in a Joint and Survivor Annuity Form, reduce the Single Life Annuity amount by the applicable factor below. This table is applicable effective August 6, 2000 for purposes of determining pre-retirement death benefits under Article VII.

| Whole Years By Which Beneficiary's Age is Greater (+) or Less (-) Than Participant's Age * | 50% Joint and Survivor Annuity | 65% Joint and Survivor Annuity |
|---|---|---|
| + (13 or more) Older | N/A | 5.25% |
| + (10 to 12) Older | N/A | 5.75% |
| + (7 to 9) Older | N/A | 6.50% |
| + (4 to 6) Older | N/A | 7.75% |
| + 3 Older to –3 Younger | N/A | 9.00% |
| – (4 to 6) Younger | N/A | 10.50% |
| – (7 to 9) Younger | N/A | 11.75% |
| – (10 to 12) Younger | N/A | 12.25% |
| – (13 to 24) Younger | N/A | 13.00% |
| – (25 or more) Younger | 16.00% (Non-spouse only) | 20.75% (Spouse only) |

\*    Age is age on last day of calendar year in which Annuity Starting Date occurs.
(Emphasis supplied and added.)

Article VII, Section 7.5 of the Plan, entitled "Post-Election Death Benefit" states, in pertinent part:

If a Participant dies before his or her Annuity Starting Date but after electing a joint and survivor annuity with a survivor annuity greater than 50% that is payable to the Participant's surviving spouse, the elected joint and survivor annuity will be used to determine any survivor benefit for the spouse under Sections 7.1 and 7.2. In the event a Participant is reemployed after an Annuity Starting Date and, as a result, the Participant's benefit payments are suspended under Article IX, the prior Annuity Starting Date shall be cancelled and death benefits shall be payable under this Article VII during the period of suspension. The death benefit for a Participant described in the preceding sentence shall be based on the Participant's entire Plan benefit, adjusted as described in section 5.9, if appropriate.

Mr. Phillip A. Kawa
Page 6
July 29, 2003

**Analysis of Plan Provisions**

Ms. Theresa A. Kawa had over 5 years of ERISA service, and was on the payroll of the Participating Company. Therefore, she was a Vested Participant and an Eligible Employee until her death on February 23, 2003. Because she was a Vested Participant and Eligible Employee after August 6, 2000 and her Separation From Service occurred due to her death after January 1, 2001, your benefit as her Beneficiary is provided under Article VII of the Plan.

Had your spouse elected a survivor annuity greater than 50% prior to her death, that election would have been used in determining your survivor benefit. Because she did not elect an optional form of payment, you are eligible to receive a monthly annuity amount equal to the amount you would have received following your spouse's death if she had commenced an unreduced Service Pension on the day following her Separation From Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity. As Beneficiary to your spouse's pension you are eligible to receive a Survivor Annuity of $799.63 per month.

Based on the information available, your claim for additional pension benefits has been denied under the provisions of the Plan. The Employee Retirement Income Security Act ("ERISA") requires that plans be administered in accordance with their terms. If the Plan were to provide the benefits you have requested, Verizon and the Plan would be in violation of ERISA.

If you wish to have this matter reviewed by the Verizon Claims Review Committee (the "Committee"), you may write to the following address no later than 60 days from the date of this letter:

Verizon Claims Review Committee
c/o Verizon Claims Review Unit
Post Office Box 1438
Lincolnshire, IL 60069-1438

You should include:

- A copy of your claim denial notice;
- The reason(s) for the appeal; and
- Any additional information relevant to your claim.

If you request a review by the Verizon Claims Review Committee, the Committee will review your claim at its next scheduled meeting, generally held every four to six weeks. Please be advised that all decisions of the Committee are final. In addition, upon your request, you have the right to review documents relevant to your claim. If the Committee denies your claim, you have a right to bring a civil action under section 502(a) of ERISA.

Before you can bring any action at law or at equity to recover plan benefits, you must exhaust this process. Specifically, you must file an appeal as explained in this letter. The appeal must be finally

Mr. Phillip A. Kawa
Page 7
July 29, 2003

decided by the Claims Review Committee, the claims fiduciary for this Plan. The Claims Review Committee is authorized to finally determine appeals and interpret the terms of the Plan in its sole discretion.

While we understand this is not the outcome you requested, we hope this gives you a better understanding of why the request has been denied.

Sincerely,

Verizon Claims Review Unit

*Dan Fish (KB)*

Dan Fish

7

# EXHIBIT A5



**Sara J. Mellinger**
Chairwoman - Verizon
Claims Review Committee

750 Canyon Drive, SV1E3025
Coppell, TX 75019

November 10, 2003

Mr. Philip Kawa
61 Curtis Circle
East Weymouth, MA 02189-3067

Dear Mr. Kawa:   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

On October 21, 2003, the Verizon Claims Review Committee (also referred to as
the "Committee") reviewed your request, as the surviving spouse of Ms. Theresa
A. Kawa, for additional pension benefits under the Verizon Pension Plan for New
York and New England Associates (the "Plan"). In reviewing your appeal, the
Committee considered the information provided in your letters, Verizon's records,
and the terms of the Plan.

Based on all of the information available to the Committee, and after a thorough
review of your claim file, your request has been denied. The factors that the
Committee considered in arriving at its decision are explained below.

**Background**

Verizon's records reflect that Ms. Kawa became an associate, covered under a
predecessor to the Plan, on September 20, 1973. Ms. Kawa was receiving short
term disability benefits when she passed away, on February 23, 2003, at age 48.
Ms. Kawa had been receiving short term disability benefits since May 5, 2002.

Before she passed away, Ms. Kawa applied for voluntary severance under the
Enhanced Income Protection Plan ("EIPP"), with a last day on Verizon's payroll of
August 17, 2002. Subsequently, on February 10, 2003, Ms. Kawa initiated the
pension commencement process over the "Your Benefits Resources" website.
Ms. Kawa elected a last day on Verizon's payroll of May 4, 2003, and a "Pension
Effective Date" (referred to under the Plan as an "Annuity Starting Date") of May 5,
2003.

After Ms. Kawa passed away, you were informed that you were entitled to receive
a death benefit, as Ms. Kawa's spousal beneficiary. The amount of that death
benefit is the survivor portion of a 65 percent joint and survivor annuity. You

V00320

Mr. Philip Kawa
Page 2

elected to receive the death benefit in the form of a monthly annuity starting on February 24, 2003. Thus, you are currently receiving death benefit payments of $799.63 per month from the Plan.

On behalf of Ms. Kawa's estate, you have requested a full pension benefit (presumably a lump sum), on the ground that Ms. Kawa "entered into a binding retirement agreement" and (presumably) should have received a full lump sum pension benefit before her death. To support your position, you have indicated that "[i]n [your] presence, [Ms. Kawa] completed the Hewitt.com application on February 10, 2003. When Theresa clicked the <u>RETIRE NOW</u> link and filled in the required information [you and Ms. Kawa] believed that she entered into a binding agreement with Verizon and also irrevocable by Verizon."

## Analysis of Relevant Plan Provisions

To analyze your claim, the Committee first considered whether Ms. Kawa should have received a full lump sum pension before her death. If the answer to this question had been yes, Ms. Kawa's estate would have been entitled to a full lump sum pension benefit. However, because the Committee concluded that the answer to the first question is no, the Committee next considered how the amount of your death benefit should be determined. Both steps in the analysis are described below.

### 1. Ms. Kawa's Right to a Lump Sum Pension

Under the Plan, benefit payments generally commence (*i.e.*, the Annuity Starting Date occurs) "on the later of the Participant's Normal Retirement Age [65] or the day following his or her Separation from Service." (Plan §§ 4.1(b) and 4.2(b).) However, certain participants can elect an earlier Annuity Starting Date. If a participant dies before her Annuity Starting Date, neither she nor her estate can receive a benefit. (*See* Article VII of the Plan.)

When Ms. Kawa elected voluntary severance under the EIPP, she was assigned a last day on the payroll of August 17, 2002. Because Ms. Kawa was receiving short term disability benefits, she had the following choice with respect to her Annuity Starting Date:

- she could choose to separate from service with an Annuity Starting Date of August 18, 2002 (or any later date before her short term disability benefits were scheduled to end), which would require discontinuing her short term disability benefits (Plan §§ 6.11(c)(2)(F)(i) and 4.3(e)); or

V00321

Mr. Philip Kawa
Page 3

- she could choose an Annuity Starting Date of May 5, 2003 (the day after
  her short term disability benefits were scheduled to end) (Plan
  § 6.11(c)(2)(F)(ii)).

On February 10, 2003, Ms. Kawa initiated the pension commencement process on
Verizon's "Your Benefits Resources" website, and elected an Annuity Starting
Date of May 5, 2003 (the day after her short term disability benefits were
scheduled to end).

Under the Plan, pension benefits cannot commence until the participant submits
an application and the application is approved. Section 6.12 of the Plan provides
(in pertinent part):

> [B]enefit payments shall commence after properly written
> application for same has been received and approved by the
> Benefit Administrator. No payment shall be made for the period in
> which benefits would have been payable if the Participant or
> Beneficiary had made timely application therefore.

In accordance with section 6.3 of the Plan, the application referred to in section
6.12 is delivered to participants approximately 60 to 90 days before their Annuity
Starting Date, along with a notice explaining the participant's options. The
application also includes an election of the form of payment (Plan § 6.4) and a
spousal consent form (required by law) for an election of any payment form other
than a 50-percent joint and survivor annuity (such as a lump sum) (Plan § 6.5).

Although Ms. Kawa initiated the pension commencement process over the "Your
Benefits Resources" website, the Verizon Benefits Center did not receive the
completed paperwork described above. Under the Plan (and by law), therefore,
Ms. Kawa's benefits could not commence before her death. As such, Ms. Kawa's
estate is not entitled to a lump sum benefit.

The Committee recognizes your assertion that you and Ms. Kawa "were never
informed on the Hewitt site or Theresa's manager that any further action would be
required by Theresa in order to retire." The requirement to apply for a pension is
set forth in the summary plan description for the Plan and is a normal part of the
retirement process. By law, benefits cannot commence until the notice distributed
with the pension application is received and reviewed by the participant, and
benefits cannot be paid in the lump sum form without formal spousal consent. The
pension application process ensures compliance with federal law.

Moreover, when Ms. Kawa completed the electronic form on the "Your Benefits
Resources" website, she indicated that her "Last Day on Active Payroll" would be

V00322

Mr. Philip Kawa
Page 4

May 4, 2003, and elected an Annuity Starting Date of May 5, 2003. Ms. Kawa passed away on February 23, 2003. According to her intended election, Ms. Kawa was an active employee on the date of her death and she passed away before her Annuity Starting Date. Accordingly, Ms. Kawa's estate is not entitled to receive a pension benefit.

Although Ms. Kawa's estate is not entitled to receive a pension benefit, you are entitled—as Ms. Kawa's spouse—to receive a death benefit under the Plan. That benefit is discussed below.

### 2.  Your Right to a Death Benefit

Under the Plan, if a participant dies before her Annuity Starting Date, her spouse is entitled to a death benefit. In general, there are two types of death benefit: a death benefit payable when the participant dies while an active employee (Plan § 7.1), and a death benefit payable when the participant dies after her termination of employment, but before her Annuity Starting Date (Plan § 7.2).

As noted above, when Ms. Kawa passed away, she was receiving short term disability benefits. Section 4.3(e) of the Plan provides the following rule with respect to coordinating disability benefits and pension benefits:

> If a person receiving sickness or accident disability benefits under a Participating Company Sickness and Accident Disability Benefit Plan leaves the service of a Participating Company for any reason and is entitled to payment of a Service Pension or Deferred Vested Pension, any such disability benefits payable to such person shall be discontinued upon the commencement of the Service or Deferred Vested Pension payments. If the sickness disability benefits are greater in amount, the recipient may elect in writing to continue receiving them and defer receiving payments of his pension, or the Participating Company which last employed such individual may elect to make payments supplemental to the Service Pension or Deferred Vested Pension so that the rate of total payment is not diminished below the rate of disability payments to which he is entitled.

In addition, Verizon has a long standing policy for IBEW New England associates who are receiving short term disability benefits (like Ms. Kawa) that, unless the participant affirmatively elects otherwise, separation under an income protection plan does not occur until the associate has exhausted 52 weeks of short term disability benefits. This policy was established by the New England Telephone and Telegraph Company and continues to be implemented by Verizon, per the

V00323

Mr. Philip Kawa
Page 5

request of the IBEW. This policy enables participants to maximize their short term disability benefits and their pension benefits, by avoiding the possibility of any offset.

As of August 17, 2002, Ms. Kawa was still receiving short term disability benefits. She was scheduled to exhaust her 52 weeks of short term disability benefits on May 4, 2003. In accordance with Verizon's policy, therefore, Ms. Kawa was kept on the payroll beyond August 17, 2002, until the date of her death. This result is also consistent with Ms. Kawa's election, made on February 10, 2003, to have a last day on the payroll of May 4, 2003.

Because Ms. Kawa was kept on Verizon's payroll until the date of her death, she passed away while she was still an active employee. Accordingly, the Committee has concluded that the amount of your death benefit should be determined in accordance with section 7.1 of the Plan, entitled "Separation From Service Due to Death." For your reference, section 7.1(c)(4) of the Plan, which sets forth the method for calculating the amount of your death benefit, is excerpted below:

>    (4)    **Amount.** The following provisions shall determine the amount of any payment to be made to a Beneficiary under this section 7.1(c):

>>    (A)    **Annuity Payment Amount.** The amount of each monthly annuity payment shall be equal to the amount the Beneficiary would have received following the Participant's death, if —

>>>    (i)    the Participant's Separation From Service had occurred on the day of his or her death,

>>>    (ii)    the Participant had been eligible for and commenced receipt of an unreduced Service Pension on the day following such Separation From Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity (a Qualified 50-Percent Joint and Survivor Annuity if the Beneficiary is not the Participant's surviving spouse and is more than 25 years younger than the Participant), and

>>>    (iii)    the amount payable during the Participant's lifetime had been reduced by applying [a factor for converting a Single-Life annuity to a 65-Percent Joint and Survivor Annuity].

V00324

Mr. Philip Kawa
Page 6

> **(B)    Lump Sum Payment Amount.** The lump sum payable to a Beneficiary under this section 7.1(c) shall equal the actuarial equivalent present value . . . of the monthly annuity otherwise payable to the Beneficiary on an Annuity Starting Date as of the day following the Participant's death, as determined under section 7.1(c)(4)(A). . . .

For the reasons explained above, your request on behalf of Ms. Kawa's estate for a full lump sum pension has been denied. However, you are entitled to the survivor portion of a 65-percent qualified joint and survivor annuity unreduced for early payment, which you are currently receiving from the Plan. (The death benefit that would have been payable if Ms. Kawa had separated from service before the date of her death is also the survivor portion of a 65-percent joint and survivor annuity, but is subject to reductions for payment before Ms. Kawa's earliest retirement age. *See* Plan § 7.2.)

Although we understand this is not the decision for which you had hoped, the Committee has thoroughly considered your appeal. In accordance with the terms of the Plan and the requirements imposed on the Committee by the Employee Retirement Income Security Act of 1974, as amended (ERISA), the Committee has determined that the information available to us does not substantiate your request for additional pension benefits. Please be advised that all decisions of the Committee are final.

## Your rights under ERISA

- You have the right to receive, upon request and free of charge, reasonable access to, and copies of all documents, records and other information relevant to your appeal for benefits.

- Since this appeal has been denied, you have a right to bring a civil action under section 502(a) of ERISA.

Very truly yours,

*Sara Mellinger*

SJM:gr

V00325