any Participant whose compensation otherwise would exceed such limits shall not be less than the amounts determined under subsections (a) or (b) below, whichever is greater.

    (a)    **Accrued Benefit Prior to 1994.** The amount preserved with regard to a Participant's accrued benefit as of a given date prior to 1994 shall be equal to the greater of—

        (1)    the Participant's benefit determined as of December 31, 1988, without regard to any compensation limit; or

        (2)    the Participant's benefit determined at Separation From Service, based on service and pay for all years, taking the compensation limits into account.

    (b)    **Accrued Benefit After 1993.** The amount preserved with regard to a Participant's accrued benefit as of any date after 1993 shall be the greater of (1) or (2), where—

        (1)    equals the sum of the Participant's benefit—

            (A)    as of December 31, 1993, calculated after applying subsection (a), above, without regard to the compensation limits in effect after 1993, plus

            (B)    at Separation From Service, based on service and pay after 1993, taking into account the compensation limits in effect for years after 1993, and

        (2)    equals the greater of the Participant's benefit—

            (A)    as of December 31, 1993, calculated after applying subsection (a), above, without regard to the compensation limits in effect for years after 1993, or

            (B)    at Separation From Service, based on service and pay for all years, taking the compensation limits into account.

## 5.14   Preservation of Benefits.

Regardless of the application of sections 5.2 through 5.8, in no event shall the total monthly benefit of any Eligible Employee determined under those sections (without regard to any pension enhancement provisions in Exhibits II through IV) as of any time be less than the total monthly pension benefit of such Eligible Employee determined as of any earlier time.

## 5.15   Certain Leaves of Absence.

If an Eligible Employee has a period of 24 or more consecutive months leave of absence during which such Eligible Employee does not receive service credit of more than 500 Hours of Service, the Basic Monthly Pension Benefit for such Eligible Employee shall be determined in accordance with (a) or (b) below:

    (a)    If such Eligible Employee completes an 18-consecutive-month period of Net Credited Service in active status as an Eligible Employee following the leave of absence, the Basic Monthly Pension Benefit for such Eligible Employee shall be determined in accordance with the provisions of this Article V for all of the Eligible Employee's Pension Accrual Service.

    (b)    If such Eligible Employee does not complete an 18-consecutive-month period of Net Credited Service in active status as an Eligible Employee following the leave of absence, the Basic Monthly Pension Benefit shall equal the greater of:

        (1)    the sum of:

            (A)    the Basic Monthly Pension Benefit for such Eligible Employee as of the date such non-credited period commenced, for all Pension Accrual Service prior to such non-credited period; plus

V00045

(B)   the Basic Monthly Pension Benefit determined, for all Pension Accrual Service after such Eligible Employee returned to active service, in accordance with the provisions of this Article V; or

(2)   the Basic Monthly Pension Benefit determined, for all Pension Accrual Service, on the basis of the monthly benefit, as in effect from time to time, of Pension Band Number 101.

## 5.16   Veterans' Benefits.

Notwithstanding any provision of this Plan to the contrary, for reemployments initiated on or after December 12, 1994, benefits and service credit with respect to qualified military service will be provided in accordance with section 414(u) of the Code.

# ARTICLE VI. FORMS OF PAYMENT OF PENSION BENEFITS

## 6.1   Optional Forms of Payment.

If the applicable notice and election requirements under this Article VI have been met, except as provided otherwise in section 6.6, a Participant entitled to a Service Pension, Deferred Vested Pension, or Disability Pension can elect any of the following forms of payment.

(a)   **Single Life Annuity.**  The Single Life Annuity form provides level monthly payments for the lifetime of the Participant only.

(b)   **Joint and Survivor Annuity.**

(1)   **In General.**  The joint and survivor annuity form provides reduced monthly payments for the Participant's lifetime, with monthly payments continuing after the Participant's death to his or her designated Beneficiary in an amount equal to 50 percent, 75 percent, or 100 percent (whichever the Participant shall elect) of the monthly amount payable during the Participant's lifetime.

(2)   **Reductions.**

(A)   **In General.**  The amount payable during the Participant's lifetime shall be reduced in the manner determined under Table 4 for a Beneficiary described in section 2.12(a)(1)(A) (regardless of whether the Annuity Starting Date occurs before, during or after 2001) and shall be reduced in the manner determined in Table 4A for any other Beneficiary.

(B)   **Special Rule.**  Should the Beneficiary predecease the Participant, payments for months after the Beneficiary's death shall increase to the Single Life Annuity amount upon written notice of such death delivered to the Benefit Administrator by the Participant; provided, however, that in the event notice of the Beneficiary's death is provided to the Benefit Administrator after the first anniversary of the Beneficiary's death, the increase described in this paragraph (B) shall not be effective for any payment prior to the payment for the month following the month in which such notice is received. The preceding sentence shall not apply in the case of a Participant with a Deferred Vested Pension, whose Separation From Service occurs before May 1, 1994 or, in the case of IBEW-New England Employees, before August 5, 1994.

(3)   **Restrictions In Case of Younger Beneficiary.**  In a case where a Participant is more than 19 years older than his or her Beneficiary and the Beneficiary is not the Participant's spouse, neither a 75-percent nor a 100-percent joint and

V00046

survivor annuity may be elected. In a case in which a Participant is more than 10 years older than his or her Beneficiary and the Beneficiary is not the Participant's spouse, a 100-percent joint and survivor annuity may not be elected.

(c)　**Period Certain and Life Annuity.** The period certain and life annuity form is a Single Life Annuity with a provision that if the Participant dies within the guarantee period, payments shall be made for the remainder of such period to either one or two designated Beneficiaries. A Participant can elect a guarantee period, beginning on the Annuity Starting Date, of either—

　　(1)　five years, in which case payments during and after the Participant's lifetime shall be two percent less than under the Single Life Annuity form, or

　　(2)　ten years, in which case payments during and after the Participant's lifetime shall be six and one-half percent less than under the Single Life Annuity form.

The reductions in the preceding sentence shall continue in effect whether or not any Beneficiary predeceases the Participant. If two primary Beneficiaries are designated, they shall share equally in payments for periods after the Participant's death. If a primary Beneficiary dies before the Participant and no contingent Beneficiary has been named, any amounts that would have been payable to the primary Beneficiary under this form of payment upon the Participant's death shall be paid to the Participant's estate in a single sum. If a primary Beneficiary dies after the Participant, any remaining amounts that would have been payable to the primary Beneficiary under this form of payment shall be paid to the estate of the primary Beneficiary in a single sum.

## 6.2　Automatic Forms of Payment.

In a case in which the notice and election requirements to elect another form of payment under this Article VI have not been met, the form of pension shall be as follows:

(a)　**Married Participant.** For a Participant who is married on the Annuity Starting Date, the automatic form shall be a Qualified 50-Percent Joint and Survivor Annuity with the surviving spouse as Beneficiary, determined by applying the reductions described in Table 4 to the otherwise applicable Single Life Annuity amount.

(b)　**Unmarried Participant.** For a Participant who is not married on the Annuity Starting Date, the automatic form shall be a Single Life Annuity.

## 6.3　Notice Procedure.

(a)　**In General.** Within the 60-day period beginning 90 days prior to the Annuity Starting Date, the Benefit Administrator shall provide the Participant with a written explanation of—

　　(1)　the terms and conditions of the automatic form of payment;

　　(2)　the Participant's right to make, and the effect and financial consequences of, a waiver of the automatic form of payment;

　　(3)　the relative values of the various optional forms of payment;

　　(4)　the rights of the Participant's spouse regarding a waiver of the automatic form of payment;

　　(5)　the right of the Participant to revoke a prior waiver of the automatic form of payment and the financial consequences of such a revocation; and

　　(6)　the right of the Participant to defer payment until Normal Retirement Age.

V00047

(b)    **Exception.** Notwithstanding subsection (a), the written explanation described in subsection (a) may be provided less than 30 days prior to the Annuity Starting Date if—

    (1)    the Participant is given notice of his or her right to a 30-day period in which to consider whether to (i) waive the automatic form of benefit and elect an optional form and (ii) to the extent applicable, consent to the distribution;

    (2)    the Participant affirmatively elects a distribution and a form of benefit and the Participant's spouse, if necessary under applicable law, consents to the form of benefit elected;

    (3)    the Participant is permitted to revoke his affirmative election at any time prior to his or her Annuity Starting Date or, if later, the expiration of a 7-day period beginning on the day after the explanation described in this Section is provided to the Participant; and

    (4)    distribution to the Participant does not commence before the expiration of the 7-day period described in paragraph (3) above.

## 6.4   Election Procedure.

A Participant who does not wish payment in an automatic form under section 6.2 may elect in writing, on a form prescribed by the Benefit Administrator, to receive his or her benefits in another optional form described in section 6.1. Such election shall be valid only if made within the later of—

    (a)    the 90-day period ending on the Annuity Starting Date,

    (b)    the 90-day period beginning on the date of mailing or the date of personal delivery (whichever is applicable) of the notice required under section 6.3, or

    (c)    with respect to a Participant who waives the 30-day notice requirement, as described in section 6.3(b), the 7-day period beginning on the date of mailing or the date of personal delivery (whichever is applicable) of the notice required under section 6.3.

Any election to waive an automatic form may be revoked by the Participant in writing during the election period, with or without the consent of his or her spouse. In the event of the death of an Employee's Beneficiary prior to the Annuity Starting Date of a joint and survivor annuity, such election shall be deemed to be revoked. The form of payment shall be irrevocable after the Annuity Starting Date or such later date as may be applicable under section 6.3(b)(3), except in the case of Participants who have a subsequent Annuity Starting Date, such as in the case of reemployment as described in section 9.6.

## 6.5   Spousal Consent.

    (a)    **In General.** An election by a married Participant of a payment form other than a Qualified 50-Percent Joint and Survivor Annuity with the surviving spouse as Beneficiary shall not be valid unless the Participant's spouse consents in writing to such election and (for a form other than a Single Life Annuity) to the designation of one or more other Beneficiaries, and such consent is witnessed by a notary public, and acknowledges the financial consequences of the consent.

    (b)    **Irrevocability.** A spouse's consent shall be irrevocable with respect to benefits commencing on the Annuity Starting Date for which it is made.

    (c)    **Validity.** Any election or consent shall be valid only with respect to the spouse who signs the consent. A spouse's consent may be signed by the spouse's legal guardian if the spouse is legally incompetent.

    (d)    **Exceptions.** Notwithstanding subsection (a), the consent of a Participant's spouse shall not be required in a case in which either—

V00048

(1)    the Participant has elected a 50-percent, 75-percent or 100-percent joint and survivor benefit with respect to which the spouse is the designated Beneficiary,

(2)    the Benefit Administrator determines that consent cannot be obtained because the Participant's spouse cannot be located, or there is no spouse, or

(3)    based on court records, the Benefit Administrator determines that the Participant is legally separated, or has been abandoned (within the meaning of local law).

## 6.6    Forms For Participants Who Separate Before Certain Dates In 1994.

Notwithstanding the preceding sections of this Article VI, in the case of a Participant whose Separation From Service is before May 1, 1994, (or before August 5, 1994 in the case of IBEW-New England Employees) the only payment forms available under the Plan are—

(a)    a Single Life Annuity, or

(b)    a Qualified 50-Percent Joint and Survivor Annuity with the surviving spouse as Beneficiary under which payments during the Participant's lifetime are reduced under the provisions of the Prior NYNEX Pension Plan.

## 6.7    Payment of Small Amounts.

If the lump sum present value of the Participant's Vested accrued pension benefit does not exceed $3500, the amount of such present value shall be paid to the Participant as provided below.

(a)    **Time of Valuation.** A determination under this section 6.7 shall be made as of an Annuity Starting Date designated by the Plan Administrator, which shall not be later than July 1 of the year following the year of the Participant's Separation From Service, provided the Participant is not then an Employee.

(b)    **Payment.** The present value of the Vested accrued benefit shall be paid in lump sum as soon as practical after the designated Annuity Starting Date, and the nonvested portion, if any, shall be treated as a forfeiture. In the event that the present value of the Vested accrued benefit is zero, the Participant shall be deemed to have received a full distribution of such Vested accrued benefit.

(c)    **Present Value.**

(1)    Effective January 1, 1995 and through February 28, 2001, present value shall be calculated using—

(A)    the applicable mortality table prescribed by the Secretary of the Treasury under Code section 417(e)(3), and

(B)    the applicable interest rate on 30-year Treasury securities as specified by the Commissioner of Internal Revenue for the month of November preceding the Plan Year in which the Annuity Starting Date occurs.

(2)    Effective March 1, 2001, present value shall be calculated using (A) the assumptions in section 6.11(c)(2)(C)(i) and (ii) for a Participant who would be a Window-Eligible Employee but for this provision, and (B) the assumptions in section 6.11(c)(2)(C)(i) (without regard to 6.11(c)(2)(C)(ii)) for any other Participant.

(d)    **Effective Date.** This section 6.7 shall apply to pension benefits other than those with respect to which payment had commenced prior to January 1, 1995.

(e)    **Effect of Cash-Out on Prior Service.** Notwithstanding any other provision in the Plan to the contrary, all prior Net Credited Service and Pension Accrual Service of an

V00049

individual who actually receives a lump sum payment under this section 6.7 shall thereafter be disregarded for all purposes under the Plan.

## 6.8    Withholding Taxes.

The Plan Administrator, pursuant to uniform procedures applied consistently, may cause withholding from any payment under the Plan for taxes that the Plan Administrator determines, with or without direction from the Participant or Beneficiaries, to be necessary or appropriate.

## 6.9    Application of Optional Forms to Certain Transferred Benefits.

Subject to Section 6.6, an accrued benefit which is transferred to the Plan pursuant to Article XI or the rules in Appendix A shall be distributed in the automatic form described in section 6.2 unless, subject to the spousal consent requirements of section 6.5, the Participant elects to receive such benefit in one of the optional payment forms described in section 6.1 or 6.11 or, to the extent required by the anti-cutback rules set forth in section 411(d)(6) of the Code and Treasury Regulations issued thereunder, in one of the optional payment forms described in the plan from which such benefit was transferred.

## 6.10    Annuity Payment During Month of Death.

In the case of any payment form that includes a monthly benefit payable for the life of an individual who receives benefit payments after January 1, 1999 that commenced under the Plan or the Prior NYNEX Pension Plan, the last payment for such individual's life shall be a full monthly payment for the month in which the individual's death occurs.

## 6.11    Pension Cash-Out Window.

(a)    **Window-Eligible Employees.** Each Window-Eligible Employee may make the election described in subsection (b), below, "Window-Eligible Employee" shall include each individual who is:

(1)    for IBEW-New England Employees, an Eligible Employee eligible for a Service Pension or a Deferred Vested Pension upon his or her Separation From Service on or after March 1, 2001 and prior to January 1, 2004;

(2)    for Eligible Employees represented by International Brotherhood of Electrical Workers, AFL-CIO, Local 2213, an Eligible Employee listed on Schedule C to this amendment and who is eligible for a Service Pension upon his or her Separation From Service on or after July 31, 2001 (or such later date as may be provided in Schedule C) and prior to December 29, 2001;

(3)    for Eligible Employees represented by Communications Workers of America, AFL-CIO, Local 1301, an Eligible Employee listed on Schedule D to this amendment and who is eligible for a Service Pension upon his or her Separation From Service on or after July 26, 2001 and prior to August 25, 2001;

(4)    for Eligible Employees represented by Communications Workers of America, AFL-CIO, Local 1302, an Eligible Employee listed on Schedule E to this amendment and who is eligible for a Service Pension upon his or her Separation From Service on or after July 9, 2001 and prior to August 4, 2001;

(5)    for any Eligible Employee (other than an IBEW-New England Employee or an Eligible Employee in a bargaining unit represented by a collective bargaining agent that has not agreed to this provision), an Eligible Employee eligible for a Service Pension or a Deferred Vested Pension upon his or her Separation From Service on or after November 19, 2001 and on or before December 30, 2001 (or who is eligible to elect a distribution under this provision pursuant to the terms of an agreement relating to settlement of a claim or lawsuit against the Plan with respect to an individual's entitlement to elect a distribution under this provision); and

42

(6)    for any Eligible Employee who is not an IBEW-New England Employee, an Eligible Employee eligible for a Service Pension or a Deferred Vested Pension upon his or her Separation From Service on or after August 1, 2002 and prior to August 1, 2003.

(b)    **Election.** Each Window-Eligible Employee may elect to have his or her pension begin on an Annuity Starting Date that is the day following his or her Separation From Service (even if his or her pension would not otherwise be eligible for commencement on such date under the other provisions of the Plan) and to have his pension paid on such Annuity Starting Date in the automatic form of payment or any optional forms of payment otherwise available to the Eligible Employee under the Plan, or in a lump sum.

Any such election shall be made in a manner described in sections 6.3 through 6.5 within the 90-day period ending on the Employee's Annuity Starting Date (or such later date as may be described in election forms provided by the Benefit Administrator). Notwithstanding the above, a Window-Eligible Employee who is also described in section 6.7 shall receive payment only in the form of a lump sum.

(c)    **Determination of Pension Amount.**

(1)    **Annuity Form of Payment.** A Service Pension payable in the form of an annuity to a Window-Eligible Employee who makes the election described in subsection (b), above, shall equal his or her Service Pension payable in such form as determined under the terms of the Plan other than this section 6.11. A Deferred Vested Pension payable in the form of an annuity to a Window-Eligible Employee who makes the election described in subsection (b), above, shall equal his or her Deferred Vested Pension payable in such form as determined under the terms of the Plan other than this section 6.11, and shall be reduced for commencement prior to Normal Retirement Age using the factors shown in Tables 2 and 2A.

(2)    **Lump Sum Form of Payment.**

(A)    **Service Pension Cash-Outs.** The lump-sum payable to a Window-Eligible Employee who is eligible for a Service Pension shall equal the actuarial equivalent present value (calculated using the assumptions in subsection (c)(2)(C), below) of the Service Pension otherwise payable to the Participant in the form of a Single Life Annuity commencing on his Annuity Starting Date, as determined under the provisions of the Plan other than this section 6.11.

(B)    **Deferred Vested Pension Cash-Outs.** The lump sum payable to a Window-Eligible Employee who is eligible for a Deferred Vested Pension shall equal the actuarial equivalent present value (calculated using the assumptions in subsection (c)(2)(C), below) of the Deferred Vested Pension otherwise payable to the Participant in the form of Single Life Annuity commencing at Normal Retirement Age (or age at Separation From Service, if later), as determined under the provisions of the Plan other than this section 6.11.

(C)    **Assumptions for Determining Cash-Out Amount.** The lump sum payable to a Window-Eligible Employee who elects a Service Pension or a Deferred Vested Pension cash-out shall equal the greater of the amounts determined using the assumptions in (i) and (ii), below:

(i)    The "GATT" amount determined using:

    I.    <u>Interest Rate:</u> An interest rate equal to 100% of the annual interest rate on 30-year Treasury securities

43

(published in the Federal Reserve Statistical Release) for the second calendar month preceding the first day of the calendar quarter containing the Annuity Starting Date.

II.    <u>Mortality:</u>  Mortality based on the 1983 Group Annuity Mortality Table, weighted 50% male and 50% female.

III.    <u>Age:</u>  The Window-Eligible Employee's age shall be measured in whole years and months as of the fifteenth day of the second month of the calendar quarter that contains the Employee's Annuity Starting Date.

(ii)    The "PBGC" amount determined using:

I.    <u>Interest Rate:</u>  An interest rate equal to (a) if the actuarial present value of the pension using the "applicable interest rate" does not exceed $25,000, the applicable interest rate, and (b) if the actuarial present value of the pension using the "applicable interest rate" does exceed $25,000, 120% of the applicable interest rate, except that the resulting present value shall not be less than $25,000. For this purpose "applicable interest rate" means the applicable PBGC interest rate for the calendar month prior to the first calendar month in the calendar quarter in which the Employee's Separation From Service occurs. The applicable PBGC interest rate for cash-out of a Service Pension shall be the PBGC immediate rate for lump sums and for cash-out of a Deferred Vested Pension shall be the PBGC deferred or immediate rates for lump sums, as applicable.

II.    <u>Mortality:</u>  Mortality based on the Non-Insured Unisex Pension 1984 (UP84) Mortality Table.

III.    <u>Age:</u>  The Window-Eligible Employee's age shall be measured in whole years and months as of the fifteenth day of the second month of the calendar quarter in which the Employee's Separation From Service occurs.

(D)    **Adjustment for Minimum Pension.** The lump sum amount for any benefit otherwise subject to adjustment by the minimum pension provisions of section 5.3(d) shall be actuarially adjusted using the assumptions in (C) to reflect the value of future increases in the minimum.

(E)    **Effect of Lump Sum Payment.** Subsequent to payment of a lump sum to any Window-Eligible Employee under this section 6.11, neither the Window-Eligible Employee nor his or her spouse or other beneficiary shall have the right to any further benefit whatsoever under the Plan and no right to any ad hoc increase that may be adopted under the Plan at any future date; provided, however, that this provision shall preclude payment of a death benefit payable under section 8.3 only for a Window-Eligible Employee who notifies the Benefit Administrator in writing at the time he or she elects the lump sum that he or she is

V00052

eligible for and intends to apply 10-year averaging treatment under federal income tax laws to the lump sum.

(F)  **Special Rules for Disabled Employees.** An Eligible Employee who is receiving short-term sickness disability benefits, who has a Separation From Service in the applicable period described in section 6.11(a) and, thus, becomes a Window-Eligible Employee may elect as an Annuity Starting Date under section 6.11(b) above either: (i) the date described in section 6.11(b), or (ii) the day following the date his or her short-term sickness disability benefits end. A Window-Eligible Employee described in the preceding sentence who elects to receive payment of his or her pension benefit on an Annuity Starting Date under this section 6.11 shall be deemed to have waived any right to receive a Disability Pension and to have elected instead to cash-out the accrued benefit under this Plan consisting of the Service Pension or Deferred Vested Pension to which he or she is otherwise entitled without reference to any special rules pertaining to Eligible Employees who resign or retire due to disability.

(G)  **Social Security Supplements.** In the event a Window-Eligible Employee who has elected a lump sum is entitled to a social security supplement under Exhibit IV, such social security supplement shall not be paid as a lump sum. The social security supplement shall be paid in the form of a temporary annuity as described in Exhibit IV.

(d)  **Effect of Cash-Out on Prior Service.** Notwithstanding any other provision in the Plan to the contrary, all prior Net Credited Service and Pension Accrual Service of an individual who receives a lump sum payment under this section 6.11 shall thereafter be disregarded for all purposes under the Plan.

## 6.12 Application for Benefits.

Except as provided in section 6.7 or 7.6 or Article X, benefit payments shall commence after properly written application for same has been received and approved by the Benefit Administrator. No payment shall be made for the period in which benefits would have been payable if the Participant or Beneficiary had made timely application therefor.

# ARTICLE VII. PRE-RETIREMENT DEATH BENEFITS

## 7.1 Separation From Service Due to Death.

(a)  **Separation From Service Due to Death Occurring Prior to August 6, 2000 or Due to Death of a Participant who is Not an Eligible Employee on or after August 6, 2000.** The following provisions apply in the case of a Vested Participant (i) whose Separation From Service occurs due to death prior to August 6, 2000 or (ii) who is not an Eligible Employee on or after August 6, 2000 and whose Separation From Service occurs due to death at any time:

(1)  **In General.** Subject to section 7.6, a monthly annuity benefit shall be paid to the surviving spouse of a Vested Participant whose Separation From Service is due to death prior to August 6, 2000. Unless the surviving spouse of a Vested Participant who dies prior to Normal Retirement Age elects to defer commencement of the monthly annuity, payments shall commence immediately following the Participant's death, and shall continue for the spouse's lifetime. The surviving spouse, however, may not elect to defer commencement of the monthly annuity benefit beyond the date on which the Vested Participant would

V00053

have attained Normal Retirement Age had the Vested Participant survived. If the surviving spouse dies before the annuity described in this subsection begins, the annuity is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2) **Amount.** The amount of each payment shall be equal to the amount the surviving spouse would have received following the Participant's death, if—

 (A) the Participant's Separation From Service had occurred on the day of his or her death,

 (B) the Participant had been eligible for and commenced receipt of an unreduced Service Pension on the day following such Separation From Service, in the form of a Qualified 50-Percent Joint and Survivor Annuity with the surviving spouse as Beneficiary, and

 (C) the amount payable during the Participant's lifetime had been reduced by applying Table 4.

(b) **Separation From Service Due to Death Occurring On or After August 6, 2000 and Prior to January 1, 2001 For a Participant Who is an Eligible Employee On or After August 6, 2000.** The following provisions apply in the case of a Vested Participant who is an Eligible Employee at some time on or after August 6, 2000 and whose Separation From Service occurs due to death on or after August 6, 2000 and prior to January 1, 2001:

(1) **In General.** Subject to section 7.6, a monthly annuity shall be paid to the surviving spouse of a Vested Participant whose Separation From Service is due to death on or after August 6, 2000 and prior to January 1, 2001. Unless the surviving spouse of a Vested Participant who dies prior to Normal Retirement Age elects to defer commencement of the monthly annuity, payments shall commence immediately following the Participant's death and shall continue for the spouse's lifetime. The surviving spouse, however, may not elect to defer commencement of the monthly annuity benefit beyond the date on which the Vested Participant would have attained Normal Retirement Age had the Vested Participant survived. If the surviving spouse dies before the annuity described in this subsection begins, the annuity is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2) **Amount.** The amount of each payment shall be equal to the amount the surviving spouse would have received following the Participant's death, if –

 (A) the Participant's Separation From Service had occurred on the day of his or her death,

 (B) the Participant had been eligible for and commenced receipt of an unreduced Service Pension on the day following such Separation From Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity with the surviving spouse as Beneficiary, and

 (C) the amount payable during the Participant's lifetime had been reduced by applying Table 4B.

(c) **Separation From Service Due to Death Occurring On or After January 1, 2001 For a Participant Who is an Eligible Employee On or After August 6, 2000.** The following provisions apply in the case of a Vested Participant who is an Eligible Employee at some time on or after August 6, 2000 and whose Separation From Service occurs due to death on or after January 1, 2001:

V00054

(1)  **In General.** A death benefit shall be paid to the Beneficiary of a Vested Participant whose Separation From Service is due to death on or after January 1, 2001. If (A) the Participant's Beneficiary pursuant to (2), below, dies before the benefit described in this subsection is paid or begins pursuant to (3), below, or (B) if the Participant has no Beneficiary pursuant to (2), below, the benefit is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2)  **Beneficiary.** A Participant's Beneficiary shall be determined under the following rules:

(A)  A Participant may designate any living person as his or her primary or contingent Beneficiary for the death benefit described in this section 7.1(c), and may change such designation from time to time prior to his or her death or Annuity Starting Date, in accordance with procedures prescribed by the Plan Administrator. However, if the Participant is married, the Participant's surviving spouse is the Beneficiary, unless the Participant designates a person other than his or her spouse as primary Beneficiary and his or her spouse consents to such designation as described in section 7.3. Notwithstanding the preceding sentence, a Participant's election of a non-spouse Beneficiary made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs shall automatically become null and void as of such first day.

(B)  If all designated primary and contingent Beneficiaries of a Participant die before benefits are paid or begin pursuant to (3), below, if the Participant has not designated a Beneficiary, if the Participant's surviving spouse has not consented to the Participant's designation of a non-spouse Beneficiary, or if the non-spouse designation was made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs and death occurs after such first day, the Beneficiary is the Participant's surviving spouse. If the Participant described in the preceding sentence has no surviving spouse, the Participant has no Beneficiary for purposes of this section 7.1(c).

(3)  **Form and Timing of Payment.** Subject to section 7.6, the following rules shall apply for purposes of determining the form and timing of payment to a Beneficiary under this section 7.1(c):

(A)  **Payment to Non-Spouse Beneficiary.** If a Participant's Beneficiary is someone other than his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the Beneficiary's lifetime; provided, however, that the death benefit shall be paid to the non-spouse Beneficiary in a lump sum as soon as administratively practicable following the Participant's death in the event the Participant's death occurs (i) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, or (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003.

(B)  **Payment to Spouse Beneficiary.** If a Participant's Beneficiary is his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the surviving spouse's lifetime, unless the surviving spouse of a Participant who dies prior to Normal Retirement Age elects to defer commencement of the monthly annuity to a date not later than the date the Participant would have attained Normal

47

V00055

Retirement Age had he or she survived. Notwithstanding the preceding sentence, in the event the Participant's death occurs (i) for IBEW-New England Employees, or after March 1, 2001 and prior to January 1, 2004, or (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003, the surviving spouse may elect to have the death benefit paid in a lump sum as soon as administratively practicable following the Participant's death. The surviving spouse's election shall be made within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. The surviving spouse may not defer payment of the lump sum to a later date, but may defer payment of the monthly annuity as described above.

(4)    **Amount.** The following provisions shall determine the amount of any payment to be made to a Beneficiary under this section 7.1(c):

(A)    **Annuity Payment Amount.** The amount of each monthly annuity payment shall be equal to the amount the Beneficiary would have received following the Participant's death, if –

(i)    the Participant's Separation From Service had occurred on the day of his or her death,

(ii)    the Participant had been eligible for and commenced receipt of an unreduced Service Pension on the day following such Separation From Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity (a Qualified 50-Percent Joint and Survivor Annuity if the Beneficiary is not the Participant's surviving spouse and is more than 25 years younger than the Participant), and

(iii)    the amount payable during the Participant's lifetime had been reduced by applying Table 4B.

(B)    **Lump Sum Payment Amount.** The lump sum payable to a Beneficiary under this section 7.1(c) shall equal the actuarial equivalent present value (calculated using the assumptions in section 6.11(c)(2)(C)) of the monthly annuity otherwise payable to the Beneficiary on an Annuity Starting Date as of the day following the Participant's death, as determined under section 7.1(c)(4)(A). For purposes of applying the assumptions in section 6.11(c)(2)(C), the date of the Participant's death shall be the date of the Participant's Separation From Service and the Beneficiary's age shall be used in place of the Participant's age.

## 7.2    Post-Employment Death Benefit.

(a)    **Death After Separation From Service – Separations Occurring Prior to August 6, 2000.** The following provisions apply in the case of a Vested Participant whose last day as an Eligible Employee occurred prior to August 6, 2000 and who dies after Separation From Service and prior to his or her Annuity Starting Date:

(1)    **In General.** Subject to section 7.6, a monthly annuity benefit shall be paid to the surviving spouse of a Vested Participant who dies after Separation From Service (with latest Separation From Service occurring prior to August 6, 2000), and before the Annuity Starting Date of a Service Pension, Deferred Vested Pension or Disability Pension. For purposes of this benefit, except in the case of a Service Pension or Disability Pension, an individual shall not be treated as a surviving spouse unless he or she shall have been married to the Participant for the entire one-year period preceding the Participant's death. If the surviving

V00056

spouse dies before the annuity described in this subsection begins, the annuity is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2)    **Commencement and Amount.**

(A)    **In General.** The amount and commencement date of the survivor benefit under this section shall depend on whether the Participant had attained his or her Earliest Retirement Age.

(B)    **Death On or After Earliest Retirement Age.** Unless the surviving spouse of a Participant who dies prior to Normal Retirement Age elects to defer commencement of this benefit, if the Participant dies on or after the Earliest Retirement Age, payments shall commence immediately, in the amount the surviving spouse would have received had the Participant retired with a Qualified 50-Percent Joint and Survivor Annuity with the surviving spouse as Beneficiary on the day of the Participant's death. The surviving spouse may not elect to defer commencement of this benefit beyond the date on which the Participant would have attained Normal Retirement Age had the Participant survived.

(C)    **Death Before Earliest Retirement Age.** If the Participant dies before the Earliest Retirement Age, payments shall commence on the date he or she would have attained Earliest Retirement Age, in the amount that would have been payable if the Participant had—

(i)    survived to the Earliest Retirement Age,

(ii)    commenced receipt of a Qualified 50-Percent Joint and Survivor Annuity with the surviving spouse as Beneficiary at the Earliest Retirement Age, and

(iii)    died on the day after he or she would have attained the Earliest Retirement Age.

A surviving spouse may elect to defer commencement of this benefit. An election to defer commencement may not extend the commencement date beyond the date on which the Participant would have attained Normal Retirement Age had the Participant survived.

(b)    **Death After Separation From Service Occurring On or After August 6, 2000 – With Death Occurring Prior to January 1, 2001.** In the event a Vested Participant whose last day as an Eligible Employee occurred on or after August 6, 2000 dies after Separation From Service and prior to January 1, 2001 and prior to the Annuity Starting Date of a Service Pension, Deferred Vested Pension, or Disability Pension, the monthly annuity benefit described in subsection (a) above shall be paid to the Vested Participant's surviving spouse, except that a Qualified 65-Percent Joint and Survivor Annuity and the factors in Table 4B shall be applied in determining the amount of the benefit instead of the Qualified 50-Percent Joint and Survivor Annuity and the factors in Table 4.

(c)    **Death After Separation From Service Occurring On or After August 6, 2000 – With Death Occurring On or After January 1, 2001.** The following provisions apply in the case of a Vested Participant whose last day as an Eligible Employee occurred on or after August 6, 2000 and who dies after Separation From Service and on or after January 1, 2001 and prior to his or her Annuity Starting Date.

(1)    **In General.** A death benefit shall be paid to the Beneficiary of a Vested Participant whose last Separation From Service occurs on or after August 6, 2000 and who dies on or after January 1, 2001, and before the Annuity Starting

49

Date of a Service Pension, Deferred Vested Pension, or Disability Pension. If (A) the Participant's Beneficiary pursuant to (2), below, dies before the benefit described in this subsection is paid or begins pursuant to (3), below, or (B) if the Participant has no Beneficiary pursuant to (2), below, the benefit is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2)     **Beneficiary.** A Participant's Beneficiary shall be determined under the following rules:

    (A)     A Participant may designate any living person as his or her primary or contingent Beneficiary for the death benefit described in this section 7.2(c), and may change such designation from time to time prior to his or her death or Annuity Starting Date, in accordance with procedures prescribed by the Plan Administrator. However, if the Participant is married, the Participant's surviving spouse is the Beneficiary, unless the Participant designates a person other than his or her spouse as primary Beneficiary and his or her spouse consents to such designation as described in section 7.3. Notwithstanding the preceding sentence:

        (i)     a Participant's election of a non-spouse Beneficiary made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs shall automatically become null and void as of the first day of the Plan Year in which the Participant's 35th birthday occurs; and

        (ii)     except in the case of a Service or Disability Pension, an individual shall not be treated as a surviving spouse unless he or she shall have been married to the Participant for the entire one year period preceding the Participant's death.

    (B)     If all designated primary and contingent Beneficiaries of a Participant die before benefits are paid or begin pursuant to (3), below, if the Participant has not designated a Beneficiary, if the Participant's surviving spouse has not consented to the Participant's designation of a non-spouse Beneficiary, or if the non-spouse designation was made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs and death occurs after such first day, the Beneficiary is the Participant's surviving spouse. If the Participant described in the preceding sentence has no surviving spouse, the Participant has no Beneficiary for purposes of this section 7.2(c).

(3)     **Form and Timing of Payment.** Subject to section 7.6, the following rules shall apply for purposes of determining the form and timing of payment to a Beneficiary under this section 7.2(c):

    (A)     **Payment to Non-Spouse Beneficiary.** If a Participant's Beneficiary is someone other than his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the Beneficiary's lifetime; provided, however, that the death benefit shall be paid to the non-spouse Beneficiary in a lump sum as soon as administratively practicable following the Participant's death in the event the Participant's death occurs (i) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, or (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003.

50

(B)  **Payment to Spouse Beneficiary.** If a Participant's Beneficiary is his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity payable for the surviving spouse's lifetime. Such benefit shall commence immediately following the Participant's death but, in the case of a Participant who dies prior to Normal Retirement Age, only if the surviving spouse elects within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. If such spouse does not elect immediate payment, payment shall be deferred until the Annuity Starting Date elected by the spouse which shall be a date not earlier than the date the Participant would have attained Earliest Retirement Age and not later than the date the Participant would have attained Normal Retirement Age had he or she survived. Notwithstanding the preceding sentence, in the event the Participant's death occurs (I) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, or (II) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003, the surviving spouse may elect to have the death benefit paid in a lump sum or in an immediate annuity for the spouse's life, as soon as administratively practicable following the Participant's death. The surviving spouse's election shall be made within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. The surviving spouse may not defer payment of the lump sum to a later date. If the surviving spouse of a Participant who dies prior to Earliest Retirement Age does not elect the immediate lump sum or the immediate annuity within the time prescribed by the Plan Administrator, payment of the death benefit as an annuity may not begin until the date the Participant would have attained the Earliest Retirement Age.

(4)  **Amount.** The following provisions shall determine the amount of any payment to be made to a Beneficiary under this section 7.2(c):

(A)  **Annuity Payment Amount.** The amount of each monthly annuity payment shall be equal to the amount the Beneficiary would have received following the Participant's death, if –

(i)  the Participant had survived and commenced receipt of a Qualified 65-Percent Joint and Survivor Annuity (a Qualified 50-Percent Joint and Survivor Annuity if the Beneficiary is not the Participant's surviving spouse and is more than 25 years younger than the Participant) on the Beneficiary's Annuity Starting Date, applying the reductions described in Article IV and Table 2A to reduce benefits for commencement dates prior to Earliest Retirement Age, and

(ii)  died on the day following the Beneficiary's Annuity Starting Date.

(B)  **Lump Sum Payment Amount.** The lump sum payable to a Beneficiary under this section 7.2(c) shall equal the actuarial equivalent present value (calculated using the assumptions in section 6.11(c)(2)(C)) of the monthly annuity otherwise payable to the Beneficiary on an Annuity Starting Date as of the day following the Participant's death, as determined under section 7.2(c)(4)(A). For purposes of applying the assumptions in section 6.11(c)(2)(C), the date of the Participant's death shall be deemed to be the date of the

V00059

Participant's Separation From Service and the Beneficiary's age shall be used in place of the Participant's age.

## 7.3    Spousal Consent.

A married Participant must obtain the consent of his or her spouse as described below to name a Beneficiary other than the spouse for the death benefit payable under Section 7.1 or 7.2:

(a)    The "Election Period" for a married Participant to deliver a waiver of the surviving spouse's eligibility for the death benefit in section 7.1 or 7.2 shall mean the period which begins on the date on which such individual becomes a married Participant, and ends on the earlier of (a) the date of the Participant's death or (b) the Annuity Starting Date. The Plan Administrator shall provide the Participant, within the Election Period, an explanation of the terms and conditions of the death benefits in section 7.1 and 7.2; the right of the Participant to waive payment of the death benefit to the spouse; the right of the spouse to consent to such waiver and to any alternate Beneficiary named by the Participant; and the effect of such waiver. No waiver shall be effective unless this notice has been previously provided.

(b)    Any election to waive the spouse's eligibility for the death benefit shall not take effect unless (1) the spouse consents irrevocably in writing to such election, (2) the spouse's consent acknowledges the designation of another Beneficiary, and (3) the spouse's consent is witnessed by a Notary Public. Any consent necessary under this provision will be valid only with respect to the spouse who signs the consent, and the designated Beneficiary acknowledged by that spouse. Any subsequent change of Beneficiary designation will require a new spousal consent. The requirements of this paragraph may be waived if it is established to the satisfaction of the Plan Administrator that the consent cannot be obtained because there is no spouse, or because the spouse cannot be located, or because of such other circumstances as may be prescribed by regulation, in which case a beneficiary designation may be delivered without a spousal waiver and will be deemed to be a qualified election.

(c)    Any election to waive the spouse's eligibility for the death benefit may be revoked by the Participant during the Election Period (as defined above) by giving written notice on a form approved by the Plan Administrator. Following such revocation, another waiver under this Section may be made at any time during said Election Period. A revocation of a prior waiver may be made by a Participant, without the consent of the spouse, at any time during said Election Period. Any actual or constructive election which purports to make a spouse eligible for the death benefit will automatically be revoked, and the spouse shall cease to be eligible to receive a death benefit in case of any subsequent death of the Participant, if and when that spouse is divorced, except to the extent ordered to the contrary by a qualified domestic relations order. However, if the Participant subsequently remarries, the new spouse will automatically be treated as the sole designated Beneficiary for the death benefit unless and until a waiver and designation of an alternate Beneficiary are thereafter delivered in accordance with the terms of this Plan (except as otherwise provided in a qualified domestic relations order).

## 7.4    Cost of Post-Employment Coverage.

There shall be no cost for the post-employment death benefit coverage under section 7.2 in the case of any Participant who is credited with at least one Hour of Service after June 30, 1994 (or, for IBEW-New England Employees, after August 4, 1994), or (b) in the case of any other Participant whose Annuity Starting Date occurs, or whose spouse begins to receive benefits pursuant to section 7.2, on or after June 30, 1998, regardless of the provisions of the Plan in effect at the time of the relevant Participant's Separation From Service.

V00060

### 7.5    Post-Election Death Benefit.

If a Participant dies before his or her Annuity Starting Date but after electing a joint and survivor annuity with a survivor annuity greater than 50% that is payable to the Participant's surviving spouse, the elected joint and survivor annuity will be used to determine any survivor benefit for the spouse under Sections 7.1 and 7.2. In the event a Participant is reemployed after an Annuity Starting Date and, as a result, the Participant's benefit payments are suspended under Article IX, the prior Annuity Starting Date shall be cancelled and death benefits shall be payable under this Article VII during the period of suspension. The death benefit for a Participant described in the preceding sentence shall be based on the Participant's entire Plan benefit, adjusted as described in section 5.9, if appropriate.

### 7.6    Payment of Small Amounts.

If the present value of an annuity otherwise payable under this Article VII does not exceed $3500, determined as of the date of the Participant's death, a lump sum payment equal to such present value shall be paid to the Participant's surviving spouse or other Beneficiary in lieu of annuity payments. For purposes of this section 7.6, present value as of a given date shall be determined on the same basis as would apply under section 6.7 for lump sums payable on such given date to Participants.

### 7.7    Notification of Change in Marital Status.

Effective January 1, 2001, each Participant shall have a duty to notify the Benefit Administrator, in writing, of any change in the Participant's marital status. In addition, the Participant shall supply the Benefit Administrator with the full name and address of his or her spouse. The Plan, the Plan Administrator, the Company and any Plan fiduciary shall not be held liable for any failure to provide benefits to the surviving spouse of a Participant who fails to provide this information.

# ARTICLE VIII. OTHER DEATH BENEFITS

### 8.1    Accident Death Benefit.

(a)    **In General.** This section provides a benefit in the event of the death of an Eligible Employee resulting from accidental injury arising out of and in the course of employment by a Participating Company (hereinafter referred to as "death by accident").

(b)    **Amount.** Subject to section 20.5, the amount of an Accident Death Benefit shall be equal to the greater of—

   (1)    the amount, if any, that would have been payable under section 8.2(b) in the event of death from sickness; or

   (2)    the lesser of $50,000 or three years' earnings as defined under section 8.4(a), plus the necessary expenses (not exceeding $500) of the burial of the deceased Employee.

(c)    **Recipients.** Payment of an Accident Death Benefit shall be subject to the conditions described in section 20.5, this Article VIII and elsewhere in this Plan and shall be made to the Employee's Beneficiaries, as provided in section 8.5.

(d)    **In the Course of Employment.** For purposes of this section, accidental injuries shall be considered as arising out of and in the course of employment only where the injury has resulted solely from accident during and in direct connection with the performance of duties to which the Employee is assigned in the service of a Participating Company, or which he is directed to perform by proper authority, or in voluntarily protecting a Participating Company's property or interests, and there must be a clear and well-established history of the cause and circumstances of injury accidentally inflicted, and they must be sufficient to produce the alleged injury, and there must be satisfactory evidence that such injury resulted in the Employee's death.

V00061

(e)    **Death Not By Accident.** Death resulting from infection of a cut, abrasion, scratch, puncture, or other wound not immediately disabling and not reported at the time of the occurrence causing the injury, or from sunstroke or frostbite, shall not be classed as due to accident, except at the discretion of the Plan Administrator.

## 8.2    Sickness Death Benefit.

(a)    **Applicability.** This section provides a benefit in the event of the death from sickness, or from an injury other than an accident described in section 8.1, of an Eligible Employee—

    (1)    whose hire date was prior to January 1, 1987,

    (2)    who was a Shared Services Employee who transferred from the American Telephone and Telegraph Company pursuant to the Divestiture Interchange Agreement, or

    (3)    who is described in section 8.4(b)(4) and has a hire date with Bell Atlantic or an affiliate prior to the benefit freeze date under the applicable Bell Atlantic plan.

(b)    **Amount.**

    (1)    **In General.** Except as provided in section 8.4(b), the amount of a Sickness Death Benefit shall be equal to the sum of:

        (A)    the Employee's annual basic rate of pay in effect as of December 31, 1986; plus

        (B)    all differentials paid in the 12-month period ending on December 31, 1986.

    (2)    **Part-Time Employees.** In the case of an Employee who normally serves a Participating Company on less than a full time basis, benefits in case of death shall be computed on the basis of the time constituting the Employee's normal service under his contract of hiring on December 31, 1986.

(c)    **Recipients.** Payment of the Sickness Death Benefit shall be subject to the conditions described in this Article VIII and elsewhere in this Plan and shall be made to Beneficiaries described under section 8.5.

## 8.3    Amount of Pensioner Death Benefit.

(a)    **Applicability.** This section shall be applicable in the case of a Participant who dies while receiving a Service Pension or Disability Pension (or has received a lump sum payment of such Pension pursuant to section 6.11, except as provided in section 8.3(f)), or a similar pension granted under any Predecessor Plan, and either—

    (1)    whose hire date was prior to January 1, 1987, or

    (2)    who was a Shared Services Employee who transferred from the American Telephone and Telegraph Company pursuant to the Divestiture Interchange Agreement, or

    (3)    who is described in section 8.4(b)(4) and has a hire date with Bell Atlantic or an affiliate prior to the benefit freeze date under the applicable Bell Atlantic plan.

(b)    **General Rule.** The Plan Administrator, in its discretion, may authorize a Death Benefit to the Beneficiaries described in section 8.5, the total amount of which shall not exceed the Sickness Death Benefit that would have applied under section 8.2(b) if the pensioner had died on his or her last day of active service before retirement on pension.

54

V00062

(c) **Certain Annuity Starting Dates.** In the case of a pensioner who retired after the last day of the month in which he reached Normal Retirement Age, and whose Annuity Starting Date was during the period from January 2, 1979 to August 10, 1980, inclusive, the Death Benefit shall not exceed the maximum Sickness Death Benefit which could have been paid if the pensioner had died on the last day of the month in which he reached Normal Retirement Age.

(d) **Reduced Benefit.** If the pensioner retired under a Predecessor Plan prior to the date specified in such Predecessor Plan for the payment of an unreduced death benefit subsequent to retirement, the death benefit shall not be less than the amount specified in subsection (b), reduced by 10 percent of such amount for each full year which has elapsed since his or her Annuity Starting Date.

(e) **Minimum Benefit.** In no event shall the death benefit payable under this section be less than the annual Service Pension or Disability Pension amount in effect immediately preceding the Participant's death (or the benefit amount described in section 8.2, if less).

(f) **10-Year Averaging Election.** No death benefit shall be payable upon the death of a Beneficiary, upon the death of a Participant eligible for a Deferred Vested Pension, or upon the death of a Participant who has received a lump sum payment under section 6.11 and who notifies the Benefit Administrator in writing at the time he or she elects a lump sum that he or she is eligible for and intends to apply 10-year averaging treatment under federal income tax laws to the lump sum.

## 8.4 Definition of Earnings.

(a) **Earnings for Accident Death Benefits.**

(1) **In General.** For purposes of determining the amount of an Accident Death Benefit under section 8.1(b)(2), earnings for full-time service for the 12-month period preceding the Participant's death shall be equal to the sum of:

(A) the Employee's annual basic rate of pay in effect as of the date of death; plus

(B) all differentials paid in the 12-month period ending on the date of death.

Earnings for the prior two 12-month periods shall be determined in a comparable fashion.

(2) **Part-Time Employees.** In the case of an Employee who normally serves a Participating Company on less than a full time basis, benefits in case of death shall be computed on the basis of the time constituting the Employee's normal service under his contract of hiring, except that in the case of an Employee who was in the service of a Participating Company on December 31, 1980 and who remains in such service continuously thereafter, earnings shall be computed on the basis of full time service (not including overtime).

(b) **Sickness and Pensioner Death Benefits.**

(1) **In General.** Earnings for purposes of determining the benefits under sections 8.2 and 8.3 shall be determined as provided in section 8.2(b).

(2) **Transfers From Bellcore or AT&T.** Any Eligible Employee who was eligible to participate in the Bellcore Pension Plan, the Bellcore Management Pension Plan, the AT&T Pension Plan or the AT&T Management Pension Plan, upon attaining the required service and was on the payroll of Bellcore or AT&T on December 31, 1986 and received service credit pursuant to the applicable

V00063

Interchange Agreement, shall have comparable earnings at Bellcore, or AT&T computed in accordance with this subsection (b) as of December 31, 1986.

(3) **NYNEX Management Pension Plan.** Any Eligible Employee who, on December 31, 1986—

    (A)    was eligible to participate in the NYNEX Management Pension Plan, upon attaining the required service, and

    (B)    was on the payroll of a Participating Company, shall have earnings computed in accordance with the provision of the NYNEX Management Pension Plan as of the day before such Employee became eligible to participate in the Prior NYNEX Pension Plan.

(4) **Transfers from Bell Atlantic.** Any Eligible Employee whose benefits which accrued under the Bell Atlantic Pension Plan (the Verizon Pension Plan for Mid-Atlantic Associates effective January 1, 2001) or the Bell Atlantic Management Pension Plan have been transferred to and are held for his or her benefit under the Plan on or after August 15, 1997 shall have his or her earnings, if any, for the Sickness Death Benefit under section 8.2 and the Pensioner Death Benefit under section 8.3 determined as of the benefit freeze date under such other plan, if he or she was then an active participant in such other plan.

(c) **Salary Reduction.** For all purposes under this section, earnings shall be determined prior to taking into account salary reductions pursuant to sections 125 and 401(k) of the Internal Revenue Code under any plan of a Participating Company, Bellcore or AT&T.

## 8.5   Eligible Beneficiaries.

(a) **In General.** The persons who may be Beneficiaries of the death benefits under this Article VIII are limited to the Beneficiaries described in this section. The amount payable to a Beneficiary shall be determined by the Plan Administrator, subject to the following provisions of this section and of section 8.6.

(b) **First Mandatory Beneficiaries.** Except as provided in subsection (d), the full maximum applicable Accident Death Benefit or Sickness Death Benefit shall be paid to one or more of the following persons:

    (1)    the spouse of the deceased Employee if living with the Employee at the time of the Employee's death,

    (2)    the unmarried child or children of the deceased Employee under the age of 23 years (or over that age if physically or mentally incapable of self-support) who were actually supported in whole or in part by the deceased Employee at the time of death, or

    (3)    a dependent parent who lives in the same household with the Employee or who lives in a separate household in the vicinity which is provided for the parent by the Employee.

If the Employee leaves more than one such person, the Plan Administrator, in its sole discretion, shall allocate the death benefit to any one or more than one of such possible Beneficiaries in such portions as it may determine.

(c) **Second Mandatory Beneficiaries.** If no person qualifies as a first mandatory Beneficiary under subsection (b), the maximum applicable Accident Death Benefit or Sickness Death Benefit may be paid to any spouse, dependent child or other dependent relative who does not qualify as a first mandatory Beneficiary but who was entitled to receive support from the deceased Employee at the time of his or her death. If the

V00064

Employee leaves more than one such person, the Plan Administrator, in its sole discretion, shall allocate the death benefit to any one or more than one of such possible Beneficiaries in such portions as it may determine.

(d)    **Payment of Final Expenses.** In the event that there is no Beneficiary qualified to receive death benefits under this Article VIII, the Plan Administrator may authorize such payments as may be required to defray the necessary expenses incident to the death of the Employee or pensioner and the disability immediately preceding, together with, in the case of death by sickness, the necessary expenses, not exceeding $500, of burial; provided, however, that the aggregate amount so paid shall not exceed the applicable maximum benefit.

## 8.6    Method of Payment.

(a)    **In General.** At the death of a Participant, the death benefit under this Article VIII may be paid in a lump sum or installment payments, the number and size of which may be varied in accordance with the circumstances, at the discretion of the Plan Administrator, provided that such payments shall not be made more frequently than annually, and shall be completed within five years after the death of the Participant.

(b)    **Exception For Participant Direction.** Notwithstanding the foregoing, death benefits payable to a mandatory Beneficiary shall be paid in accordance with a Participant's written direction filed with the Benefit Administrator, specifying payment in equal monthly installments over a stated period, provided that such payments shall not extend beyond the Participant's death by a period exceeding—

(1)    ten years, in the case of a direction filed prior to January 1, 1984, or

(2)    five years, in the case of a direction filed on or after January 1, 1984, provided that no such direction shall be filed after January 1, 1996.

(c)    **Payment on Death of Beneficiary.** In the event of the death of a Beneficiary who is receiving or is entitled to receive payments under this section, the remainder of the amount previously determined shall be payable, in a manner determined by the Plan Administrator, to any remaining first or second mandatory Beneficiary, or to the deceased Beneficiary's estate; provided that all such payments shall be completed within five years of the death of the Participant.

(d)    **Advance Payment.**

(1)    **Remainder of Payroll Period.** Upon a Participant's death, the Plan Administrator, without awaiting determination of the Beneficiary or Beneficiaries, if any, to whom the award will be made, may cause to be paid an amount equivalent to the wages, disability benefits or pension to which the deceased was entitled for the portion of the Participant's final payment period which preceded his or her death, and such payment may be made to the spouse of the deceased, or to some other suitable person selected by the Plan Administrator. Any such payment shall constitute a part of the death benefit award.

(2)    **Urgent Expenses.** The Plan Administrator in its discretion, may authorize payment, before the final settlement, of a part of the award not exceeding $1500, to meet urgent expenses incident to the death and the immediately preceding disability of the deceased. If any of the persons to whom an award may be payable cannot be found or cannot be conveniently communicated with or are incompetent to authorize use of any part thereof for the burial of the deceased and the payment of necessary expenses incident to his death and preceding disability, the Plan Administrator, in its discretion may make such payments, as

57

a part of the award, as in its judgment may be reasonable for the proper burial of the deceased and the payment of necessary expenses incident to his death and disability immediately preceding.

(e)    **Payment of Interest.**

(1)    **In General.** In the event that a death benefit is paid in installments, and such portion of the death benefit which remains unpaid after any installment shall be credited with a rate of interest from the date of such installment and such interest shall be paid as part of the next installment. The rate of interest shall be determined or redetermined solely in the discretion of the Plan Administrator, but the rate of interest shall not be redetermined more often than once in any calendar year.

(2)    **Exceptions.** Notwithstanding the foregoing, no interest shall be credited beyond the date of death of the initial Beneficiary who is receiving the death benefit in installments unless the Plan Administrator determines to pay any unpaid balance to another beneficiary in installments, and no interest shall be credited or paid in any case when installment payments of death benefits hereunder are offset by any payments under law pursuant to section 20.5.

## 8.7    Source of Payments.

The source for payments made under this Article VIII shall be determined under section 16.8.

## 8.8    Claims.

All claims for death benefits must be made within one year of the death on which the claim is based. In case notice of the existence of a spouse, child or other dependent relative shall not be provided to the Benefit Administrator within one year after the Participant's death, the Plan shall not be required to recognize any claim made by or in behalf of any such person.

## 8.9    Death After Termination of Employment.

Except as provided in section 8.3, a death benefit under this Article VIII shall not be payable in the case of any person who dies after he has ceased to be an Employee, unless such person became disabled by reason of accident or sickness while an Employee and continued disabled, until death, to such a degree as to be unable to engage in any gainful occupation. In such cases a death benefit may be paid, in the discretion of the Plan Administrator, provided it has been furnished from time to time with such proof of continued disability as it may have required and provided it has been permitted to make or have made by a physician, such examinations of the disabled person as it has deemed necessary in order to ascertain his condition. The amount of the death benefit if any, shall not exceed the amount which could have been paid if the disabled person had died on the day he ceased to be an Employee.

# ARTICLE IX. SUSPENSION OF PENSION PAYMENTS

## 9.1    General Suspension Rule.

No pension benefit payments (and no social security supplement payments under Exhibit III or IV) under the Plan shall be made for any month in which an Employee has completed 40 or more Hours of Service as an Eligible Employee or as an Employee eligible to participate in the Bell Atlantic Pension Plan (the Verizon Pension Plan for Mid-Atlantic Associates, effective January 1, 2001).

## 9.2    Exceptions to General Suspension Rule.

A pension amount which otherwise is payable shall not be suspended under section 9.1 in the cases described below.

(a)    **Working Retirees.**

V00066

Payments shall not be suspended while a Participant is a Working Retiree on or after June 1, 1996 or is a "Rehired Associate Retiree" under the Bell Atlantic Pension Plan (the Verizon Pension Plan for Mid-Atlantic Associates effective January 1, 2001).

(b)    **Failure to Provide Notice.**

A pension amount otherwise payable on or after Normal Retirement Age shall not be suspended until the notice described in section 9.3 has been provided to the Participant.

(c)    **Payments After Age 70-½.**

Suspension rules shall not apply after a mandatory commencement date under Article X.

(d)    **Interchange Agreement.**

In the case of an individual who, as of January 1, 1984 was a participant in a Former Affiliate Plan, any portion of the pension benefit payable under this Plan which is attributable to the recognition of additional pay and service under an Interchange Agreement shall be payable without regard to section 9.1.

## 9.3    Suspension of Benefits Notice.

In the case involving the suspension of pension benefits otherwise payable on or after Normal Retirement Age, the Benefit Administrator shall provide notice of the suspension to the Participant. The notice shall be made by personal delivery or first class mail during the first calendar month for which payments are to be withheld. The notice shall contain—

(a)    a general description of the reasons why payments are to be suspended;

(b)    a general description of the Plan provisions relating to the suspension of benefits, and a copy of such provisions;

(c)    a statement that applicable Department of Labor regulations may be found in section 2530.203-3 of the Code of Federal Regulations; and

(d)    a statement that a review of the suspension may be requested under the claims procedure for the Plan.

To the extent that the summary plan description for the Plan contains information that is substantially the same as the information required by this section, the notice may refer the Participant to the relevant pages of the summary, provided that the Participant is informed how to obtain a copy of the summary, and provided that a request for a copy is honored within 30 days. A Participant may ask the Benefit Administrator in writing to make a determination as to whether specific contemplated reemployment will result in suspension of benefits.

## 9.4    Payments When Suspension Lapses After Normal Retirement Age.

In a case involving the suspension of pension amounts which otherwise would have been paid after Normal Retirement Age—

(a)    monthly pension benefit payments (but not social security supplement payments) shall resume no later than the first day of the third calendar month following the last calendar month in which the Participant completed 40 or more Hours of Service as an Eligible Employee or as an Employee eligible to participate in the Bell Atlantic Pension Plan (the Verizon Pension Plan for Mid-Atlantic Associates, effective January 1, 2001) (the "last 40-hour month"), and

(b)    the initial payment in connection with the subsequent commencement or recommencement of pension benefit payments shall include—

(1)    the amount otherwise payable for such month, plus the amounts payable for each preceding month since the last 40-hour month; less

V00067

(2)    the amount of pension benefit payments which were made for one or more months notwithstanding that a suspension under section 9.1 was in effect for such months.

## 9.5    Resumption of Social Security Supplements.

Social security supplement payments under Exhibit III or IV will not resume once suspended pursuant to section 9.1 unless pension payments resume prior to the Participant's reaching the earliest eligibility age for a Social Security old-age benefit.  If pension payments resume prior to the Participant's reaching the earliest eligibility age for a Social Security old-age benefit, social security supplement payments to the Participant in effect immediately prior to the suspension, if any, shall resume when pension payments resume, at the same rate as in effect prior to the suspension. There shall be no increase in the supplement amount and no extension of the period over which the supplement is payable by reason of the period of suspension.

## 9.6    Form of Payment When Benefits Resume.

A Participant whose benefits have been suspended during a period of reemployment shall have a new Annuity Starting Date and shall be entitled to elect a form of payment under Article VI with respect to his or her entire Plan benefit, including amounts accrued both before and during reemployment, adjusted under section 5.9, if appropriate.

# ARTICLE X. MANDATORY COMMENCEMENT OF MINIMUM PENSION BENEFITS

## 10.1    Mandatory Commencement and Duration.

(a)    **Basic Rule.**

Notwithstanding any contrary provisions of any preceding Article, payment of a Participant's pension benefits shall commence no later than April 1 following the calendar year in which he or she attains age 70-1/2, whether or not the Participant remains actively employed.  The form and timing of all distributions under the Plan shall comply with the requirements of section 401(a)(9) of the Code and regulations thereunder, including the incidental death benefit requirements of section 401(a)(9)(G).

(b)    **Exception for Participants Who Attain Age 70-½ Before January 1, 1988.**

(1)    **In General.**
In the case of a Participant who attained age 70-1/2 before 1988, payment of pension benefits shall commence no later than the April 1 following his or her Separation From Service.

(2)    **Five-Percent Owners.**
Notwithstanding the preceding sentence, in the case of such a Participant who is a five-percent owner (as described in section 416(i) of the Code) at any time during the Plan Year ending in or with the calendar year in which such Participant attains age 66-1/2, or during any subsequent Plan Year, payment of pension benefits shall commence no later than the April 1 following the calendar year in which such Participant attains age 70-1/2, regardless of whether he or she has incurred a Separation From Service.

(c)    **Periodic Benefit Payments.**
No election under Article VI shall be effective unless the Participant's total benefit will be distributed over a period that will not exceed—

(1)    the life of the Participant;

(2)    the lives of the Participant and the Participant's Beneficiary;

V00068

(3)  a period certain not extending beyond the life expectancy of the Participant; or

(4)  a period certain not extending beyond the joint life and last survivor expectancy of the Participant and the Participant's Beneficiary.

## 10.2  Amount of Mandatory Distributions Prior to Separation From Service.

(a)  **Initial Payment Date.**

The amount payable on the initial payment date required under section 10.1, and for each remaining month of the same calendar year,—

(1)  shall be determined on the basis of pay and service through December 31 of the next preceding year;

(2)  shall not include retroactive amounts for months preceding the initial payment date; and

(3)  shall be paid in the form of a Single Life Annuity (provided that death benefits described in section 7.1 shall continue to be payable in the event the Participant dies prior to Separation From Service).

(b)  **Recomputation.**

Effective as of January 1 of each calendar year following the calendar year in which the initial payment date occurs, the amount required to be paid shall be redetermined based on pay and service through December 31 of the next preceding year, provided that the amount of any increase resulting from such additional pay and service with respect to benefits payable in the same form shall be offset in accordance with section 5.12 above.

## 10.3  Separation From Service After In-Service Payments.

The date following a Participant's Separation From Service shall be an Annuity Starting Date, such that the notice and election procedures of Article VI shall apply as of such date with respect to the Single Life Annuity payable to the Participant on such date, determined under section 10.2(b) using the Annuity Starting Date as the final adjustment date under that section.

## 10.4  Statutory Mandatory Commencement Rule.

Notwithstanding any provision of the Plan to the contrary, unless the Participant otherwise elects in writing, payment of pension benefits shall commence not later than the sixtieth day after the close of the Plan Year in which occurs the latest of the Participant's—

(a)  attainment of age 65,

(b)  attainment of the 10th anniversary of the date he or she became a Participant under the Plan, or

(c)  Separation From Service.

# ARTICLE XI. INTERCHANGE COMPANIES

## 11.1  Hiring an Interchange Agreement Employee.

(a)  **Recognition of Compensation and Service.**

To the extent provided under the terms of an Interchange Agreement which is in effect with respect to an Employee who is hired by a Participating Company, prior compensation and periods of employment shall be recognized in determining years of ERISA Service, Net Credited Service, Pension Accrual Service, and pay in a manner consistent with the terms of this Plan.

61

V00069

(b)     **Transfer of Assets.**

For each case for which recognition of pay and service under subsection (a) occurs, the Plan shall receive assets attributable to such pay and service from the applicable Interchange Company Pension Plan, in an amount determined in accordance with IRS Regulations and the terms of the applicable Interchange Agreement.

(c)     **Amount of Benefits.**

In a case involving the recognition of service with respect to a plan maintained by a Former Affiliate which is substantially similar to this Plan, the pension benefits payable under this Plan shall be determined under section 5.6 or section 5.7, whichever is applicable.

(d)     **Waiver of Portability.**

For Employees hired on or after July 1, 1995, an Employee who is potentially eligible for portability treatment as described in this section 11.1, may waive portability treatment by signing a waiver of portability in a form approved by counsel to the Committee, in accordance with the terms of the Mandatory Portability Agreement, dated as of January 1, 1985, as amended. For an Employee who waives portability under this section 11.1(d), none of the special rules of sections 11.1(a) through (c) shall apply.

## 11.2   Individual Hired by an Interchange Company.

In the case of a Participant who is hired by an Interchange Company except for any Participant who elected to waive portability treatment at any stage in the Participant's career at any company, to the extent required under an applicable Interchange Agreement,

(a)     the obligation for benefits otherwise payable under the Plan shall be transferred to the applicable Interchange Company Pension Plan,

(b)     assets attributable to such benefit obligation shall be transferred to such pension plan, and

(c)     once such obligation and assets are transferred, no pension benefits shall be payable under this Plan.

The obligation with respect to an Eligible Employee's Plan benefits shall be transferred to such Interchange Company Pension Plan on the earlier of (1) January 1 of the year following the year which includes the date as of which the Eligible Employee's prior service with any Participating Company is included (or would be included but for a Break Year incurred by such Employee) in his or her pension accrual service under such other plan (subject to repayment of any previously cashed-out benefit in accordance with the terms of such other plan), or (2) the last day of the first month following the month in which the Eligible Employee dies or retires, if such death or retirement occurs after the date as of which the Eligible Employee's service with a Participating Company is included in his or her pension accrual service under such Interchange Company Pension Plan.

## 11.3   Effect of Lump-Sum Distribution for Interchange Agreement Employees Entering the Plan.

The crediting of prior service to an Employee described in section 11.1 (for purposes of years of ERISA Service) shall not be altered or eliminated solely because such Employee has elected to take a lump-sum distribution from the Interchange Company Pension Plan in which he or she was a participant. However, in such a case there shall be no crediting of prior service for Pension Accrual Service and Net Credited Service purposes and no assets transferred from the Interchange Company Pension Plan to the Trust associated with this Plan unless and until the Employee satisfies the lump sum repayment or other recapture provisions under the Interchange Company Pension Plan.

## 11.4   Special Vesting Rules.

The vesting schedule for the transferred portion of the benefit described in section 11.1(b) shall be determined by taking into account the sum of the individual's prior vesting service under the Interchange

V00070

Company Pension Plan plus the individual's subsequent years of ERISA Service under this Plan, and then utilizing either the vesting schedule under this Plan or the vesting schedule which was in effect under the Interchange Company Pension Plan when the individual ceased to be an active participant under that plan, whichever vested percentage is greater.

## 11.5  Effect of Lump-Sum Distribution for Interchange Agreement Employees Leaving the Plan

The Plan shall accept on behalf of a former Participant who received a lump-sum distribution of his or her entire vested accrued benefit under the Plan and subsequently becomes a participant in an Interchange Company Pension Plan that requires the individual to repay the distribution in order to be eligible for portability treatment (and offers no alternate offset provision) a repayment of the full amount of the distribution, with interest.  Interest on the lump-sum distribution shall be calculated for each month, beginning with the month in which the distribution was made and ending with the month of repayment, using 1/12 of the annual PBGC immediate annuity rate in effect for January of the year in which such month occurs.  The distribution shall be repaid in a lump-sum payment, within 12 months of the date on which the individual is notified by the Plan of the amount of the repayment, in whole or in part as a rollover from a conduit IRA, with any remaining portion payable in after-tax dollars.  Within 12 months of receiving the repayment, the Plan shall transfer to the Interchange Company Pension Plan the greater of (a) the amount of the repayment or (b) the amount that would have been transferred under the Interchange Agreement had the individual never received a distribution, and the individual's eligibility for a pension hereunder shall cease.  Except as provided in the preceding sentences, there shall be no transfer of assets or liabilities from this Plan to the subsequent Interchange Company Pension Plan for an individual who elects to cash-out his or her accrued benefit under this Plan and subsequently becomes eligible for portability under another Interchange Company Pension Plan.

# ARTICLE XII. MAXIMUM BENEFIT LIMITATIONS

## 12.1  Basic Limitation.

(a)    **In General.**

The limits described in this section shall apply in a case of a Service Pension or Deferred Vested Pension benefit—

(1)    with an Annuity Starting Date on the Participant's Social Security Retirement Age (as defined below), and

(2)    payable in the form of a Single Life Annuity, or a joint and survivor annuity with the Participant's spouse as Beneficiary.

(b)    **Limit.**

The annual Service Pension or Deferred Vested Pension amount payable under this Plan in a form and with a commencement date described in subsection (a), together with similar benefits payable with respect to the Participant in the same form and with the same commencement date under other qualified defined benefit plans maintained by the Company or an Affiliate, shall in no event exceed the lesser of—

(1)    $90,000, or

(2)    100 percent of the Participant's average Limitation Compensation (as defined below) for the three consecutive Plan Years that produce the highest average.

(c)    **COLAs.**

V00071

The otherwise applicable limits under subsection (b) shall be adjusted each year to such other amount as shall be determined by the Secretary of the Treasury under Code section 415(d) to reflect cost-of-living adjustments.

## 12.2   Limitation for Participant Also Covered Under Defined Contribution Plan.

In the case of a Participant who is or has been covered under a qualified defined contribution plan maintained by the Company or an Affiliate and who does not complete an Hour of Service on or after January 1, 2000, the rate of accrual under this Plan shall be reduced to the extent necessary to ensure that the sum of the Participant's Defined Benefit Fraction (as defined below) and Defined Contribution Fraction (as defined below) does not exceed 1.0 for any Limitation Year.

## 12.3   Adjustment for Benefits Commencing Before Social Security Retirement Age.

In a case in which the Annuity Starting Date precedes the Participant's Social Security Retirement Age, the maximum permitted annual Service Pension or Deferred Vested Pension benefit—

(a)     In the case of Annuity Starting Dates after 1994, shall be determined as follows:

(1)     In the case of an Annuity Starting Date on or after age 62, the limit described in section 12.1(b)(1) shall be reduced by—

(A)     five-ninths of 1 percent for each of the first 36 months, and

(B)     five-twelfths of 1 percent for each additional month (up to 24 months), by which the Annuity Starting Date precedes the Social Security Retirement Age.

(2)     In the case of an Annuity Starting Date before age 62, the limit described in section 12.1(b)(1) shall be actuarially equivalent to the amount, which would have applied under paragraph (1), in the case of an age 62 Annuity Starting Date. For this purpose, the adjusted limit shall equal the lesser of the actuarially equivalent amount computed (A) using the Plan interest rate and the Plan mortality table (or Plan tabular factor) used for determining early retirement benefits, or (B) using 5% interest and the applicable mortality table prescribed by the Secretary of the Treasury under Code section 417(e)(3).

(b)     in the case of Annuity Starting Dates in 1994, shall be an amount determined under Table 6 of the Prior NYNEX Pension Plan incorporated herein by this reference, or

(c)     in the case of Annuity Starting Dates in years before 1994, shall be an amount determined under the applicable table in the Prior NYNEX Pension Plan. Such tables shall be incorporated herein by this reference.

## 12.4   Adjustment for Other Forms of Payment.

A Service Pension or Deferred Vested Pension benefit which is payable in a form other than those described in section 12.1(a)(2) shall be limited to an amount which is actuarially equivalent to the maximum Single Life Annuity amount which otherwise would be permitted under the preceding and following sections of this Article XII. For this purpose, for Limitation Years after 1994, the Plan benefit in such other form is converted to an equivalent annual Single Life Annuity benefit payable at the same age which is equal to the greater of (a) the Single Life Annuity computed using the Plan interest rate and the Plan mortality table (or Plan tabular factor) used for determining actuarial equivalence for the particular form of benefit, or (b) the Single Life Annuity computed using a 5% interest assumption (or, in the case of a form of benefit subject to section 417(e)(3) of the Code, the applicable "GATT" interest rate under section 6.7(c)) and the applicable mortality table prescribed by the Secretary of the Treasury under Code section 417(e)(3). Such equivalent annual Single Life Annuity benefit may not exceed the maximum Single Life Annuity amount otherwise permitted under this Article XII.

V00072

## 12.5   Annuity Starting Date After Social Security Retirement Age.

In a case in which the Annuity Starting Date is after the Participant's Social Security Retirement Age and the Participant's benefit is actuarially increased for payment after Normal Retirement Age, the maximum permitted annual benefit shall be an amount which is actuarially equivalent to the amount which otherwise would be permitted under section 12.1(b). For this purpose, for Limitation Years after 1994, the adjusted limit shall equal the lesser of the actuarially equivalent amount computed (a) using the Plan interest rate and Plan mortality table (or Plan tabular factor) used for determining late retirement benefits, or (b) using 5% interest and the applicable mortality table prescribed by the Secretary of the Treasury under Code section 417(e)(3).

## 12.6   Adjustment for Years of Service.

(a)   **Dollar Limitation.**

In the case of a Participant with a Pension Accrual Service of fewer than 10 years, the dollar limitation under section 12.1(b)(1) shall be adjusted to an amount equal to the amount otherwise applicable times the greater of—

   (1)   10 percent, or

   (2)   a fraction, the numerator of which is the number (not in excess of 10) of years of Pension Accrual Service, and the denominator of which is ten.

(b)   **Compensation Limitation.**

In the case of a Participant with fewer than 10 years of ERISA Service, the applicable limitation amount under section 12.1(b)(2) shall be equal to the amount otherwise applicable times the greater of—

   (1)   10 percent, or

   (2)   a fraction, the numerator of which is the total number (not in excess of 10) of years of ERISA Service credited to the Participant, and the denominator of which is ten.

## 12.7   Preservation of December 31, 1986 Accrued Benefit.

Nothing in this Article XII shall prohibit payment of any benefit accrued under the Plan as of December 31, 1986, to the extent not limited by the provisions of section 415 as in effect on such date.

## 12.8   Definitions.

For purposes of this Article XII, the capitalized terms listed below shall have the specified meaning.

(a)   **Annual Addition**
shall mean the sum, credited to a Participant's accounts under all qualified defined contribution plans maintained by the Company or an Affiliate, of—

   (1)   Employer contributions, including amounts made under cash or deferred arrangements described in section 401(k) of the Code;

   (2)   forfeitures;

   (3)   Employee contributions; provided that Employee contributions for calendar years prior to 1987 which were disregarded under the provisions of the Plan in effect prior to January 1, 1987 shall continue to be disregarded;

   (4)   for Plan Years beginning after March 31, 1984, amounts allocated to an individual medical account (as defined in section 415(l) of the Code) which is part of any defined benefit plan maintained by the Company or an Affiliate; and

V00073

(5)    amounts (derived from contributions paid after December 31, 1985, in taxable years ending after such date) attributable to post-retirement medical benefits allocated to the separate account of a key employee (as defined in section 419A(d)(3) of the Code) under a welfare benefit fund (as defined in section 419(e) of the Code) maintained by the Company or an Affiliate;

Notwithstanding the foregoing, any contribution made after a Participant's Separation From Service for the purpose of providing medical care (within the meaning of Code section 419A(f)(2)) shall not be treated as an Annual Addition. Restored forfeitures, repaid distributions, rollover contributions, and loan payments shall not be treated as Annual Additions.

(b)    **Defined Benefit Fraction**

shall mean a fraction, the numerator of which is the sum of the Participant's Projected Annual Benefits (as defined below) under all qualified defined benefit plans (whether or not terminated) maintained by the Company or an Affiliate, and the denominator of which is the lesser of—

(1)    1.25 times the dollar limitation of section 12.1(a)(1) in effect for the Plan Year, or

(2)    1.4 times the Participant's average Limitation Compensation for the three consecutive Plan Years that produce the highest average.

Notwithstanding the above provision, if the Participant was a participant in one or more defined benefit plans maintained by the Company or an Affiliate which were in existence on May 6, 1986, the denominator of this fraction shall not be less than 1.25 times the sum of the annual benefits under such plans which the Participant had accrued as of the end of the last Limitation Year beginning before January 1, 1987. The preceding sentence shall apply only if the defined benefit plans, individually and in the agree-gate, satisfied the requirements of Code section 415 for all limitation years before 1987.

(c)    **Defined Contribution Fraction.**

(1)    **In General.**

"Defined Contribution Fraction" shall mean a fraction, the numerator of which is the sum of the Annual Additions to the Participant's accounts under all qualified defined contribution plans (whether or not terminated) maintained by the Company or an Affiliate for the current and all prior Plan Years, and the denominator of which is the sum of the lesser of the following amounts determined for such year and for each prior year of service with the Company or its Affiliates—

(A)    1.25 times the dollar limitation in effect under Code section 415(c)(1)(A) for such year, or

(B)    1.4 times the amount which may be taken into account under Code section 415(c)(1)(B).

(2)    **Adjustment Under Tax Reform Act of 1986.**

Effective December 31, 1986, the numerator of the Defined Contribution Fraction shall be permanently reduced (but not below zero) by an amount equal to the product of—

(A)    the sum (determined as of December 31, 1986) of the Defined Contribution Fraction plus the Defined Benefit Fraction minus one, times

(B)    the denominator of the Defined Contribution Fraction as of December 31, 1986.

Solely for purposes of this paragraph, the Defined Benefit Fraction shall be determined as if the changes to section 415 of the Code under the Tax Reform Act of 1986 were in effect.

66

V00074

(d)    **Limitation Compensation**
shall mean the total of regular, overtime, bonus, and other cash compensation paid or made available to the Employee during the Plan Year, but not including the items listed in Treasury regulation section 1.415-2(d)(3) (relating to deferred compensation, stock options, and proceeds from the sale of certain securities) or, for Limitation Years beginning before January 1, 1998, amounts deferred as a result of a salary reduction election under section 401(k), 125 or 132(f)(4) of the Code.

(e)    **Limitation Year**
shall mean the Plan Year.

(f)    **Projected Annual Benefit**
shall mean the annual Service Pension or Deferred Vested Pension benefit to which the Participant would be entitled under the terms of the Plan and all other defined benefit plans maintained by the Company or an Affiliate, if the Participant continued employment until his or her Normal Retirement Age (or current age, if later) and the Participant's Limitation Compensation for the Plan Year and all other relevant factors used to determine such benefit remained constant until Normal Retirement Age (or current age, if later).

(g)    **Social Security Retirement Age**
shall mean—

    (1)    age 65, for a Participant born before 1938;

    (2)    age 66, for a Participant born after 1937, but before 1955; and

    (3)    age 67, for a Participant born after 1954.

# ARTICLE XIII. ASSIGNMENT OF BENEFITS

## 13.1  Assignment or Alienation.
Except as otherwise required by law, or as permitted by this Article, no benefit or interest available under the Plan will be subject to assignment or alienation, voluntarily or involuntarily, within the meaning of section 1.401(a)-13 of IRS Regulations. The prohibition in the preceding sentence shall apply to the creation, assignment, or recognition of a right to any benefit payable pursuant to a domestic relations order, unless such order is determined to be a qualified domestic relations order as defined in section 206(d) of ERISA and section 414(p) of the Code, under uniform procedures applied for such determinations. Notwithstanding anything in the Plan or this Article to the contrary, this Article XIII (as well as any similar provision in the Prior NYNEX Pension Plan) is intended to address the requirements of section 401(a)(13) of the Code and section 206 of ERISA and federal rulings and regulations issued thereunder, and to permit actions by Plan fiduciaries (including, but not limited to, such things as the recovery of benefit overpayments or the withholding of taxes from Plan benefits) that do not violate the principles of section 401(a)(13) of the Code or section 206 of ERISA as described in such rulings and regulations.

## 13.2  QDRO Determinations.
A determination that a domestic relations order does or does not constitute a qualified domestic relations order shall be binding and conclusive as to all parties thereto. Present values calculated pursuant to section 206(d) of ERISA and section 414(p) of the Code shall be based on the interest and mortality assumptions set forth in Table 7 and Table 8, respectively.

## 13.3  Revocable Partial Assignment Permitted.
Once a Participant or Beneficiary begins receiving benefits under the Plan, the Participant or Beneficiary may assign or alienate the right to future benefit payments provided that the assignment or alienation—

    (a)    is voluntary and revocable;

V00075