(b)    does not in the aggregate exceed 10 percent of any benefit payment; and

(c)    is neither for the purpose, nor has the effect, of defraying Plan administration costs.

Any such assignment shall be in accordance with IRS Regulation section 1.401(a)-13(d)(1) and any other applicable provision of law.

### 13.4    Revocable Acknowledged Assignment Permitted.

An arrangement shall be permitted whereby a Participant or Beneficiary directs the Plan to pay all or any portion of a benefit payment to a third party (including a Participating Company) if—

(a)    the arrangement is revocable at any time by the Participant or Beneficiary, and

(b)    the third party files a written authorization with the Plan Administrator, stating that the third party has no enforceable right in, or to, any plan benefit payment or portion thereof, except to the extent of payments actually received.

Any such assignment shall be in accordance with IRS Regulation section 1.401(a)-13(d)(1) and any other applicable provision of law.

### 13.5    Special Rule for Certain Judgments and Settlement Agreements.

Effective on and after August 5, 1997, a Participant's benefit may be offset by an amount that the Participant is ordered or required to repay the Plan pursuant to—

(a)    a judgment of conviction for a crime involving the Plan,

(b)    a civil judgment (including a consent order or decree) in an action brought in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA, or

(c)    a settlement agreement between the Secretary of Labor or the Pension Benefit Guaranty Corporation and the Participant in connection with a violation (or alleged violation) or part 4 of subtitle B of title I of ERISA.

Any such offset shall be subject to the provisions of section 401(a)(13)(C) of the Code.

# ARTICLE XIV. ADMINISTRATION

### 14.1    Sponsor, Plan Administrator.

The Chairman of the Committee shall be the Plan Administrator and the Company shall be the sponsor of the Plan as those terms are defined in ERISA.

### 14.2    The Plan Administrator.

The Plan Administrator shall have such powers as may be necessary to enable it to administer the Plan, except for powers reserved to the Company, the Chief Financial Officer of the Company, the Treasurer of the Company, the Committee, or the Plan trustee, or delegated to Claims and Appeals Administrators, the Benefit Administrator, or to investment managers or other designated fiduciaries or service providers to the trust of the Plan. The Plan Administrator shall have the authority and full discretion to adopt such rules for the administration of the Plan as it may find appropriate; provided, however, that such rules shall be consistent with the terms of the Plan and applicable law. The Secretary of the Committee, with the advice of counsel to the Plan Administrator, shall have such powers as are stated in this Plan and as are delegated by the Plan Administrator.

### 14.3    Delegation.

The Company and the Plan Administrator may delegate authority to administer specified aspects of the Plan to officers or employees of the Company, to one or more Participating Companies, to committees composed of such individuals or to third-party administrators. The Plan Administrator shall have the

V00076

authority to appoint or provide for the appointment of one or more persons or committees that shall have authority, as Claims and Appeals Administrators, to grant or deny claims for benefits under the Plan. Effective January 1, 2001, the chairperson for the Appeals Administrator shall have the authority to appoint one or more persons, entities or committees to function as Claims Administrator. The Company, the Plan Administrator, the Committee, the Claims Administrator, and the Appeals Administrator, may each delegate any of their respective responsibilities for the operation and administration of the Plan consistent with the terms of the Plan, including without limitation, the delegation by any of such committees of certain responsibilities to the Secretary or Assistant Secretaries of such committees. The Company and other named fiduciaries may employ persons to advise or assist them in the performance of any of their respective responsibilities.

## 14.4    Claims and Appeals

Under the Plan, the Claims Administrator and the Appeals Administrator are fiduciaries to whom this Plan hereby grants full discretion, with the advice of counsel, to do the following: to make findings of fact; to interpret the Plan and resolve ambiguities therein; to make factual determinations; to determine whether a claimant is eligible for benefits; to decide the amount, form, and timing of benefits; and to resolve any other matter under the Plan which is raised by the claimant or identified by the respective Claims or Appeals Administrator. The Claims Administrator has exclusive authority to decide all claims under the Plan, and the Appeals Administrator has exclusive authority to review and resolve any appeal of a denied claim. In the case of an appeal, the decision of the Appeals Administrator shall be final and binding upon all parties to the full extent permitted under applicable law, unless and to the extent that the claimant subsequently proves that a decision of the Appeals Administrator was an abuse of discretion. Notwithstanding the foregoing, except as otherwise provided in Exhibit IV, the Committee shall grant or deny any claim relating to the solicitation of volunteers for the 1998-99 Benefit described in Exhibit IV, including, without limitation, claims relating to the solicitation procedure, the deadline for 1998-99 Eligible Employees to deliver applications and subsequent claims relating to interpretation of a 1998-99 Eligible Employee's election forms as applied to the administration of ARDs.

## 14.5    Claims Procedures.

Claims will be processed in accordance with ERISA and regulations thereunder, and shall include but not be limited to the following procedures:

    (a)    Any application or request for benefits, and any question or notice concerning benefits, under the Plan by a Participant or beneficiary shall initially be directed to the Benefit Administrator, in a form or manner, whether by written, telephonic or other means approved by and acceptable to the Benefit Administrator.

    (b)    Any disagreement or dispute regarding a Participant's or beneficiary's benefit under the Plan (referred to herein as a "Claim") must be submitted in writing by the Participant or beneficiary to the Claims Administrator for decision. Adequate notice shall be provided in writing to any person whose Claim has been denied by the Claims Administrator, setting forth the specific reasons for such denial.

    (c)    Any person whose Claim for benefits has been denied by the Claims Administrator may, within 60 days after receipt of notice of denial, submit a written request to the Appeals Administrator for review of the decision denying the Claim. The Appeals Administrator shall notify the claimant in writing of its decision, specifying the reasons for such decision.

    (d)    A claimant who appeals the decision of the Claims Administrator may review all pertinent documents that are to be submitted to the Appeals Administrator for review and decision, and may submit comments and further evidence and testimony in writing.

No Participant or beneficiary, and no attorney or other representative of any such person, shall have a right to a hearing in person before the Benefit Administrator or the Claims or Appeals Administrator, and all decisions by the Benefit Administrator, and by the Claims and Appeals Administrator, shall be based on the

V00077

written record prepared for the respective administrator's review, with the assistance of the respective administrator's staff and legal advice of counsel to the administrator and the Plan.

## 14.6  Named Fiduciaries.

The Company, the Chief Financial Officer of the Company, the Treasurer of the Company, the Plan trustee, the Committee, the Claims Administrator, the Plan Administrator and the Appeals Administrator, are each named fiduciaries as that term is used in ERISA, with respect to the particular duties and responsibilities which are assigned to each of them under this Plan, with respect to which they exercise discretion. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

## 14.7  Notices; Communications.

Communications to the Claims Administrator shall be addressed to:  Claims Administrator, Verizon's Bell Atlantic InTouch Center (Bell Atlantic InTouch Center prior to July 1, 2000), P.O. Box 435, Little Falls, NJ 07424-0435.  The Claims Administrator, at the address stated in the previous sentence, is hereby designated as agent for service of legal process with respect to any claims arising under the Plan, with a mandatory requirement that a copy of any such notice be served on Verizon Communications Inc. (Bell Atlantic Corporation prior to July 1, 2000), Legal Department, Employee Benefits, 1095 Avenue of the Americas, 37th Floor, New York, NY 10036.

## 14.8  Exclusive Benefit.

This Plan is created for the exclusive benefit of the Participants or their Beneficiaries covered by the Plan.

# ARTICLE XV. AMENDMENT AND TERMINATION

## 15.1  Amendment and Termination of Plan.

(a)      **In General.**

The Board shall have the authority in its discretion to terminate the Plan or, from time to time, amend the Plan by or pursuant to resolution.  Moreover, the Board  has delegated to the Committee the authority to amend the Plan either to maintain the Plan in compliance with applicable law, or to amend or modify the substantive provisions of the Plan in other respects so long as the amendment does not materially alter the cost of providing benefits under the Plan.  In the case of any modification to the benefits under the Plan that are agreed by means of collective bargaining, the Committee's chairperson, the Committee's counsel, and any other person to whom the  Committee chairperson delegates this authority, are each individually authorized to approve the text of the Plan amendment corresponding to the collectively bargained modification and/or to restate the Plan document to conform it to the terms of the collectively bargained modification.

(b)      **General Benefit Protection.**

A change or termination shall not affect the rights of any Employee, without his or her consent, to any benefit or pension to which he may have previously become entitled hereunder.

(c)      **Statutory Protection.**

(1)      **Basic Rule.**

The accrued benefit (within the meaning of section 411(d) of the Code) of an Employee shall not be decreased by an amendment of the Plan, other than an amendment described in section 412(c)(8) of the Code.

(2)      **Additional Rule.**

An amendment shall not be permitted which has the effect, with respect to benefits attributable to service before the amendment, of either—

(A)      eliminating or reducing an early retirement or a retirement-type subsidy (as defined in IRS regulations), or

V00078

(B)    eliminating an optional form of benefit (except to the extent permitted by IRS regulations).

In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to an Employee who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy.

## 15.2    Vesting on Termination or Partial Termination.

Upon a complete or partial termination (within the meaning of section 1.411(d)-2 of IRS Regulations) of the Plan, the right of each affected Participant to benefits accrued to the date of such complete or partial termination shall become Vested to the extent such benefits are funded as of such date. The Plan Administrator shall have the discretionary authority and responsibility to determine whether or not a partial termination has occurred and the identities of the Participants affected by such partial termination who are entitled to be vested.

## 15.3    Allocation of Assets on Plan Termination.

(a)    **In General.**

In the event of termination of the Plan, assets then held in the Pension Fund shall be allocated, after payment of all expenses of administration or liquidation, to pay all Funded Benefits accrued through the date of termination under either the Plan or the Prior NYNEX Pension Plan, in the order and to the extent required by section 4044 of ERISA. Thereafter, any remaining assets of the Pension Fund shall be allocated, insofar as ERISA permits, in the order indicated in subsections (b) through (h) below, with proper adjustment for any portion of a benefit already provided for under section 4044 or under a prior category. For purposes of applying any of the categories described in subsections (b) through (h) below, if the remaining balance in the Pension Fund shall be insufficient, in the judgment of the Company, to provide the full amount of the benefits provided in any such category, the amount of the pension payment from the Pension Fund to each person in the group shall be reduced pro rata.

(b)    **First Category.**

To making adequate provision for the payment of the full amounts of the Service Pensions previously granted to retired Employees (including the full amounts payable to their Beneficiaries) and Deferred Vested Pensions to Employees or former Employees if such Employees, such Beneficiaries, or former Employees are on the pension roll as of the termination date; for the payment of the full amounts which may be payable in the future to Beneficiaries of Employees who have retired and who are on the pension roll as of the termination date; for the payment of the full amounts of the Service Pensions or Deferred Vested Pension which Employees, as of the termination date, have then become entitled to receive upon Separation From Service, such pensions to start upon the Employee's retirement or Separation From Service, including the payment of the full amounts which may be payable to their Beneficiaries, following the death of such Employees after their retirement or Separation From Service, such amounts to be computed under Article VI on the basis of the pensions to which such Employees have become entitled as of the termination date; and for the payment of the full amounts payable under section 7.1 to the surviving spouses of Employees who die while in active service, such amounts to be computed on the basis of the pensions to which such Employees have become entitled as of the termination date.

(c)    **Second Category.**

To making provision for the payment of death benefits attributable to deaths occurring prior to the date of termination which would have been payable from the Pension Fund, and for the payment, upon the deaths of retired Employees who are on the pension roll as of the date of termination and of Employees eligible as of that date for retirement, of death benefits which would have been payable from the Pension Fund, had the Plan not been so terminated.

V00079

(d)     **Third Category.**

To making provision, to the extent permitted by any remaining Pension Fund balance, for the payment of pensions starting at Normal Retirement Age and continuing until the death of the former Employee, computed as hereinafter specified, to all former Employees who left the service of a Participating Company after May 31, 1969 and before September 30, 1971 and at the time of termination of their employment were eligible for retirement on Service Pension with the approval of the Plan Administrator under this Plan or the plan administrator under any Predecessor Plan, but not at their own request.

(e)     **Fourth Category.**

To making provision, to the extent permitted by the remaining Pension Fund balance, for the payment of pensions starting at Normal Retirement Age and continuing until the death of the former Employee, computed as hereinafter specified, to all Employees who, as of the termination date, were not eligible for retirement on Service Pension but had reached the age of forty years and whose Net Credited Service was fifteen or more years and all former Employees who left the service of a Participating Company after May 31, 1969 at a time when they had reached the age of forty years and whose Net Credited Service was fifteen or more years but who were not eligible for retirement on Service Pension with the approval of the Plan Administrator under this Plan or the plan administrator under any Predecessor Plan.

(f)     **Fifth Category.**

To making provision, to the extent permitted by any remaining Pension Fund balance, for the payment of pensions starting at Normal Retirement Age and continuing until the death of the former Employee, computed as hereinafter specified, to all Employees who, as of the termination date, were not eligible for retirement on Service Pension but whose calendar years of service after age twenty-two were ten or more and all former Employees who left the service of a Participating Company after January 1, 1976 at a time when their calendar years of service after age twenty-two were ten or more but who were not eligible for retirement on Service Pension.

(g)     **Sixth Category.**

To making provision, to the extent permitted by any remaining Pension Fund balance, for the payment of pensions starting at Normal Retirement Age and continuing until the death of the former Employee, computed as hereinafter specified, to all Employees not referred to in the preceding subsections who are Participants in the Plan and whose calendar year of service after age twenty-two were five or more years on the termination date.

(h)     **Seventh Category.**

In the event that there is any remaining balance in the Pension Fund after making provision deemed adequate for the full amount of the pensions hereinbefore specified as payable in case of termination of the Plan, such balance shall be applied solely for pension purposes in an equitable manner consistent with the purposes of the Plan.

(i)     **Rules For Calculating Pensions.**

The pensions specified in subsections (d) through (g) above as payable to Employees who have not yet reached Normal Retirement Age and who have not yet become eligible as of the termination date for retirement on Service Pension, and to former Employees shall be computed, without allowance for any payment upon the death of the Employee, in accordance with the provisions of Article V, except that—

  (1)     the Pension Accrual Service and Net Credited Service used in the computation shall end as of the date of termination of the Plan, and

  (2)     the Average Annual Compensation, if applicable, used in the computation shall in every case be the amount for the applicable five consecutive year period prior

V00080

to the date of termination of the Plan, or termination of employment if earlier, during which the Employee was paid the highest rate of wages, and

(3)     any provisions relating to minimum pensions shall not apply.

The payment of such pensions shall not be contingent upon the Employee's being in the service of a Participating Company after the termination of the Plan. In all cases such pensions shall be computed on the basis of the Employee's age and Pension Accrual Service and Net Credited Service, as of the termination date, as shown by the records of the Participating Company which last employed such individual.

(j)     **Payment of Benefits on Termination.**

The Company reserves the right to make provision out of the Pension Fund for any or all pensions specified in this section 15.3 through the purchase of annuities from an insurance company or in such other manner as the Company may determine. In the case of all pensions for which provision is made through the purchase of annuities from an insurance company, the delivery of an annuity contract to each person to whom such pensions are payable shall serve to absolve the Company, any other Participating Company, and the Pension Fund from any further obligations for the payment of such pensions. In the case of all pensions for which provision is not made through the purchase of annuities from an insurance company, the Company's judgment as to the adequacy of the alternative provision made shall be final. If such alternative provision made, as of the termination date, for pensions to persons not then on the pension roll or eligible to receive a pension at their own request should thereafter at any time appear, in the judgment of the Company, to be inadequate or more than sufficient to continue the payment of the amounts previously estimated to be payable, the remaining payments on all such pensions shall be adjusted pro rata in accordance with the remaining provision available. In lieu of the pensions starting at Normal Retirement Age as provided for in this subsection, the Company reserves the right to offer to all or specified groups of persons the option of a reduced pension starting at an earlier age, or such other form of payment as may be consistent with the equities involved. The Company's judgment as to the amounts and methods of such alternative payments and the groups to which such options are to be offered shall be final. The Company reserves the right to pay any person upon the date a pension becomes payable to him the commuted value of such pension in a single lump sum.

(k)     **No Impact on Exhibit I.**

No provision of this section 15.3 or of section 14.8 (exclusive benefit rule) shall restrict the transfers and other actions provided for by Exhibit I of the Plan.

## 15.4  Nondiscriminatory Benefits on Plan Termination.

To the extent required under section 1.401(a)(4)-5(b)(2) of IRS Regulations, in the event of termination of the Plan, benefits otherwise payable to a highly compensated employee or to a highly compensated former employee, within the meaning of section 414(q) of the Code, shall be restricted to amounts which are nondiscriminatory within the meaning of section 401(a)(4) of the Code.

# ARTICLE XVI. FUNDING

## 16.1  Pension Funding Policy and Method.

(a)     **Funded Benefits.**

The Company has established, and maintains, a Pension Fund in a trust separate from the assets of any Participating Company for the payment of—

(1)     Service Pensions and related survivor benefits,

(2)     Deferred Vested Pensions and related survivor benefits,

V00081

(3)     Disability Pensions described in section 16.7, and related survivor benefits, and

(4)     death benefits described in section 16.8 below, all of which shall be known as the "Funded Benefits."

For purposes of this section 16.1, any assets relating to the Plan held under any group commingled, common or master trust, in accordance with the authorization of this Article XVI, shall be considered as part of and held under the Pension Fund.

(b)     **Contributions by Participating Company.**

Each Participating Company shall contribute to the Pension Fund on account of each Plan Year beginning on and after the commencement date of such company's participation in the Plan, an aggregate amount, in cash or other property, determined pursuant to a funding method and actuarial assumptions, which shall be selected by the Treasurer of the Company, which shall be, in the opinion of an actuary who shall be appointed by the Treasurer of the Company, designed to fund the Plan's benefits on a sound actuarial basis. Such amount shall also be sufficient to satisfy the Plan's "minimum funding standard" (within the meaning of the Code) for that Plan Year; provided, however, that no contribution shall be required for any year if the Plan meets or exceeds the minimum funding standard for that Plan Year or if a Participating Company applies for and receives a waiver of the funding standards for that year.  In the event that a partial waiver is granted, no contribution shall be required of a Participating Company in excess of the amount stipulated in such partial waiver. Each Participating Company's contribution for each Plan Year (if any is required) shall be made no later than the time permitted under regulations promulgated by the Secretary of Treasury. Nothing in this Section or in the Plan shall obligate the Treasurer of the Company to cause, and the Treasurer shall use the Treasurer's best efforts to avoid causing, any amount to be contributed to the Pension Fund in excess of the amount which would be deductible to the applicable Participating Company under the provisions of the Code that impose limitations on tax deductibility in connection with the funded status of the Plan.

(c)     **No Employee Contributions.**

Contributions to the Plan by Eligible Employees shall be neither required nor permitted.

(d)     **Forfeitures.**

Any forfeitures resulting from the death of a Participant or from the Separation From Service of a Participant whose rights and interests in the Plan are not fully vested pursuant to section 4.2, shall be credited against the corresponding Participating Company's obligation to make contributions to the Plan and shall not be used to increase the benefits of any Participant.

## 16.2   Pension Fund.

(a)     **Establishment of Trust.**

Assets of the Plan shall be held in trust. The Chief Financial Officer of the Company or any person to whom that officer delegates authority in writing (the Chief Financial Officer and his or her delegates are collectively referred to in this Plan as the "Chief Financial Officer") shall have the authority and responsibility to appoint (and if and when appropriate, to remove) the Plan trustee and any one or more Investment Managers.  Said Chief Financial Officer shall also have the authority and responsibility to execute and amend the trust agreement with the Plan trustee and agreements with Investment Managers.

(b)     **Powers of Chief Financial Officer.**

Except as provided in this section 16.2 and the trust agreement, the Chief Financial Officer of the Company shall have exclusive authority and discretion to manage and control the assets of the Plan.  As further provided in section 16.6, the said named fiduciary, and persons to whom that fiduciary delegates his or her authority and discretion, shall have the authority and discretion to direct the disbursement of assets of the Plan to pay benefits and to pay any and all administrative

V00082

expenses of the Plan and trust to the extent that the Participating Companies do not elect to pay any such administrative expenses from company assets.

###### (c) Trust Agreement.

The trust agreement with the Plan trustee may provided that the Chief Financial Officer of the Company may direct the investment of some or all of the assets of the Plan, and appoint one or more Investment Managers to manage and control some or all of the assets of the Plan. In either case, the party exercising such investment discretion shall have the authority to direct the Plan trustee to acquire or dispose of assets of the Plan.

###### (d) Delegation.

The Chief Financial Officer of the Company may delegate any or all ministerial or fiduciary functions in connection with the Chief Financial Officer's responsibilities and powers under this section 16.2 to any one or more employees of the Company who are subordinates of the Chief Financial Officer reporting directly to that officer.

## 16.3  Funding Policy.

Benefits provided under this Plan shall be funded in the manner described in this Article XVI through the accumulation of assets in the Pension Fund. The investment policies of the Plan shall be established and changed from time to time in the discretion of the Chief Financial Officer of the Company, who shall thereupon communicate such policies to any persons having authority and responsibility to manage and control the assets of the Plan, pursuant to the terms of the trust agreement and one or more agreements with Investment Managers. Full authority and discretion to manage the investment of the trust assets of the Plan is possessed by the Board, and that Board and this Plan have delegated that authority and discretion to the Chief Financial Officer of the Company who, as a named fiduciary hereunder, has the authority and discretion to further delegate authority and discretion to such persons and investment managers as that officer determines to be appropriate.

## 16.4  Master Trust.

The Chief Financial Officer of the Company shall have the authority to cause the assets of the Plan to be commingled for investment purposes, with the assets of other qualified defined benefit pension plans, in the Verizon Master Pension Trust.

## 16.5  Insurance or Annuity Contracts.

The Chief Financial Officer of the Company may, but need not, enter into one or more contracts with one or more insurance companies, which shall become part of this Plan, for purposes of providing the benefits and funding the Plan.

## 16.6  Payment of Plan Expenses from the Trust.

To the extent provided in the applicable trust agreement, the Pension Fund shall pay reasonable expenses relating to the administration of the Plan.  Expenses not payable by the Pension Fund shall be borne by the applicable Participating Company.

## 16.7  Payment of Disability Pension Benefits.

This section specifies the source of payments for Disability Pension benefits under section 4.3 of the Plan.

###### (a) Benefits Commencing After 1994.

In the case of a Participant who, after 1994, leaves the service of a Participating Company and commences receipt of a Disability Pension, all payments to which the Participant and his or her Beneficiaries are entitled under section 4.3 shall be made from the Pension Fund.

###### (b) Benefits Commencing Before 1995.

V00083

Disability Pension payments not described under subsection (a) shall be a charge to the operating expense accounts of the Participating Company for which the Participant last worked, and shall be paid by such Participating Company.

(c)    **Benefit Payments after December 31, 1996.**

Notwithstanding subsections (a) and (b) above, effective January 1, 1997, all Disability Pension payments to which a Participant and his or her Beneficiaries are entitled under section 4.3 shall be made from the Pension Fund.  No further Disability Pension payments shall be paid by a Participating Company after December 31, 1996.

## 16.8  Death Benefits Under Article VIII.

Amounts payable under Article VIII shall be paid from the Pension Fund.

## 16.9  Payment Through Annuity Contracts.

The Company reserves the right to make provision out of the Pension Fund for any or all pensions through the purchase of annuities from an insurance company or in such other manner as the Company may determine. In the case of all pensions for which provision is made through the purchase of annuities from an insurance company, the delivery of an annuity contract to each person to whom such pensions are payable shall serve to absolve the Company, each other Participating Company and the Pension Fund from any further obligations for the payment of such pensions.

## 16.10  Conditional Contributions.

To the extent permitted under ERISA and the Code, all contributions to the Plan are subject to the following conditions:

(a)    **Tax Deductibility of Contributions.**

All contributions made to the Plan by each Participating Company shall be conditioned upon the deductibility of such contributions under the Code.  To the extent that any such deduction is disallowed by the Internal Revenue Service , each Participating Company, upon the approval of the Treasurer of the Company, shall have the right to demand and receive from the trustee the related contribution to the extent disallowed within one year after the disallowance of said deduction.

(b)    **Contributions Made in Error.**

If a Participating Company makes a contribution, or any part  thereof, by mistake of fact, such contribution or part thereof  shall be returned to the Participating Company within one year after such contribution is made.

# ARTICLE XVII. TOP-HEAVY PLAN PROVISIONS

## 17.1  Compliance.

To the extent required by section 416 of the Code, in the event that the Plan is top-heavy, or is a member of a top-heavy group, with respect to any Plan Year, the accelerated vesting, minimum benefit, and maximum benefit requirements of such section 416 shall be satisfied. The terms in the preceding sentence shall be applied in accordance with applicable IRS Regulations issued under section 416 of the Code.

# ARTICLE XVIII. LEASED EMPLOYEES

## 18.1  Treatment of Leased Employees Under the Plan.

(a)    **Eligibility and Vesting.**

V00084

To the extent required by the Code, solely for purposes of determining when an individual has completed a year of ERISA Service for purposes of vesting and eligibility to commence participation, hours of service as a leased Employee (as defined in section 414(n) of the Code) shall be treated as Hours of Service as an Employee.

(b)    **No Benefit Accrual.**

With respect to any period for which an individual is a leased Employee (as defined in section 414(n) of the Code), the individual shall not become a Participant and—

(1)    the individual's pay shall not be treated as Compensation recognized under the Plan,

(2)    the individual's service shall not be recognized as part of Net Credited Service or Pension Accrual Service, whether or not the individual subsequently becomes an Eligible Employee within the meaning of Article III.

# ARTICLE XIX. DISTRIBUTION RESTRICTIONS FOR TOP-25 EMPLOYEES

## 19.1   Restrictions on Distributions.

To the extent required by section 1.401(a)(4)-5(b) of IRS Regulations, benefits otherwise payable to a top-25 Employee shall be restricted.

# ARTICLE XX. MISCELLANEOUS PROVISIONS

## 20.1   Rights of Participants and Beneficiaries.

No action by any Participating Company, the Plan Administrator, the Appeals or Claims Administrator, or the Benefit Administrator shall be construed as giving to any officer, agent or Employee a right—

(a)    to be retained in the service of any Participating Company, or

(b)    to any pension or other benefit or allowance, unless the right to such pension or benefit has accrued under the terms of this Plan as in effect prior to Separation From Service, or arises in connection with the termination of the Plan.

In the event of termination of the Plan, no Employee or annuitant shall have any right in the Pension Fund or against any Participating Company except as herein provided or as otherwise provided by law.

## 20.2   Service Under Settlement, Award, or Order.

(a)    **In General.**

Notwithstanding any other provision of the Plan, the Net Credited Service, Pension Accrual Service and years of ERISA Service of an individual who is reemployed by a Participating Company in accordance with the terms of a settlement, award or order involving either litigation, arbitration or a grievance under an applicable collective bargaining agreement relating to a prior termination from employment of such individual shall include, immediately upon such reemployment, any time relating to the following periods—

(1)    any period of time, determined in accordance with subsection (b) below, for which back pay or a lump sum settlement award is made;

(2)    any period of time between the date of the prior termination and the date of reemployment, which is either—

V00085

(A)    not in excess of thirty days, if the termination was converted by the Participating Company from which the individual was terminated to a suspension, or

(B)    specified by a court order, court award, or arbitration award to be included in the individual's service or Net Credited Service and Pension Accrual Service; and

(3)    all periods of service which were included in the individual's Net Credited Service and Pension Accrual Service as of the date of his prior termination if the termination is converted to a suspension on the records of the Participating Company from which he was previously terminated, the period of absence from the date of termination was six months or less, or the provisions of a settlement agreement or court order, court award, or arbitration award provide for such inclusion.

(b)    **Period to Which Back Pay or Settlement Relates.**

(1)    **In General.**
For purposes of subsection (a)(1) above, the period of time for which a back pay award, order or settlement or lump sum payment relates shall be such period as specified in such award, order or settlement.

(2)    **Period Not Specified.**
If no period of time is specified in such award, order or settlement, the period of time with respect to which a back pay award or lump sum payment shall be considered to relate shall equal the number of weeks determined by dividing the full amount of such award or payment by the Employee's basic weekly wage rate in effect at the time of the individual's prior termination. In any such case, the amount of the back pay award or lump sum payment shall be deemed to include any amount of compensation or other payment received by the individual from other sources which has been offset against the amount awarded or paid to the individual in accordance with the award, order or settlement. Notwithstanding any other provision of this paragraph (2), in no event shall the period of time included in an individual's Net Credited Service and Pension Accrual Service, in accordance with the provisions of subsection (a)(1) through (a)(3) of this section 20.2 exceed the actual amount of time from the date of the Employee's termination to the date of the Employee's reemployment.

## 20.3   Method of Payment.

Payments under the Plan shall be made in conformity with the financial methods of the Participating Companies and on orders of or bills prepared by the Plan Administrator, or such other persons as may be designated by the Plan Administrator.

## 20.4   Multiple Participating Company Employment.

If an individual is an Eligible Employee of more than one Participating Company, any pension or death benefit under the Plan shall be computed on the basis of the total combined pay which the Employee is receiving from all such Participating Companies, and, except in the case of death due to accident arising out of and in the course of employment by any of such companies, shall be pro-rated among the Participating Companies on the basis of the pay the employee was receiving from each company, and each Participating Company shall only pay its share thus determined. Any maximum or minimum amounts fixed by the Plan for pensions or death benefits shall apply to the total amount payable by all companies and not to the portion payable by any Participating Company or Companies.

## 20.5   Payments Under Law.

In case any benefit or pension, which the Plan Administrator shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any Employee of a Participating Company, to his or her Beneficiaries or annuitants under such

V00086

law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan; provided, however, that no benefit or pension payable under this Plan shall be reduced by reason of any governmental benefit or pensions payable on account of military service or by reason of any benefit which the recipient would be entitled to receive under the Social Security or Railroad Retirement Act.  In those cases where, because of differences in the Beneficiaries, or differences in the time or methods of payment, or otherwise, whether there is such excess or not is not ascertainable by mere comparison but adjustments are necessary, the Plan Administrator, in its discretion is authorized to determine whether or not in fact any such excess exists, and in case of such excess, to make the adjustments necessary to carry out in a fair and equitable manner the spirit of the provision for the payment of such excess.

## 20.6  Merger or Consolidation.

In case the pension portion of the Plan is merged or consolidated with, or the assets or liabilities of the Pension Fund are transferred to, any other plan, provision must be made such that the benefit that each Participant in the pension portion of the Plan would receive if there were a termination immediately after such merger, consolidation or transfer shall not be less than he would have received if there were a termination immediately before such merger, consolidation or transfer.

## 20.7  Annual Report.

The Committee, or the Plan Administrator, shall publish annually, in accordance with the requirements of ERISA, a report of the operations under the Plan.

## 20.8  Predecessor Plan Provisions.

This Plan shall be deemed to incorporate the provisions of any Predecessor Plan with respect to the entitlement to or computation of any benefit of—

    (a)    an individual who is not and never becomes an Eligible Employee on or after January 1, 1984 and such provisions shall apply to all such individuals who would have been entitled to a benefit hereunder, pursuant to such provisions as they existed from time to time, if this Plan had existed, from time to time, prior to January 1, 1984 and,

    (b)    an Eligible Employee who continues in employment beyond the end of the month in which he or she attained age 65.

## 20.9  Former Employees Previously Covered by a Predecessor Plan.

This Plan shall apply to any person who was a former employee of a Participating Company as of January 1, 1984 if such a person is not thereafter a participant in a Former Affiliate Plan or such person's Net Credited Service with a Participating Company prior to such date would not be recognized under a Former Affiliate Plan, except in accordance with an applicable Interchange Agreement. Except as provided in Article XI, this section 20.9 shall not be deemed to give any employee or former employee of a Participating Company any right or entitlement which such person did not have under a Predecessor Plan prior to January 1, 1984.

## 20.10  Unclaimed Benefits.

If any payment or other benefit to which an individual is entitled under this Plan is unclaimed or otherwise not subject to payment to the person or persons so entitled, such amounts representing such payment or payments shall be retained in the trust or trusts associated with the Plan and shall not escheat to any state or revert to any party, but may in the judgment of the Company, be used to offset future contributions to the Plan and/or its associated trust or trusts.  However, any individual entitled to benefits under the Plan who does not file a timely claim for his or her benefits will be allowed to file a claim at a later date, and, if such claim is determined in the claimant's favor by the Claims Administrator, subject to review by the Appeals Administrator, payment of his or her benefits will commence at that later date.

## 20.11  Direct Rollover to Eligible Retirement Plan.

In the case of a distribution which is available after 1992—

V00087

(a)     to a Participant under section 6.7 or section 6.11 (lump sum payment of benefits) of this Plan or to a Beneficiary under Section 7.6;

(b)     to a Beneficiary of a death benefit under Article VIII (or under the similar section of the Prior NYNEX Pension Plan) which is payable from the Pension Fund, other than payments under a 10-year installment form; or

(c)     to a Participant or Beneficiary as a single sum distribution under any Exhibit to the Plan;

the recipient may elect to have all or a portion of such distribution made in the form of a direct rollover to an "eligible retirement plan," within the meaning of Code section 401(a)(31). In order to elect a direct rollover, the Participant must designate, in a manner and at a time specified by the Plan Administrator, the eligible retirement plan to which the distribution is to be paid, and must provide all other information reasonably requested by the Plan Administrator to complete the transfer.

## 20.12 Payment to Others in Case of Incompetence.

Benefits payable to a former Eligible Employee, pensioner, spouse or other Beneficiary unable to execute a proper receipt may be paid to a relative or other proper person, selected by the Claims and Appeals Administrator, as applicable, to use for the benefit of the former Eligible Employee, pensioner, spouse or other Beneficiary and the receipt of such person shall discharge the Plan from all further liability to make such payment.

## 20.13 Governing Law.

Except to the extent superceded by ERISA, all questions pertaining to the validity, construction and operation of the Plan shall be determined in accordance with the laws of the State of New York.

## 20.14 Amounts Accrued but Unpaid Prior to Death.

Pension Payments accrued but not actually paid at the time of death of a former Eligible Employee, pensioner, or annuitant may, if permissible under applicable law and, if so, in the discretion of the Claims Administrator, be paid to the spouse of the deceased person or to some other suitable person selected by the Claims Administrator for use in payment of expenses incident to the death of the deceased person, or for the benefit of any one or more persons who were dependent upon him or her at the time of his or her death.

### EXHIBIT I - SPECIAL PROVISIONS

**Special Provisions Establishing a Health Benefits Account and Applicable to Certain Transfers to Such Account**

1.     Effective January 1, 1990, there is hereby established as a part of the Plan a health benefits account (the "Health Benefits Account"). Effective January 1, 1990, the Health Benefits Account shall be responsible for the payment of all Qualified Current Retiree Health Liabilities of Participating Companies, except to the extent (i) a Participating Company makes or elects to make (A) such payment directly or (B) other alternative arrangements for such payment, and (ii) such Participating Company does not seek reimbursement from the Health Benefits Account therefor. For purposes of this Exhibit I, payment of a Qualified Current Retiree Health Liability shall include (i) direct payment and (ii) reimbursement to a Participating Company for its (and to an Employee or former Employee or spouse or dependent thereof, for his or her) prior payment.

2.     The Company may direct that, once in any Transfer Year, and as otherwise provided in section 7 of this Exhibit I, an amount not in excess of the Excess Pension Assets be transferred to the Health Benefits Account; provided that no such Transfer shall exceed the amount reasonably estimated to be the amount that will be paid from the Health Benefits Account during the applicable Transfer Year for Qualified Current Retiree Health Liabilities with respect to the applicable Liability Determination Year. Each Transfer (and any income thereon) shall be used in its entirety (i) on or before the end of the applicable Transfer Year to pay Qualified Current Retiree Health Liabilities with respect to the applicable Liability Determination Year, and (ii) before any Participating Company makes any contribution to a "health benefits account," as defined in section 420(e)(3) of the Code, or to a "welfare benefit fund," as defined in

V00088

section 419(e)(1) of the Code, with respect to Qualified Current Retiree Health Liabilities with respect to the applicable Liability Determination Year. To the extent required by section 420(d)(2) of the Code, no Participating Company may make any such contributions with respect to any Qualified Current Retiree Health Liabilities with respect to which a Transfer is made.

3.    If, notwithstanding section 2 of this Exhibit I, any portion of a Transfer (and income allocable thereto) is not used as provided by clause (i) of the last sentence thereof, such portion shall be returned by the Health Benefits Account to the remainder of the Plan.

4.    The provisions of this paragraph shall apply to the establishment and maintenance of the Health Benefits Account:

(a)    All Transfers shall be credited to a separate account which shall be maintained under the Plan solely for recordkeeping purposes (the "Separate Account"). All funds accounted for in the Separate Account may, but need not be, invested together with any or all other assets of the Plan.

(b)    Plan assets attributable to the Health Benefits Account may not be used for, or diverted to, any other purpose (including the payment of pension benefits) prior to the satisfaction of all liabilities under this Exhibit I to provide for the payment of Qualified Current Retiree Health Liabilities. Except as may otherwise be provided by paragraph 3 of this Exhibit I, any amounts attributable to the Health Benefits Account upon the satisfaction of all obligations arising out of the operation of the Health Benefits Account shall be returned to Participating Companies.

(c)    All reasonable expenses of the Health Benefits Account shall be paid out of the assets of the Plan to the extent directed by the Committee, except to the extent paid by a Participating Company.

(d)    To the extent required by section 1.401-14(c)(6) of the Treasury Regulations, in the event an individual's interest in the Health Benefits Account is forfeited prior to the termination of the Plan, an amount equal to the amount of such forfeiture shall be applied as soon as practicable thereafter to reduce Participating Company contributions and Transfers to fund Qualified Current Retiree Health Liabilities.

(e)    No payment of Qualified Current Retiree Health Liabilities shall be made with respect to any liability that (i) does not arise in connection with "retired employees," their spouses, or their dependents, within the meaning of section 1.401-14(b)(1) of the Treasury Regulations, unless permitted by section 420(a)(1) of the Code, or (ii) that arises in connection with an individual who is a "key employee" for purposes of section 401(h)(6) of the Code or a spouse or dependent of such a "key employee," unless a separate account is established and maintained to the extent required by section 401(h)(6) of the Code (taking into account section 420(a)(1) of the Code).

5.    With respect to that portion of a Deferred Vested Pension (if payable after application of this sentence) that is attributable to Pension Accrual Service (as such term is used for purposes of section 5.2 of the Plan) for periods ending with or before a Transfer Date, section 4.2 of the Plan shall be applied to each Affected Employee with respect to the Transfer relating to such Transfer Date as though such Affected Employee satisfied the five-years-of-service requirement stated therein.

6.    Section 420(c)(3) of the Code shall be satisfied with respect to each Transfer.

7.    A transfer shall be treated as a Transfer, regardless of whether another Transfer is made in the same Transfer Year, if (i) sections 2, 5, and 6 of this Exhibit I are satisfied with respect to such transfer, (ii) the transfer is made before the earlier of (A) the due date (including extensions) for the filing of the Company's tax return for 1990 or (B) the date such return is filed, and (iii) the transfer does not exceed the expenditures of Participating Companies for Qualified Current Retiree Health Liabilities for calendar 1990.

8.    The following definitions shall apply for purposes of this Exhibit I:

81

*"Affected Employee"*

means, with respect to any Transfer, an individual who is an Employee on such Transfer Date and a former Employee who was an Employee at any time during the one-year period ending on such Transfer Date. In the case of a Transfer described in section 7 of this Exhibit I, Employees who ceased to be Employees during 1990 shall be treated as Affected Employees with respect to such Transfer.

*"Excess Pension Assets"*

means the excess, if any, of (i) the amount determined with respect to the Plan under section 412(c)(7)(A)(ii) of the Code over (ii) the greater of (A) the amount determined with respect to the Plan under section 412(c)(7)(A)(i) of the Code or (B) 125 percent of the Plan's "current liability," as defined in section 412(c)(7)(B) of the Code. With respect to each Transfer, the determination under the foregoing sentence shall be made (i) without regard to the operation of section 5 of this Exhibit I as a result of such Transfer, and (ii) otherwise as of the most recent date, to precede the Transfer, as of which Plan assets are valued under the Company's Master Pension Trust Agreement.

*"Key Employee"*

means "Key employee," as defined in section 416(i)(1) of the Code.

*"Liability Determination Year"*

shall mean, with respect to any Transfer, (i) the applicable Transfer Year or (ii) in the case of a Transfer described in section 7 of this Exhibit I, 1990.

*"Qualified Current Retiree Health Liabilities"*

means "qualified current retiree health liabilities," as defined in section 420(e)(1)(A) of the Code, other than liabilities of Key Employees not taken into account under section 420(e)(1)(D) of the Code, which "qualified current retiree health liabilities" arise under or otherwise in connection with the welfare plans maintained from time to time by the Participating Companies. Notwithstanding the foregoing, except with respect to Transfers described in section 7 of this Exhibit I, Qualified Current Retiree Health Liabilities with respect to any Liability Determination Year shall be reduced (a) with respect to Transfers occurring on or before December 8, 1994, by any amount previously contributed by a Participating Company to a "health benefits account," as defined in section 420(e)(3) of the Code, or to a "welfare benefit fund," as defined in section 419(e)(1) of the Code, with respect to amounts that would, without regard to this sentence, be Qualified Current Retiree Health Liabilities with respect to such Liability Determination Year, or (b) with respect to Transfers occurring after December 8, 1994, by the amount which bears the same ratio to Qualified Current Retiree Health Liabilities with respect to such Liability Determination Year, as (i) the value (as of the close of the Plan Year preceding the year of Transfer) of the assets in all health benefits accounts or welfare benefit funds set aside to pay for such Qualified Current Retiree Health Liabilities, bears to (ii) the present value of the Qualified Current Retiree Health Liabilities for all Plan Years (determined without regard to this reduction).

*"Transfer"*

means a transfer described in section 2 of this Exhibit I.

*"Transfer Date"*

means, with respect to any Transfer, the date of such Transfer.

*"Transfer Year"*

means any of calendar years 1991 through 2005. With respect to a Transfer described in paragraph 7 of this Exhibit I, the Transfer Year shall be calendar 1991.

V00090

9. Nothing in this Exhibit I shall be construed to, or does, prevent or otherwise restrict the amendment or termination of, without limitation, the Plan, the Health Benefits Account or any welfare plan.

## EXHIBIT II - FAP SPECIAL PENSION

Effective Through August 8, 1998

1. **In General**.

   This Exhibit II describes the Force Adjustment Plan Special Incentive 6 and 6 Pension (the "FAP Special Pension"). Capitalized terms are defined in this Exhibit II or in the main body of the Plan.

2. **Participants To Whom The FAP Special Pension Applies.**

   Effective from April 3, 1994 through August 8, 1998, the FAP Special Pension shall be offered to each Participant:

   (a)    who is eligible to retire with a Service Pension under the Plan as of his or her Announcement Date (taking into account the six-year increase to the Participant's age and Net Credited Service under this Exhibit II); and

   (b)    who is in a job classification and geographic area for which the Company declares that a surplus condition exists.

   Participants electing to receive an FAP Special Pension shall be accepted in the order of their respective Net Credited Service to the extent necessary to eliminate the surplus condition.

3. **Conditions To Receipt Of FAP Special Pension Benefits.**

   FAP Special Pension benefits shall be payable to each FAP Pension Eligible Employee or Contingent Eligible Employee who:

   (a)    makes and delivers the written election during his or her applicable Election Window Period; and

   (b)    incurs a Separation From Service during his or her Termination Window Period.

4. **Opportunity To Rescind FAP Special Pension Election.**

   If the number of FAP Pension Eligible Employees who elect to receive an FAP Special Pension exceeds the number of positions with respect to which the Company has declared a surplus condition exists, the Company shall designate a group of FAP Pension Eligible Employees who have the greatest relative amounts of Net Credited Service. The group of Employees thus designated shall be given the opportunity to rescind the prior election to receive an FAP Special Pension. The Company shall have no obligation to offer an FAP Special Pension to an FAP Pension Eligible Employee who chose not to accept an FAP Special Pension. However, an FAP Special Pension shall again be available to:

   (a)    an Employee who rescinded an earlier election under this section 4; or

   (b)    an Employee with respect to whom the Company declares a subsequent surplus condition exists.

5. **Separation From Service.**

   Except as provided in section 4 of this Exhibit II, the written election of an FAP Pension Eligible Employee or Contingent Eligible Employee to receive an FAP Special Pension filed during his or her Election Window Period shall become irrevocable at the close of the applicable Election Window Period, except as provided in section 4 of this Exhibit II. Thereafter, the FAP Pension Eligible Employee or Contingent Eligible Employee shall incur a Separation From Service during his or her Termination Window Period.

V00091

6.  **FAP Special Pension As Alternative To Involuntary Transfer.**

A Contingent Eligible Employee whose position has been declared surplus by the Company and who is to be involuntarily transferred may elect during his or her Election Window Period to receive an FAP Special Pension. A Contingent Eligible Employee so electing shall then incur a Separation From Service during his or her Termination Window Period.

7.  **FAP Special Pension Benefits.**

FAP Special Pension Benefits shall be calculated as of the Employee's Announcement Date to reflect the addition of six years of age or a six year period of Net Credited Service (or, if applicable, a six-year continuous period of employment), as the case may be, for purposes of each of the following provisions of the Plan.

(a)     Eligibility for a Service Pension under section 4.1(a).

(b)     Determining Pension Accrual Service used for the Basic Monthly Pension Benefit and Supplemental Monthly Pension Benefit under section 5.2.

(c)     Effect of a Pension Promotion under section 5.4. Effective as of January 1, 1996, six years shall not be added for purposes of determining whether an Employee who has been temporarily promoted or transferred has reached the first anniversary of such promotion or transfer under section 2.53(b) of the Plan.

(d)     Determining whether three years of Net Credited Service has been completed under section 5.6(b) or Appendix A.

(e)     Determining whether a three-year requirement, similar to section 5.6(b), under another plan has been satisfied at the close of "Period Two" within the meaning of section 5.7(a) of this Plan.

(f)     The extent (if any) to which pension amounts will be reduced for early commencement under section 4.1(c).

(g)     Whether a five-year period following an absence has been credited under Appendix A.

(h)     Eligibility for a minimum benefit under section 5.3(a).

8.  **Immutable Benefit.**

The FAP Special Pension calculated under this Exhibit II as of an FAP Pension Eligible Employee's or Contingent Eligible Employee's Announcement Date shall be fixed for the duration of the applicable Election Window Period and Termination Window Period.

9.  **Early Retirement Reductions.**

An early retirement reduction otherwise applicable to a Participant under the Plan as of his or her Announcement Date shall continue to apply for purposes of determining such Participant's benefits whether or not the Participant subsequently: dies, terminates employment with a Disability Pension under section 4.3 of the Plan, or commences a Service Pension by reason of sickness or disability under section 4.1(c)(1)(B).

10. **Definitions.**

(a)     **Announcement Date**

shall mean the day that the Company announces to an FAP Pension Eligible Employee or Contingent Eligible Employee that he or she is eligible to elect in writing to receive an FAP Special Pension.

(b)     **Contingent Eligible Employee**

84

shall mean an Employee who is eligible to elect to receive an FAP Special Pension in lieu of being transferred by the Company, as provided in section 6.

(c)     **Election Window Period**

shall mean the 30 calendar day period commencing on such FAP Pension Eligible Employee's Announcement Date; provided, however, that with respect to each Contingent Eligible Employee such term shall mean the 7 calendar day period commencing on such Employee's Announcement Date.

(d)     **FAP Pension Eligible Employee**

shall mean each Participant who is eligible to elect to receive an FAP Special Pension.

(e)     **Termination Window Period**

shall mean the period between and including the 31st and 45th day subsequent to an FAP Pension Eligible Employee's Announcement Date; provided, however, that with respect to each Contingent Eligible Employee, such term shall mean such Employee's Election Window Period.

11. **Special Rules Applicable To IBEW-New England Employees.**

In the case of an IBEW-New England Employee, the following provisions shall apply:

(a)     The effective date in section 2 of this Exhibit II shall be August 5, 1994.

(b)     Eligibility for a Service Pension under section 2(a) shall be determined as of the last day of the Employee's Election Window Period and not as of his or her Announcement Date.

(c)     Benefits shall be determined under section 7 as of the last day of the applicable Election Window Period and not as of the applicable Announcement Date.

12. **Certain Surviving Spouses Eligible for Enhanced Pre-Retirement Survivor Annuity.**

Effective January 1, 1996, a Participant who is eligible and has elected the FAP Special Pension and dies after the 30th day following the offer of the FAP Special Pension but before the "Alternate Termination Date" that Participant was assigned (determined in accordance with the "Implementation of Force Adjustment Plan" letter dated August 4, 1994 and revised April 3, 1995), will be deemed to have terminated on the assigned Alternate Termination Date for purposes of receiving the FAP Special Pension and such Participant's surviving spouse, if any, shall be eligible to receive a pre-retirement surviving spouse annuity based on a pension which includes the FAP Special Pension.

### EXHIBIT III - FAP SPECIAL SOCIAL SECURITY SUPPLEMENT

Effective Through August 8, 1998

1. **In General.**

This Exhibit III describes the Force Adjustment Plan Special Social Security Supplement (the "FAP Special Social Security Supplement"). Capitalized terms are defined in either Exhibit II or in the main body of the Plan.

2. **Eligible Employees.**

The FAP Special Social Security Supplement shall be paid to each FAP Pension Eligible Employee who receives an FAP Special Pension prior to age 62.

3. **Duration and Amount Of Supplement.**

Subject to Article IX, payment of the FAP Special Social Security Supplement shall be made for each month for which a Service Pension is payable, but shall cease with the payment for the

V00093

month in which the Participant attains age 62. The monthly amount shall be equal to the greater of the (a) or (b), where:

(a)    equals 30 percent of the applicable pension amount under section 5.2 of the Plan, reduced to reflect early commencement and determined without regard to the increases to age and Net Credited Service described in Exhibit II, and

(b)    equals $500.

4.    **Limitations.**

The FAP Special Social Security Supplement—

(a)    will not be recalculated to take into account any future ad hoc pension increases;

(b)    shall not exceed the Participant's old-age insurance benefits as calculated for purposes of section 1.411(a)-7(c)(4)(ii)(B) of Treasury Regulations; and

(c)    shall not be taken into account in determining any survivor annuity or other death benefit payment under the Plan.

**EXHIBIT IV**
**1998-99 AND 2001 BENEFITS**

Effective August 9, 1998, certain enhanced pension benefits shall be provided under the Plan in accordance with the terms and conditions described below. Terms capitalized herein shall have the definitions assigned to such terms in the body of this text or at the end of this Exhibit.

1.    **In General.**

This Exhibit IV describes two incentive retirement opportunities added to the Plan, the first of which shall be available to 1998-99 Eligible Employees who qualify to retire on designated dates during a temporary 1998-99 Benefit Period (referred to herein as the "1998-99 Benefit"), and the second of which shall be available to 2001 Eligible Employees who retire on and after January 1, 2001 (referred to herein as the "2001 Benefit"). This Exhibit also describes special eligibility rules relating to certain individuals who terminate employment due to death or disability after April 30, 1994, as described herein.

(a)    **1998-99 Benefit**: The 1998-99 Benefit shall be offered to each 1998-99 Eligible Employee. The 1998-99 Benefit is an enhanced pension benefit which involves both (i) the crediting of 6 additional years of age and service for various purposes under the Plan as of the Participant's ARD, and (ii) a Social Security supplement. The 1998-99 Benefit shall be available during the 1998-99 Benefit Period. The Participating Companies shall have the discretion to establish one or more ARDs within the 1998-99 Benefit Period, each of which shall be defined in a Solicitation Package (as defined in section 2(a) below) to be delivered in the third quarter of 1998 to each 1998-99 Eligible Employee (or, in the case of a 1998-99 Eligible Employee who is an Eligible Employee represented by Local 2213 of the International Brotherhood of Electrical Workers, AFL-CIO ("IBEW Local 2213"), in the fourth quarter of 1998).

(b)    **2001 Benefit**: The 2001 Benefit shall be payable to any 2001 Eligible Employee who incurs a Separation From Service on or after January 1, 2001. The 2001 Benefit shall consist of both (i) a new benefit formula under which the benefit of a 2001 Eligible Employee who incurs a Separation From Service on or after January 1, 2001 shall be the better of (1) the benefit calculated under the otherwise applicable terms and benefit formula of the Plan or (2) the benefit calculated under the 2001 benefit formula set forth in section 3(a)(ii), and (ii) a Social Security supplement.

2.    **1998-99 Benefits: Further Details of Terms and Conditions.**

V00094

(a)    **Communication of 1998-99 Benefit to 1998-99 Eligible Employees:**  In the third quarter of 1998 (or, in the case of a 1998-99 Eligible Employee who is an Eligible Employee represented by IBEW Local 2213, in the fourth quarter of 1998), the Participating Companies shall send to each 1998-99 Eligible Employee a set of documents (a "Solicitation Package") describing the terms of the 1998-99 Benefit (and a summary of the 2001 Benefit which would be available to those who do not retire under the 1998-99 Benefit), and a form on which an Eligible Employee may elect to apply for the 1998-99 Benefit by designating one or more ARDs, and, if more than one date is designated, by indicating the order of preference among such dates. The ARDs may be stated in the Solicitation Packages by calendar quarter or by precise date. A 1998-99 Eligible Employee's election of one or more ARDs will be treated as a voluntary statement of willingness to voluntarily retire with an enhanced pension benefit in accordance with the terms of the 1998-99 Benefit on the one or more elected ARDs. 1998-99 Eligible Employees whose positions are described, by title and universe, in the applicable August, 1998 Memorandum of Understanding shall be eligible to apply for any one or more ARDs; and the Participating Companies shall have the discretion to identify in the Solicitation Package such one or more ARDs which are available for such 1998-99 Eligible Employees to elect among.

(b)    **Acceptance of Applications:**

   (i)    Subject to the limitations, by number and by percentage, for the various ARDs, which are shown for each set of 1998-99 Eligible Employees listed by title and "universe" (consisting of one or more other categories) in the applicable August, 1998 Memorandum of Understanding, the Participating Companies shall accept applications in seniority order, up to the stated limit, within each applicable set of 1998-99 Eligible Employees; provided, however, that with respect to 1998-99 Eligible Employees other than those represented by IBEW Local 2213, a Participating Company may, in its sole discretion, choose to accept more than the stated limit of applicants for an ARD if the number of applicants for that ARD exceeds the stated limit by an amount the Participating Company considers tolerable. However, a Participating Company shall have no obligation to accept any applicants in excess of the applicable limit, even if the limit is exceeded by only one additional applicant.

   (ii)   Notwithstanding the previous paragraph, the Participating Companies shall ensure that any 1998-99 Eligible Employee who submits a timely application which signifies a willingness to retire on any and all of the alternative ARDs offered to such 1998-99 Eligible Employee shall be eligible to retire with a 1998-99 Benefit on one of the ARDs designated by the 1998-99 Eligible Employee.  The Participating Companies shall meet this obligation after taking account of the 1998-99 Eligible Employee's seniority, the 1998-99 Eligible Employee's preferences, and otherwise applicable numerical or percentage constraints on acceptances for each ARD.

   (iii)  Any 1998-99 Eligible Employee who does not select every available ARD will only be considered for retirement under the 1998-99 Benefit on the ARDs selected by such 1998-99 Eligible Employee, and there will be no guarantee of acceptance for the 1998-99 Benefit on any of such ARDs; provided, further, that, if a 1998-99 Eligible Employee's seniority does not result in acceptance for the 1998-99 Benefit on any of the 1998-99 Eligible Employee's selected ARDs, the 1998-99 Eligible Employee will not be considered for any ARD which the 1998-99 Eligible Employee did not select.

   (iv)   Except as provided under the special rules relating to death or termination for disability, a 1998-99 Eligible Employee's application shall not qualify for acceptance unless the 1998-99 Eligible Employee delivers a completed and

V00095

signed application to the destination stated on the application forms not later than the end of the Window Period, and any such acceptance shall be conditional until the applicable ARD, at which point it shall become final if the 1998-99 Eligible Employee is an active Participant in the Plan on the date of the ARD and is then removed from the payroll at close of business on the ARD.

(v)    It shall be a condition of acceptance of a 1998-99 Eligible Employee's application that the 1998-99 Eligible Employee acknowledge that an application shall become irrevocable at the end of the Window Period, subject to an appeal process established by the Plan Administrator, administered in accordance with objective standards which comply with applicable law, and consistent with the terms of the applicable Memorandum of Understanding.

(c)    **Separation From Service:** For each 1998-99 Eligible Employee whose application for a 1998-99 Benefit on an ARD is accepted, the application shall be irrevocable, subject to the appeal process stated in the previous paragraph. In the absence of an appeal resulting in a decision which invalidates an application and acceptance, an accepted application from an 1998-99 Eligible Employee shall authorize the Participating Company to cause the 1998-99 Employee to incur a Separation From Service on the applicable ARD (except in the case of an earlier death or earlier termination of employment due to disability, which shall be administered as provided elsewhere hereunder). The 1998-99 Benefit shall not be payable to a 1998-99 Eligible Employee who incurs a Separation From Service due to voluntary resignation or involuntary discharge for cause prior to the ARD for which he or she had previously been accepted.

(d)    **Special Incentive Pension Benefits:** A 1998-99 Benefit Retiree shall have his or her pension calculated as of the ARD on which the 1998-99 Eligible Employee was accepted for retirement, after taking into account, as of the ARD, an additional six years of age and an additional six years credited to his or her Net Credited Service (or, where applicable below, an additional six years credited to his deemed period of continuous employment), for purposes of:

(i)    Eligibility for a Service Pension under section 4.1(a).

(ii)    Determining Pension Accrual Service for the Basic Monthly Pension Benefit and Supplemental Monthly Pension Benefit under section 5.2.

(iii)    Effect of a Pension Promotion under section 5.4.

(iv)    Determining whether three years of Net Credited Service has been completed under section 5.6(b) or Appendix A.

(v)    Determining whether a three-year requirement, similar to section 5.6(b), under another plan has been satisfied at the close of "Period Two" within the meaning of section 5.7(a) of this Plan.

(vi)    The extent (if any) to which pension amounts will be reduced for early commencement under section 4.1(c).

(vii)    Whether a five-year period following an absence has been credited under Appendix A.

(viii)    Eligibility for a minimum benefit under section 5.3(a), (c) or (d).

(e)    **Social Security Supplement:** Subject to Article IX, a 1998-99 Benefit Retiree who retires prior to attaining the earliest eligibility age for a Social Security old-age benefit shall be eligible to receive a monthly Social Security Supplement, from the Annuity Starting Date until the month in which the 1998-99 Benefit Retiree attains the earliest eligibility age for a Social Security old-age benefit (except for any month in which the 1998-99 Benefit Retiree's pension is suspended due to re-employment with a

V00096

Participating Company, an Affiliate or an Interchange Company). The monthly Social Security Supplement payment shall equal the greater of (i) $500, or (ii) 30 percent of the 1998-99 Benefit Retiree's pension amount under section 5.2 of the Plan reduced to reflect early commencement and determined without regard to the six additional years of age and service credited by the 1998-99 Benefit.

    (i)      The said Social Security Supplement shall not be eligible for any ad hoc increase which may at any time be adopted by a Participating Company.

    (ii)     Notwithstanding the calculation method stated above, in no event will the monthly Social Security Supplement payment exceed the amount of the 1998-99 Benefit Retiree's monthly Social Security old-age insurance benefits, as calculated pursuant to Treasury Regulation section 1.411(a)-7(c)(4)(ii)(B).

    (iii)    The said Social Security Supplement shall not be taken into account in determining any survivor annuity or other death benefit payment under the Plan.

3.  **2001 Benefit: Further Details of Terms and Conditions.**

A 2001 Eligible Employee who incurs a Separation From Service on or after January 1, 2001 shall have the rights described in sections 3(a) and 3(b) below; provided, however, that section 3(b) shall not apply with respect to a 2001 Eligible Employee whose Separation From Service is caused by his or her death on or after January 1, 2001 or who dies prior to his or her Annuity Starting Date.

    (a)     **2001 Benefit:** A 2001 Benefit Retiree will have a right to receive a pension benefit under the Plan equal to the greater of (i) the Deferred Vested Pension or Service Pension calculated under the otherwise applicable terms and benefit formulas then in effect, or (ii) a Service Pension computed as of August 8, 1998 but after crediting to the 2001 Eligible Employee's age and service as of that date (for all of the purposes described in section 2(d) above) an additional six years of age and an additional six years of service. The monthly annuity benefit payable to the surviving spouse or other Beneficiary of a 2001 Eligible Employee whose Separation From Service is caused by his or her death shall be calculated under section 7.1 based on the 2001 Benefit described in this subsection (a). The monthly annuity benefit payable to the surviving spouse or other Beneficiary of a 2001 Eligible Retiree who has a Separation From Service on or after January 1, 2001 but dies prior to his or her Annuity Starting Date shall be calculated under section 7.2 based on the 2001 Benefit described in this subsection (a).

    (b)     **Social Security Supplement:** Subject to Article IX, a 2001 Benefit Retiree who retires prior to attaining the earliest eligibility age for a Social Security old-age benefit shall be eligible to receive a monthly Social Security Supplement, from the Annuity Starting Date until the month the 2001 Benefit Retiree attains the earliest eligibility age for a Social Security old-age benefit (except for any month in which the 2001 Benefit Retiree's pension is suspended due to re-employment with a Participating Company, an Affiliate or an Interchange Company). For any month in which the said Social Security Supplement is payable, that payment shall be in a monthly amount equal to the greater of (i) $500, or (ii) 30 percent of the 2001 Benefit Retiree's applicable pension amount as of August 8, 1998 under section 5.2 of the Plan reduced to reflect early commencement and determined without regard to the six years of age and service which would have been applicable if the 2001 Eligible Employee had retired on that date under the FAP Special Pension or the 1998-99 Benefit, as applicable).

    (i)      The said Social Security Supplement shall not be eligible for any ad hoc increase which may at any time be adopted by a Participating Company.

    (ii)     Notwithstanding the calculation method stated above, in no event will the monthly Social Security Supplement payment exceed the amount of the 2001

89

V00097

Benefit Retiree's monthly Social Security old-age insurance benefits, as calculated pursuant to Treasury Regulation section 1.411(a)-7(c)(4)(ii)(B).

(iii) The said Social Security Supplement shall not be taken into account in determining any survivor annuity or other death benefit payment under the Plan.

4. **Special Rules Relating to Death and Disability Retirements after May 1, 1994.**

(a) **Death While Eligible for the FAP Special Pension or the 1998-99 Benefit.** The surviving spouse of an individual who died (i) on or after May 1, 1994 and on or before September 9, 1998 (or the last day of the Window Period, if later), (ii) while an Eligible Employee who was eligible for the FAP Special Pension described in Exhibit II or the 1998-99 Benefit and who was eligible for a Service Pension under section 4.1 of the Plan with or without the additional age and service under the FAP Special Pension or the 1998-99 Benefit as of his or her death (or, as of the last day of his or her 30-day selection window period for an IBEW-New England Employee) and (iii) before retiring with either a FAP Special Pension or a 1998-99 Benefit shall have his or her survivor benefit calculated under sections 7.1 and 7.6 after taking into account the enhanced pension that the Participant would have received under the FAP Special Pension or the 1998-99 Benefit, as applicable, if he or she had survived to the applicable retirement date. This special rule shall not apply to a Participant who (i) failed to elect the FAP Special Pension or the 1998-99 Benefit, as applicable, within the applicable election period, (ii) died after declining the FAP Special Pension or the 1998-99 Benefit, as applicable, or (iii) did not have, or would not have had, his application accepted (due to acceptances in seniority order and limitations on acceptances). A lump sum true-up payment shall be made to any surviving spouse who previously had an Annuity Starting Date and who is entitled to an increased survivor benefit under this section 4(a).

(b) **Death After Acceptance for 1998-99 Benefit.** The surviving spouse of a 1998-99 Eligible Employee who died while an Eligible Employee (i) after submitting an application for one or more ARDs, (ii) after the end of the Window Period and (iii) before the ARD for which the 1998-99 Eligible Employee has been accepted, or is in the process of being accepted (based on the seniority order applicable to other applicants), and (iv) was eligible for a Service Pension under section 4.1 as of the date the 1998-99 Benefit was offered with or without the additional age and service under the 1998-99 Benefit, shall have his or her survivor benefit calculated under sections 7.1 and 7.6 after taking into account the enhanced pension that the 1998-99 Eligible Employee would have received under the 1998-99 Benefit if such 1998-99 Eligible Employee had survived to the applicable ARD. This special rule shall not apply to a 1998-99 Eligible Employee who did not have, or would not have had, his application accepted (due to acceptances in seniority order and limitations on acceptances).

(c) **Separation From Service due to Disability While Eligible for the FAP Special Pension or the 1998-99 Benefit.** A Special Disabled Participant may elect, in accordance with procedures established by the Plan Administrator, to receive the Special Disability Benefit in lieu of any Disability, Deferred Vested or Service Pension which the Participant is receiving or is entitled to receive.

(i) **Special Disabled Participant** shall mean a Participant who (1) on or after May 1, 1994 and on or before the last day of the Window Period, incurred a Separation From Service on account of being totally disabled (as defined in section 4.3(b)) after receiving sickness benefits under the Participating Company's Sickness and Accident Disability Benefit Plan for 52 weeks, (2) was eligible for the FAP Special Pension described in Exhibit II (and was not an IBEW-New England Employee) or the 1998-99 Benefit at the time of his or her Separation From Service and (3) did not retire with either the FAP Special Pension or the 1998-99 Benefit.

V00098

(ii)    **Special Disability Benefit** shall mean a pension, commencing as of the date the Participant's Deferred Vested, Disability or Service Pension ceases, equal to, or the actuarial equivalent of, the benefit the Participant would have received under the FAP Special Pension or the 1998-99 Benefit, as applicable, using the Participant's age, Net Credited Service, Pension Accrual Service and continuous employment as of the date on which the Participant incurred a Separation From Service. A Participant who elects to receive the Special Disability Benefit shall receive a supplemental benefit equal to, or the actuarial equivalent of, the difference between (1) the amount the Participant would have received, during the period beginning on the date benefits would have begun had the Participant retired with a FAP Special Pension or a 1998-99 Benefit, as applicable, and ending on the date the Special Disability Benefit commences, had the Participant retired with the FAP Special Pension or the 1998-99 Benefit, as applicable, on the date he or she incurred a Separation From Service (or such later date as may be required under the FAP Special Pension or the 1998-99 Benefit) and (2) the total payments made to the Participant under any long-term disability plan maintained by a Participating Company, and/or under a Disability, Service, or Deferred Vested Pension. The Special Disability Benefit shall be paid in accordance with the provisions of section 6; provided, however, a Participant may elect with spousal consent, as described in section 6.5, to receive the supplemental benefit in the form of a single lump sum.

(d)    **Separation for Disability After Acceptance for 1998-99 Benefit.** A 1998-99 Eligible Employee who incurs a Separation From Service on account of being totally disabled (as defined in section 4.3(b)) after receiving sickness benefits under the Participating Company's Sickness and Accident Disability Benefit Plan for 52 weeks, after the Window Period and after submitting an application for one or more ARDs, but before the ARD for which he or she has been accepted or is in the process of being accepted (based on the seniority order applicable to other applicants), the 1998-99 Eligible Employee's pension shall be equal to the greater of (i) the 1998-99 Benefit that the 1998-99 Eligible Employee would have received if he or she had remained employed through the applicable ARD, or (ii) the Disability, Service or Deferred Vested Pension which is otherwise applicable to the 1998-99 Eligible Employee on account of his or her Separation From Service. This special rule shall not apply to a 1998-99 Eligible Employee who (i) failed to elect the 1998-99 Benefit within the applicable election period, (ii) declined the 1998-99 Benefit, or (iii) did not have, or would not have had, his application accepted (due to acceptances in seniority order and applicable limitations on acceptances). In all events, this rule shall cease to be in effect after December 31, 1999.

5.    **Miscellaneous Provisions:**

(a)    This Exhibit may be amended from time to time to conform to applicable law.

(b)    As of August 8, 1998, the Force Adjustment Plan of 1994 will be deleted from the Plan, and no surplus offers will thereafter be made pursuant to the said Force Adjustment Plan.

6.    **Definitions**.

(a)    **1998-99 Benefit Period** shall mean the period beginning no earlier than August 8, 1998 and ending no later than December 31, 1999.

(b)    **1998-99 Benefit Retiree** shall mean a 1998-99 Eligible Employee who voluntarily retires on an ARD after satisfying all terms and conditions of the 1998-99 Benefit.

(c)    **1998-99 Eligible Employee** shall mean each Participant in the Plan, whether or not the Participant had previously been offered (but declined or failed to accept) a pension incentive under a prior Force Adjustment Plan, who: (i) as of August 8, 1998, is a regular full-time or regular part-time employee in active service (or absent due to short term

V00099

disability or approved leave with rights of reinstatement) with a Participating Company and is (A) an Eligible Employee represented by IBEW Local 2213, or (B) an Eligible Employee represented by the Communications Workers of America, AFL-CIO (or is an Eligible Employee whose terms and conditions of employment are governed by a collective bargaining agreement with the Communications Workers of America, AFL-CIO or IBEW Local 2213) and in a position which is within one of the titles and universes described in the applicable August, 1998 Memorandum of Understanding, (ii) has had a most recent date of hire with a Participating Company prior to January 1, 1997, and (iii) is either eligible for a Service Pension under the Plan as of August 8, 1998, or would be eligible for a Service Pension on that date if six additional years of age and service were credited to such Participant as of that date for purposes of eligibility for a Service Pension. Notwithstanding any other provision of this paragraph, the definition of 1998-99 Eligible Employee shall not include employees whose terms and conditions of employment are determined by the bargaining applicable to Local 1301 of the Communications Workers of America, AFL-CIO (Directory Sales) or Local 1302 of the Communications Workers of America, AFL-CIO (Directory Clerical).

(d)   **2001 Eligible Employee** shall mean (I) with respect to IBEW-New England Employees, an Eligible Employee who was eligible for the FAP Special Pension described in Exhibit II, or (II) with respect to other Eligible Employees, a 1998-99 Eligible Employee and, in either case, who does not retire with an FAP Special Pension or a 1998-99 Benefit and who is an Eligible Employee on August 8, 1998 and through at least January 1, 2001. Notwithstanding the foregoing:

(i)    The definition of 2001 Eligible Employee shall not include employees whose terms and conditions of employment are determined by the bargaining applicable to Local 1301 of the Communications Workers of America, AFL-CIO (Directory Sales) or Local 1302 of the Communications Workers of America, AFL-CIO (Directory Clerical).

(ii)   To the extent, and subject to any restrictions, as may be agreed upon between the Company or one or more Participating Companies and the collective bargaining agent representing an Eligible Employee, the Eligible Employee shall not fail to qualify as a 2001 Eligible Employee merely because he or she is not an Eligible Employee for some period on or after August 8, 1998 and before January 2, 2001 if (1) he or she would have been an Eligible Employee throughout such period but for a temporary promotion in excess of one year to a position as a Salaried Employee, and (2) he or she returns to a position as an Eligible Employee when his or her temporary promotion ends and prior to his or her Separation From Service.

(e)   **2001 Benefit Retiree** shall mean a 2001 Eligible Employee who incurs a Separation From Service on or after January 1, 2001.

(f)   **ARD** shall mean the dates, as determined by the Company, on which a 1998-99 Eligible Employee may retire and receive benefits in accordance with the terms of the 1998-99 Benefit.

(g)   **Window Period** shall mean the 30-calendar day period commencing on the date the Solicitation Package is mailed to 1998-99 Eligible Employees, during which 1998-99 Eligible Employees may review the terms, and elect one or more ARDs, for the 1998-99 Benefit.

EXHIBIT V
MINIMUM PENSION BENEFIT OF APRIL 1, 1999

1. **Eligibility**.

Notwithstanding any provision to the contrary in this Plan or the Prior NYNEX Pension Plan, an individual receiving payments from the Plan shall be entitled to the payment adjustments described in section 3, if any of the following terms apply to the individual:

(a)    **Eligible Participants**.

For purposes of this Exhibit V, an "Eligible Participant" is an individual:

    (i)    whose Annuity Starting Date under the Plan or the Prior NYNEX Pension Plan occurred on or before April 1, 1999;

    (ii)    whose benefit from the Plan is a direct result of the individual's employment with a Participating Company;

    (iii)    who met the requirements for a Service or Disability Pension as defined under the terms of the Plan or the Prior NYNEX Pension Plan under which his or her benefits began, taking into account any "deemed" retirement eligibility service that may have been credited to the participant under a pension enhancement for which the participant qualified upon his or her retirement; and

    (iv)    who is receiving monthly benefits from the Plan on the first payment date an increased minimum amount takes effect as described in section 3(a).

(b)    **Eligible Beneficiaries**.

For purposes of this Exhibit V, an "Eligible Beneficiary" is an individual:

    (i)    who is:

        (1)    a spouse or other designated survivor annuitant for retirement benefits paid under the Plan for an individual who would have met the requirements to be an Eligible Participant described in sections 1(a)(i) through (iii), but for the individual's death; or

        (2)    a spouse or other designated beneficiary who is the recipient of monthly pre-retirement survivor benefits which began on or before April 1, 1999 due to the death of an individual who died while an active participant in the Plan or the Prior NYNEX Pension Plan after meeting the service requirement to be eligible for a Deferred Vested Pension and whose benefit entitlement was a direct result of the individual's employment with a Participating Company; and

    (ii)    who is receiving monthly benefits from the Plan on the first payment date an increased minimum amount takes effect as described in section 3(a).

(c)    **Eligible Alternate Payees**.

For purposes of this Exhibit V, an "Eligible Alternate Payee" is an individual:

    (i)    who is entitled to benefits from the Plan that would be paid to an Eligible Participant described in section 1(a) or an Eligible Beneficiary described in section 1(b) but for the Qualified Domestic Relations Order assigning those benefits to the individual; and

    (ii)    who is receiving monthly benefits from the Plan on the first payment date an increased minimum amount takes effect as described in section 3(a).

93

V00101

2.  **Determining Minimum Monthly Pension Amount.**

    (a)        **Minimum Monthly Pension Amount.**

The minimum monthly pension amount shall be:

        (i)        $500 per month, effective July 1, 1999;

        (ii)       $600 per month, effective July 1, 2000; and

        (iii)      $700 per month, effective July 1, 2001.

    (b)        **Adjustments to Minimum Monthly Pension Amount.**

The adjustments described in sections 2(b)(i) through (iii) apply to the minimum monthly pension amount described in section 2(a). The minimum monthly pension amount is not adjusted to reflect payment in a form other than a single life annuity or benefit commencement prior to Normal Retirement Age.

        (i)        **Adjustment for Less Than 30 Years of Service.**

If an Eligible Participant or a Participant whose death led to payment of the pre-retirement survivor benefit described in section 1(b)(i)(2) has completed less than 30 years of service, the minimum monthly pension amount applicable to the Eligible Participant, or to Eligible Beneficiaries or Alternate Payees receiving Plan benefits due to the Eligible Participant's or other Participant's employment, shall be prorated to reflect the Participant's actual service. For this purpose, service is measured as the difference between the Participant's net credited service date in Employer Records and the day following the Participant's termination of employment or death. Any fractional months are treated as 1/12 of a year. There is no adjustment to years of service for part-time service. Any "deemed" retirement eligibility service credited to the Participant under a pension enhancement for which the Participant qualified upon his or her retirement is not counted in service for purposes of the adjustment described in this Section.

        (ii)       **Adjustment for Survivor Percentage.**

The minimum monthly pension amount applicable to an Eligible Beneficiary or Eligible Alternate Payee receiving post-retirement survivor benefits shall be adjusted to reflect any percentage to be continued to the survivor under the optional form in effect on the date of the Participant's death. The minimum monthly pension amount applicable to an Eligible Beneficiary or Eligible Alternate Payee receiving pre-retirement survivor benefits shall be adjusted to reflect any survivor percentage that was applied when benefits began.

        (iii)      **Adjustment for Section 415 Limits.**

The minimum monthly pension amount applicable to any Eligible Participant, Eligible Beneficiary or Eligible Alternate Payee shall be adjusted to the extent necessary to meet the requirements described in Article XII.

3.  **Applying Minimum Monthly Pension Amount to Adjust Payments.**

    (a)        **In General.**

Except as provided otherwise in sections 3(b) and 3(c), the monthly Plan benefit of an Eligible Participant, an Eligible Beneficiary or an Eligible Alternate Payee shall be adjusted, effective for payments made on or after the first of the month following the effective date of each increase in the minimum monthly pension amount described in section 2(a), by increasing such monthly benefit by an amount equal to the excess, if any, of:

V00102

(i)    the minimum monthly pension amount in effect for the Eligible Participant, Eligible Beneficiary or Eligible Alternate Payee on such date, after adjustment as described in section 2(b); over

(ii)    the monthly benefit amount being paid to the Eligible Participant, Eligible Beneficiary or Eligible Alternate Payee from the Plan on the effective date of the increase to the minimum monthly pension amount described in section 2(a).

(b)    **When Benefits Are Paid from More than One Plan.**

This provision applies if an Eligible Participant, Eligible Beneficiary or Eligible Alternate Payee is receiving or has received benefits under the Plan and the Bell Atlantic Pension Plan (Verizon Pension Plan for Mid-Atlantic Associates, effective January 1, 2001), the Bell Atlantic Cash Balance Plan (Verizon's Bell Atlantic Cash Balance Plan, effective January 1, 2001), the Chesapeake Directory Sales Company Cash Balance Plan (Verizon's Chesapeake Directory Sales Company Cash Balance Plan, effective January 1, 2001) or the Bell Atlantic Enterprises Cash Balance Plan (Verizon's Bell Atlantic Enterprises Cash Balance Plan, effective January 1, 2001). In such case, the minimum monthly pension amount applicable under each such plan with respect to that Eligible Participant, Eligible Beneficiary or Eligible Alternate Payee shall be determined by prorating the minimum monthly pension amount otherwise applicable (before adjustment as described in section 2(b)) over the plans in which he or she is receiving or has received benefits, on the basis of the percentage of the individual's total benefits being provided from the respective plans. For purposes of the preceding sentence, if benefits from the other plan were paid in full in a lump sum, the lump sum is converted to the annuity that would otherwise have been paid if the lump sum had not been elected. The prorated amount applicable to the Plan is then adjusted as described in section 2(b) and used for purposes of section 3(a)(i).

(c)    **When Benefits are Affected by a Qualified Domestic Relations Order.**

(i)    **Alternate Payee Receives Benefits as a Surviving Spouse or Beneficiary.**

If an Eligible Alternate Payee is receiving benefits that would otherwise have been payable to an Eligible Beneficiary, the benefits being paid to the Eligible Beneficiary (if any) and the Eligible Alternate Payee are combined for purposes of determining if the total monthly benefit is below the minimum. For this purpose, the minimum monthly pension amount is first adjusted as described in sections 2(b)(i) and (iii), then prorated between the Eligible Beneficiary and the Eligible Alternate Payee based on the percentage of the participant's survivor benefit payable to each. The prorated amount for each Eligible Beneficiary or Eligible Alternate Payee is then adjusted as described in section 2(b)(ii) and the calculation described in section 3(a) is performed separately for each of them, comparing the adjusted prorated minimum for each to their respective current monthly Plan benefits. If the Eligible Alternate Payee is in effect the Eligible Beneficiary for the entire survivor benefit payable with respect to the Eligible Participant, the provisions of this section 3 are applied to the Eligible Alternate Payee without regard to this section 3(c)(i), as if he or she were an Eligible Beneficiary.

(ii)    **Alternate Payee Receives Portion of Participant's Benefits.**

If an Eligible Alternate Payee is receiving benefits that would otherwise have been payable to an Eligible Participant, the benefits payable to the Eligible Participant and the Eligible Alternate Payee are combined for purposes of determining if the total monthly benefit is below the minimum. For this purpose, the benefit being paid to the Eligible Alternate Payee is actuarially adjusted to reflect the amount by which the Eligible Participant's monthly benefits would be increased if the amount being paid to the Eligible Alternate Payee was instead paid to the Eligible Participant in the form of payment in effect for the participant. If, after application of the combined benefit for purposes of section 3(a)(ii) there is any excess, such excess amount shall be applied to adjust the monthly benefits of the Eligible Participant and/or Eligible Alternate Payee as provided

95

V00103

in the terms of the Qualified Domestic Relations Order dividing the participant's Plan benefits.

## EXHIBIT VI
## SPECIAL RETIREE SUPPLEMENTAL PENSION BENEFIT

### 1. Eligibility.

Notwithstanding any provisions to the contrary in this Plan or the Prior NYNEX Pension Plan, an individual receiving payments from the Plan shall be entitled to payment of a Special Retiree Supplemental Pension Benefit as described in sections 2 and 3, if the individual is an Eligible Participant, an Eligible Survivor Annuitant or an Eligible Alternate Payee as described in this section 1. A former Participant, survivor annuitant or alternate payee who previously received full payment of a benefit due under this Plan or the Prior NYNEX Pension Plan shall not be eligible for a Special Retiree Supplemental Pension Benefit under this Exhibit VI with respect to such paid-out benefit. If an individual is receiving Plan benefits as a Participant and as a survivor annuitant or as an alternate payee, his or her eligibility for a Special Retiree Supplemental Pension Benefit shall be determined separately with respect to the monthly benefits he or she is receiving in each capacity.

(a)    **Eligible Participants.**

For purposes of this Exhibit VI, an "Eligible Participant" is a Participant:

(i)    who is receiving monthly benefits from the Plan on February 1, 2000 (other than a Participant who is receiving monthly benefits solely because the Participant has reached age 70-1/2);

(ii)    whose most recent Annuity Starting Date under the Prior NYNEX Pension Plan was on or before February 1, 1995 or a portion of whose benefits under the Prior NYNEX Pension Plan began to be paid to an alternate payee under a qualified domestic relations order on or before February 1, 1995;

(iii)    who was employed by a Participating Company on the date his employment terminated for Plan purposes; and

(iv)    who met the requirements for a service or disability pension as defined under the terms of the Plan or the Prior NYNEX Pension Plan, taking into account any "deemed" retirement eligibility service that may have been credited to the Participant under a pension enhancement for which the Participant qualified upon his or her retirement.

For purposes of this section 1(a), if a Participant's Annuity Starting Date in Employer Records is a date which precedes the date the Participant terminated employment for plan purposes, the day following the Participant's termination date shall be used as the "Annuity Starting Date."

(b)    **Eligible Beneficiaries.**

For purposes of this Exhibit VI, an "Eligible Survivor Annuitant" is an individual:

(i)    who is:

(1)    a spouse (including an alternate payee who is deemed to be a spouse under a qualified domestic relations order) or other designated survivor annuitant for a retirement benefit paid under the Plan for an individual who would have met the requirements to be an Eligible Participant described in sections 1(a)(i) through (iv) (disregarding the portion of section 1(a)(ii) following the word "or"), but for the individual's death after his or her Annuity Starting Date; or

96

(2)     a spouse (including an alternate payee who is deemed to be a spouse under a qualified domestic relations order) who is the recipient of a monthly pre-retirement survivor annuity benefit which commenced immediately upon the Participant's death and had an Annuity Starting Date under the Prior NYNEX Pension Plan on or before February 1, 1995 due to the death of an individual who died while an active participant in the Prior NYNEX Pension Plan after meeting the service requirement to be eligible for a Deferred Vested Pension; and

(ii)     who is receiving monthly benefits from the Plan on February 1, 2000.

(c)     **Eligible Alternate Payees.**

For purposes of this Exhibit VI, an "Eligible Alternate Payee" is an individual:

(i)     who has a separate interest with respect to benefits under the Plan that would have been payable to a Participant but for the qualified domestic relations order assigning those benefits to the individual;

(ii)     who is receiving monthly benefits from the Plan on February 1, 2000;

(iii)     whose monthly benefits have been determined based on the actuarial factors used to determine service pension benefits under the terms of the Plan or the Prior NYNEX Pension Plan or, the Participant whose benefits have been assigned to the alternate payee is an Eligible Participant; and

(iv)     whose monthly benefits had an Annuity Starting Date under the Prior NYNEX Pension Plan on or before February 1, 1995 or, the Participant whose benefits have been assigned to the alternate payee is an Eligible Participant.

An Eligible Alternate Payee shall also include an alternate payee under a qualified domestic relations order who has not had an Annuity Starting Date for benefits assigned to him or her as a separate interest under the Plan, but who is entitled to a portion of the Special Retiree Supplemental Pension Benefit payable to an Eligible Participant pursuant to the terms of the order as described in section 2(b)(iii)(2).

2.    **Determining Special Retiree Supplemental Pension Benefit Lump Sum Amount.**   The amount of the Special Retiree Supplemental Pension Benefit payable to an Eligible Participant, an Eligible Survivor Annuitant or an Eligible Alternate Payee shall be determined as described in this section 2. If an individual is receiving Plan benefits as an Eligible Participant and as an Eligible Survivor Annuitant or as an Eligible Alternate Payee, the amount of his or her Special Retiree Supplemental Pension Benefit shall be determined separately with respect to the monthly benefits he or she is receiving in each capacity.

(a)     **Calculating Amount for Eligible Participant or Eligible Survivor Annuitant.**

Except as provided in section 2(b), the lump sum amount payable to an Eligible Participant or an Eligible Survivor Annuitant from the Plan under this Exhibit VI shall equal the amount determined from Table I attached to this Exhibit VI that relates to the eligible individual's "Years in Retirement" and "Annual Pension Amount" as of February 1, 2000. (There is to be no interpolation in applying the Table.) The lump sum amount determined from the Table shall be adjusted as necessary to meet the maximum benefit requirements of Code Section 415 set forth in Article XII.

(i)     **Determining Annual Pension Amount.**

The Annual Pension Amount of an Eligible Participant or Eligible Survivor Annuitant is determined by multiplying by 12 the actual "gross" dollar amount (before tax withholding or reductions for medical premium payments and other similar amounts) of the monthly benefit payment the individual is receiving from the Plan (without regard to any benefit the individual may be receiving under any other plan of the Company or an

V00105

Affiliate offering the Special Retiree Supplemental Pension Benefit) on February 1, 2000; provided, however, that for this purpose:

    (1)    the monthly benefit shall be increased by any increases expected to be effective for the individual as of July 1, 2000 pursuant to Exhibit V or section 5.3(d) of the Plan;

    (2)    the monthly benefit shall be reduced by the amount of any temporary Social Security supplement the individual is receiving from the Plan; and

    (3)    the product shall be rounded up to the next whole dollar.

(ii)    **Determining Years in Retirement.**

The Years in Retirement of an Eligible Participant are determined by the years and full months between the Participant's Annuity Starting Date and February 1, 2000, not counting any period during which benefits may have been suspended due to a Participant's reemployment. For an Eligible Survivor Annuitant, the Years in Retirement are determined by the years and full months between (1) (A) the Eligible Participant's Annuity Starting Date in the case of a post-retirement survivor benefit, or (B) the Eligible Survivor Annuitant's Annuity Starting Date, in the case of a pre-retirement survivor benefit, and (2) February 1, 2000. For purposes of determining "Years in Retirement," if the Participant's Annuity Starting Date in Employer Records is a date which precedes the date the Participant terminated employment for plan purposes, the day following the Participant's termination date shall be used as the "Annuity Starting Date" for purposes of determining "Years in Retirement."

(b)    **Calculating Amount for Eligible Alternate Payee and/or Eligible Participant Affected by a Qualified Domestic Relations Order.**

    (i)    **Calculating Amount Payable to Eligible Alternate Payee and Eligible Participant.**

When an Eligible Alternate Payee is receiving benefits that would otherwise have been payable to an Eligible Participant, this section 2(b)(i) shall apply in lieu of section 2(a). In such case, the Annual Pension Amounts determined under section 2(a)(i) for both the Eligible Participant and the Eligible Alternate Payee shall be combined, and the Years in Retirement shall be calculated as described in section 2(a)(ii) from the earlier of the Annuity Starting Date of the Eligible Participant or the Eligible Alternate Payee, for purposes of determining the total lump sum amount to which the Eligible Participant and the Eligible Alternate Payee are entitled under this section 2. If the Eligible Alternate Payee is not precluded from receiving additional Plan benefits pursuant to the applicable qualified domestic relations order, this total lump sum amount shall be prorated between the Eligible Participant and the Eligible Alternate Payee based on the ratio of their individual Annual Pension Amounts to their combined Annual Pension Amount. Otherwise, the total lump sum amount shall be payable to the Eligible Participant and the Eligible Alternate Payee shall receive no benefit under this Exhibit VI.

    (ii)    **Calculating Amount Payable to Eligible Alternate Payee when Participant is not in Pay Status on February 1, 2000.**

In the event an Eligible Alternate Payee is receiving benefits assigned from a Participant who is not receiving monthly benefits from the Plan on February 1, 2000 (and, therefore, is not an Eligible Participant), such Eligible Alternate Payee's lump sum amount shall be calculated under this section 2 based on his or her own Annual Pension Amount and Years in Retirement as if he or she were an Eligible Participant.

V00106

(iii)    **Calculating Amount Payable to Eligible Participant Otherwise Affected by a Qualified Domestic Relations Order.**

The following rules apply to an Eligible Participant affected by a qualified domestic relations order who is not described in section 2(b)(i):

(1)    If a portion of each payment from the Plan as and when paid to an Eligible Participant is payable to an alternate payee pursuant to a qualified domestic relations order, such alternate payee is not an Eligible Alternate Payee, and the portion of the Participant's payment assigned to the alternate payee shall be taken into account for purposes of determining the Eligible Participant's Annual Pension Amount under section 2(a)(i). In such case, the Eligible Participant shall have the right to elect the form of payment for the Special Retiree Supplemental Pension Benefit and the alternate payee shall share in such payment or payments only as and to the extent provided in the applicable qualified domestic relations order.

(2)    If a portion of an Eligible Participant's Plan benefit has been assigned under a qualified domestic relations order as an alternate payee's separate interest and the alternate payee is not receiving monthly benefits from the Plan on February 1, 2000, the portion of the benefit assigned to the alternate payee shall not be taken into account for purposes of determining the Eligible Participant's Annual Pension Amount under section 2(a)(i). In such case, the Special Retiree Supplemental Pension Benefit shall be divided between the Eligible Participant and the alternate payee only as and to the extent provided in the applicable qualified domestic relations order. If the alternate payee is required to share in the Special Retiree Supplemental Pension Benefit, such alternate payee shall be an Eligible Alternate Payee entitled to elect the form of payment under section 3 with respect to the portion of the Special Retiree Supplemental Pension Benefit assigned to her by the qualified domestic relations order.

3.    **Form and Timing of Payment.** The form and timing of payment for a Special Retiree Supplemental Pension Benefit payable to an Eligible Participant, Eligible Survivor Annuitant or Eligible Alternate Payee shall be determined under this section 3. If an individual is receiving Plan benefits as an Eligible Participant and as an Eligible Survivor Annuitant or as an Eligible Alternate Payee, the form of payment of his or her Special Retiree Supplemental Pension Benefit shall be determined separately for the Benefit he or she is entitled to receive in each capacity.

(a)    **Annuity Starting Date for Special Retiree Supplemental Pension Benefit.**

The "Annuity Starting Date" as defined in Code Section 417 for the benefit described in this Exhibit VI shall be July 1, 2000 for each Eligible Participant, Eligible Survivor Annuitant and Eligible Alternate Payee. For purposes of this Section 3, "Annuity Starting Date" shall mean July 1, 2000.

(b)    **Form of Payment for Special Retiree Supplemental Pension Benefit.**

The Special Retiree Supplemental Pension Benefit shall be distributed in the normal form of payment provided in section 3(b)(i) unless, subject to the election and consent rules of section 3(c), the eligible individual elects to receive payment in one of the optional forms of payment provided for in section 3(b)(ii) that is available to the eligible individual.

(i)    **Normal Form of Payment.**

The normal form of payment for an Eligible Participant who is not married on the Annuity Starting Date for the Special Retiree Supplemental Pension Benefit, for an

V00107

Eligible Survivor Annuitant or for an Eligible Alternate Payee is a single life annuity as described in section 3(b)(ii)(1) that is the actuarial equivalent (as determined under section 5) of the lump sum amount to which the eligible individual is entitled pursuant to section 2. The normal form of payment for an Eligible Participant who is married on the Annuity Starting Date for the Special Retiree Supplemental Pension Benefit is a pop-up joint and 50% survivor annuity described in section 3(b)(ii)(4), with his or her spouse as of the Annuity Starting Date as the designated beneficiary, that is the actuarial equivalent (as determined under section 5) of the lump sum amount to which the eligible individual is entitled pursuant to section 2.

(ii)    **Optional Forms of Payment**.

An Eligible Participant, Eligible Survivor Annuitant or Eligible Alternate Payee may elect (subject to the spousal consent requirements described in section 3(c) in the case of an Eligible Participant who is married on the Annuity Starting Date) to receive payment of the actuarial equivalent (as determined under section 5) of his or her Special Retiree Supplemental Pension Benefit in one of the optional payment forms listed below instead of in the normal form of benefit specified in section 3(b)(i). The optional payment forms are as follows:

(1)    **Single Life Annuity**.

A single life annuity is an optional form of payment for an Eligible Participant who is married on the Annuity Starting Date (and is the normal form of payment for all other Eligible Participants, Eligible Survivor Annuitants and Eligible Alternate Payees). This is an annuity payable monthly only for the life of the eligible individual.

(2)    **Lump Sum**.

A lump sum in the amount determined under section 2 is an optional form of payment available to an Eligible Participant, an Eligible Survivor Annuitant or an Eligible Alternate Payee.

(3)    **Joint and 50% Surviving Beneficiary Annuity**.

A joint and 50% surviving beneficiary annuity is an optional form of payment that is available to an Eligible Participant, but is not available to an Eligible Survivor Annuitant or an Eligible Alternate Payee. This is a pension, payable monthly, first, to the Eligible Participant for the Participant's life and, upon the Participant's death, to the individual beneficiary designated by the Participant (if living), for the beneficiary's life, in a monthly amount equal to 50% of the monthly amount paid to the Participant prior to the Participant's death. The form of annuity does not include a "pop-up" in the event the designated beneficiary pre-deceases the Participant.

(4)    **Pop-Up Joint and 50% Survivor Annuity**.

A pop-up joint and 50% survivor annuity is an optional form of payment that is available to an Eligible Participant, but is not available to an Eligible Survivor Annuitant or an Eligible Alternate Payee (and is the normal form of payment for an Eligible Participant who is married on the Annuity Starting Date). This is a pension, payable monthly, first, to the Participant for the Participant's life and, upon the Participant's death, to the individual beneficiary designated by the Participant (if then living), for the beneficiary's life, in a monthly amount equal to 50%, of the monthly amount paid to the Participant prior to the Participant's death, provided if the designated beneficiary predeceases the Participant, upon written notice of such death delivered to the Benefit Administrator by the Participant, the benefit shall convert to a single life annuity for the life of the

V00108

Participant, and the amount of the monthly benefit shall be increased (i.e., shall pop-up), effective with the payment for the month following the month in which the designated beneficiary's death occurs, to be equal to 100% of the monthly pension to which the Participant would have been entitled under this Exhibit VI had payment originally commenced in the form of a single life annuity; provided, however, that in the event notice of the designated beneficiary's death is provided to the Benefit Administrator after the first anniversary of such death, the adjustment described in this subsection shall not be effective for any payment prior to the payment for the month following the month in which such notice is received.

(c)    **Election and Revocation of Optional Payment Forms.**

(i)    **Election of Optional Payment Form.**

An Eligible Participant, Eligible Survivor Annuitant or Eligible Alternate Payee may elect to receive payment in any optional form available to him or her under section 3(b)(ii) by completing the requisite election form and returning it to the Benefit Administrator. If an Eligible Participant is married on the Annuity Starting Date, then the Participant's election to receive the Special Retiree Supplemental Pension Benefit in a form other than a Joint and 50% Surviving Beneficiary Annuity or a Pop-Up Joint and 50% Survivor Annuity with his or her spouse as of the Annuity Starting Date as beneficiary is subject to the spousal consent requirements of section 3(c)(iii).

(ii)    **Notice and Information to Eligible Individuals.**

The following information regarding the Special Retiree Supplemental Pension Benefit shall be furnished in writing to each Eligible Participant, Eligible Survivor Annuitant, and Eligible Alternate Payee before payments of the Special Retiree Supplemental Pension Benefit begin.

(1)    A general description or explanation of the normal form of payment and optional forms of payment available to the individual;

(2)    A notice of the eligible individual's right to elect an optional form of payment;

(3)    A general explanation of the relative values of each form of payment available to the individual;

(4)    A general explanation of the rights of an Eligible Participant's spouse; and

(5)    If applicable, a notice of the individual's right to make a direct rollover.

Except as provided in section 3(d)(ii), an eligible individual's payments will not begin earlier than 30 days after the individual has been provided with the above information unless (A) the individual is given notice of his or her right to a 30-day election period in which to consider whether to waive the normal form and elect an optional form, (B) the individual affirmatively elects a distribution and a form of benefit, with spousal consent if applicable, (C) the individual is permitted to revoke his or her affirmative election at any time prior to the Annuity Starting Date, or, if later, the expiration of the 7-day period beginning on the day after the information described in this section 3(c)(ii) is provided to the individual, and (D) distribution does not commence before the expiration of the 7-day period described in (C).

(iii)    **Spousal Consent.**

In the case of an Eligible Participant who is married on the Annuity Starting Date, any election of a form of payment other than a Joint and 50% Surviving Beneficiary Annuity

or a Pop-Up Joint and 50% Survivor Annuity with his or her spouse as beneficiary shall not take effect unless the Eligible Participant's spouse determined as of the Annuity Starting Date (or the spouse's legal guardian if the spouse is legally incompetent) consents irrevocably in writing to such election, which consent names the specific optional form of benefit and the specific alternate beneficiary elected by the Eligible Participant, acknowledges the effect of the election, and is witnessed by a notary public. The requirement of the written consent of the spouse shall be waived if the Eligible Participant establishes to the satisfaction of the Plan Administrator that the consent cannot be obtained because there is no spouse or because the spouse cannot be located, or because of such other circumstances as may be prescribed by law, in which case an election form signed solely by the Eligible Participant will be deemed sufficient. Any consent necessary under this provision will be valid only with respect to the spouse who signs the consent.

(iv)    **Revocation of Election.**

Any election under this section 3 may be revoked (without spousal consent) and a new election made at any time prior to the Annuity Starting Date or the end of the 7-day period described in section 3(c)(ii), if later. Such revocation shall be effected by written notification on the form approved for use under the Plan. In no event may an election be revoked or form of payment be changed after payment of the Special Retiree Supplemental Pension Benefit has begun.

(v)    **Death During Election Period.**

Any election of an Eligible Participant, Eligible Survivor Annuitant or Eligible Alternate Payee under this Section 3 shall automatically be revoked in the event of the death of the Eligible Participant, Eligible Survivor Annuitant or Eligible Alternate Payee prior to the Annuity Starting Date. Any actual or constructive election of an Eligible Participant of a Joint and 50% Surviving Beneficiary Annuity or a Pop-Up Joint and 50% Survivor Annuity with the Participant's spouse as beneficiary shall automatically be revoked if the Participant is divorced, or the spouse dies, before the Annuity Starting Date, except to the extent required under a qualified domestic relations order. Any actual or constructive election of a Joint and 50% Surviving Beneficiary Annuity, or Pop-Up Joint and Survivor Annuity shall automatically be revoked if the beneficiary dies before the Annuity Starting Date.

(vi)    **Divorce Subsequent to Annuity Starting Date.**

If an Eligible Participant is divorced subsequent to the Annuity Starting Date, any form of benefit which became effective as of the Annuity Starting Date shall remain in effect and any such divorce shall have no effect on such benefit election, except to the extent that a qualified domestic relations order provides to the contrary.

(d)    **Timing of Payment.**

(i)    **General Rule.**

Payment of an eligible individual's Special Retiree Supplemental Pension Benefit will begin as soon as administratively practicable following receipt by the Benefit Administrator of a properly completed application and election form (determined at the discretion of the Benefit Administrator) from the Eligible Participant, Eligible Survivor Annuitant or Eligible Alternate Payee, but no earlier than the first of the month following the Annuity Starting Date. If payments are made in the form of an annuity, the first payment will include the payment for the current month as well as payments due for months prior to the current month which began on or after the Annuity Starting Date.

(ii)    **Mandatory Payment.**

V00110