**AMENDMENT TO THE VERIZON PENSION PLAN
FOR NEW YORK AND NEW ENGLAND ASSOCIATES**

**1. The following new subsection (j) is added to Section 2.69 ("Supplemental Amounts") of the Plan, effective March 28, 2004:**

(j)  Island allowances paid to IBEW plant associates permanently assigned to the Massachusetts islands of Martha's Vineyard and Nantucket.

**2. Effective December 30, 2001, the following new paragraph (4) is hereby added to section 5.4(b) of the Plan:**

(4)     **Special Rule for New York Telecommunications Technical Associates.**  Notwithstanding anything to the contrary in this section 5.4(b), if a CWA Employee has a Separation From Service after December 30, 2001, while assigned to a position as a "Telecommunications Technical Associate" for Verizon New York Inc. and before he or she has 18 months of service in that job title, the CWA Employee's Basic Monthly Pension Benefit shall be calculated as described in subsection (a) of this section 5.4 for Employees whose promotions occurred more than 18 months before the Determination Date.

**3. Effective August 3, 2003, Section 7.2(c)(3) of the Plan is amended in its entirety to read as follows:**

(3)     **Form and Timing of Payment.**  Subject to section 7.6, the following rules shall apply for purposes of determining the form and timing of payment to a Beneficiary under this section 7.2(c):

(A)     **Payment to Non-Spouse Beneficiary.**  If a Participant's Beneficiary is someone other than his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the Beneficiary's lifetime; provided, however, that the death benefit shall be paid to the non-spouse Beneficiary in a lump sum as soon as administratively practicable following the Participant's death in the event the Participant's death occurs (i) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003, (iii) during the cash-out window described in section 6.13, or (iv) when the Participant would have been eligible to elect a lump sum under section 6.13 or any other provision of the Plan.

(B)     **Payment to Spouse Beneficiary.**  If a Participant's Beneficiary is his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity payable for the surviving spouse's lifetime.  Such benefit shall commence immediately following the Participant's death but, in the case of a Participant

2

who dies prior to Normal Retirement Age, only if the surviving spouse elects within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. Except as provided below, if such spouse does not elect immediate payment, payment shall be deferred until the Annuity Starting Date elected by the spouse which shall be a date not earlier than the date the Participant would have attained Earliest Retirement Age and not later than the date the Participant would have attained Normal Retirement Age had he or she survived. Notwithstanding the preceding sentence, in the event the Participant's death occurs (i) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003, (iii) during the cash-out window described in section 6.13, or (iv) when the Participant would have been eligible to elect a lump sum under section 6.13 or any other provision of the Plan, the surviving spouse may elect to have the death benefit paid in a lump sum or in an immediate annuity for the spouse's life, as soon as administratively practicable following the Participant's death. The surviving spouse's election shall be made within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. If the Participant's death occurs before October 1, 2003, the lump sum (if available) is available only if immediate payment is elected and the surviving spouse may not defer payment of the lump sum to a later date. If the surviving spouse of a Participant who dies prior to Earliest Retirement Age does not elect the immediate lump sum or the immediate annuity within the time prescribed by the Plan Administrator, payment of the death benefit may not begin until the date the Participant would have attained the Earliest Retirement Age; provided, however, that if the Participant qualified as a Window-Eligible Employee under section 6.13, the surviving spouse may elect any Annuity Starting Date up to the Participant's Normal Retirement Age that would have been available to the Participant under section 6.13.

**5. Effective January 1, 2004, the following new subsection (c) is hereby added to section 20.2 of the Plan:**

(c)    The following rules shall supercede the provisions of subsections (a) and (b) of this section 20.2 for Eligible Employees who were laid-off in 2002 or 2003, were later offered reinstatement by a Participating Company, and were represented by a collective bargaining agent that agreed to these provisions:

(1) The Eligible Employee's ERISA Service, Net Credited Service and Pension Accrual Service shall include, immediately upon such reinstatement, the Employee's ERISA Service, Net Credited Service, and Pension Accrual Service credited as of the date of lay-off, plus full service credit for all purposes for the period of lay-off; provided, however, that service credits shall be extended only through July 29, 2003 for an Employee who elects not to return to work.

(2) If the Eligible Employee had an Annuity Starting Date under the Plan after his lay-off, the following rules shall apply:

3

(A)  If the Employee does not return to work, his pension benefit shall be recalculated taking into account any additional service credited under paragraph (1), above, and:

(I) if the Employee elected to receive his pension in a lump sum, he shall receive an additional lump sum payment equal to the difference between what the Employee received as of his Annuity Starting Date and what he would have received taking into account the additional service, or

(II) if the Employee elected to receive his pension in a monthly annuity, he (i) shall receive an additional payment equal to the difference between the aggregate annuity payments the Employee received in the past and the aggregate annuity payments he would have received taking into account the additional service and (ii) shall have his future annuity payments increased to the appropriate amount reflecting the additional service.

(B)  If the Employee returns to work and elected to receive his pension in a lump sum, the benefit payable to the Employee in the form of a single life annuity on his or her Annuity Starting Date following his subsequent Separation From Service shall be reduced by the amount of the single life annuity payable to the Employee on the earlier Annuity Starting Date on which the prior lump sum payment was based.

(C)  If the Employee returns to work and elected to receive his pension in the form of a monthly annuity, his pension payments shall be suspended following his reinstatement in accordance with the provisions of Article IX of the Plan; provided, however, that section 5.9 of the Plan, which provides for adjustment of benefits for certain prior payments, shall not apply.

4

## VERIZON EMPLOYEE BENEFITS COMMITTEE
Resolutions of the Chairperson

### 2003 Collective Bargaining

WHEREAS, THE UNDERSIGNED, in his capacity as Chairperson of the Verizon Employee Benefits Committee ("VEBC"), which status he holds by virtue of his status as the most senior Human Resources officer of Verizon Communications Inc. ("Company"), is authorized to act for the VEBC and the Company and its affiliates, as applicable, to approve the text of a benefit plan amendment corresponding to the terms of a collective bargaining agreement that relates to employees of the Company or an affiliate or that does not substantially alter the cost of benefits under the benefit plan;

WHEREAS, the Verizon Pension Plan for New York and New England Associates (the "Plan") has been amended from time to time and has been restated to include amendments through December 15, 2001;

WHEREAS, it is necessary to amend the Plan to reflect changes to pension band rates, lump sum provisions, pre-retirement death benefits and other features of the Plan resulting from collective bargaining in 2003;

RESOLVED, that in accordance with the terms of various collective bargaining agreements, the VEBC hereby amends the Plan as described in the attached amendment to the Plan.

APPROVED, this ___ 4 day of December, 2003.

Signed:_____
Ezra D. Singer
Executive Vice President--
Human Resources and Chairperson of
Verizon Employee Benefits Committee

V00194

## AMENDMENT TO THE VERIZON PENSION PLAN
## FOR NEW YORK AND NEW ENGLAND ASSOCIATES

1. **Effective October 1, 2003, the following new subsection (d) is added to Section 2.49 ("Pension Band Amount") of the Plan and "; and" will replace the period at the end of subsection (c) thereof:**

   (d)  for an Eligible Employee (other than an Eligible Employee in a bargaining unit represented by a collective bargaining agent that has not agreed to this provision) whose Separation From Service occurs on or after October 1, 2003 and on or before December 31, 2003, the Pension Band Amount applied to calculate the Employee's Basic Monthly Pension Benefit under Article V upon Separation From Service shall equal 105% of the Pension Band Amount that would have applied without regard to this sentence.

2. **The following new subsection (i) is added to Section 2.69 ("Supplemental Amounts") of the Plan, effective August 3, 2003:**

   (i)  The 3%-lump sum wage payment, if any, paid to an Eligible Employee in 2003.

3. **Effective October 1, 2003, section 5.3(d)(4)(D) of the Plan is amended in its entirety to read as follows:**

   (D)  **When Benefits Are Paid in a Lump Sum.**  The adjustment described in this subsection (4) shall not apply in the case of a Participant, surviving spouse, alternate payee or other Beneficiary who has received payment in a lump sum and, therefore, has received the value of the increasing minimum in the payment under section 6.11 or 6.13.

4. **Effective October 1, 2003, section 6.7(c)(2) of the Plan is amended in its entirety to read as follows and the new subsection (3), below, is added to section 6.7(c):**

   (2)  Effective March 1, 2001 through September 30, 2003, present value shall be calculated using (A) the assumptions in section 6.11(c)(2)(C)(i) and (ii) for a Participant who would be a Window-Eligible Employee but for this provision, and (B) the assumptions in section 6.11(c)(2)(C)(i) (without regard to 6.11(c)(2)(C)(ii)) for any other Participant.

   (3)  Effective October 1, 2003, present value shall be calculated using (A) the assumptions in sections 6.13(c)(2)(C)(i) through (iii) for a Participant who would be a Window-Eligible Employee but for this provision, and (B) the assumptions in section 6.13(c)(2)(C)(iii) only for any other Participant.

V00195

**5. Effective October 1, 2003, section 6.9 of the Plan is amended in its entirety to read as follows:**

**6.9    Application of Optional Forms to Certain Transferred Benefits.**

Subject to Section 6.6, an accrued benefit which is transferred to the Plan pursuant to Article XI or the rules in Appendix A shall be distributed in the automatic form described in section 6.2 unless, subject to the spousal consent requirements of section 6.5, the Participant elects to receive such benefit in one of the optional payment forms described in section 6.1, 6.11, or 6.13 or, to the extent required by the anti-cutback rules set forth in section 411(d)(6) of the Code and Treasury Regulations issued thereunder, in one of the optional payment forms described in the plan from which such benefit was transferred.

**6. Effective October 1, 2003, section 6.11 of the Plan through section 6.11(a)(1) is amended to read as follows:**

**6.11    Pension Cash-Out Window - Separation From Service Before October 1, 2003.**

      (a)    **Window-Eligible Employees.** Each Window-Eligible Employee may make the election described in subsection (b), below, "Window-Eligible Employee" shall include each individual who is:

           (1)    for IBEW-New England Employees, an Eligible Employee eligible for a Service Pension or a Deferred Vested Pension upon his or her Separation From Service on or after March 1, 2001 and prior to October 1, 2003;

**7. Effective October 1, 2003, the following new Section 6.13 is added at the end of Article VI of the Plan:**

**6.13    Pension Cash-Out Window - Separation From Service After September 30, 2003.**

      (a)    **Window-Eligible Employees.** Each Window-Eligible Employee may make the election described in subsection (b), below. "Window-Eligible Employee" shall include each individual who is an Eligible Employee eligible for a Service Pension or a Deferred Vested Pension upon his or her Separation From Service on or after October 1, 2003 and on or before December 31, 2003 or on or after November 1, 2004 and on or before August 2, 2008.

      (b)    **Election.** Each Window-Eligible Employee may elect to have his or her pension begin on an Annuity Starting Date that is the day following his or her Separation From Service (even if his or her pension would not otherwise be eligible for commencement on such date under the other provisions of the Plan) or the first day of any following calendar month (but not later than the latest date payments may begin

3

V00196

under any other provision of the Plan) and to have his or her pension paid on such Annuity Starting Date in the automatic form of payment or any optional forms of payment otherwise available to the Eligible Employee under the Plan, or in a lump sum. Any such election shall be made in a manner described in sections 6.3 through 6.5; provided, however, that such election must be made in writing in advance of the requested Annuity Starting Date. Notwithstanding the above, a Window-Eligible Employee who is also described in section 6.7 shall receive payment only in the form of a lump sum.

(c)    **Determination of Pension Amount.**

(1)    **Annuity Form of Payment.** A Service Pension payable in the form of an annuity to a Window-Eligible Employee who makes the election described in subsection (b), above, shall equal his or her Service Pension payable in such form as determined under the terms of the Plan other than this section 6.13. A Deferred Vested Pension payable in the form of an annuity to a Window-Eligible Employee who makes the election described in subsection (b), above, shall equal his or her Deferred Vested Pension payable in such form as determined under the terms of the Plan other than this section 6.13, and shall be reduced for commencement prior to Normal Retirement Age using the factors shown in Tables 2 and 2A.

(2)    **Lump Sum Form of Payment.**

(A)    **Service Pension Cash-Outs.** The lump sum payable to a Window-Eligible Employee who is eligible for a Service Pension shall equal the actuarial equivalent present value of the Service Pension otherwise payable to the Participant in the form of a Single Life Annuity commencing on his Annuity Starting Date, as determined under the provisions of the Plan other than this section 6.13. Such actuarial equivalent present value shall be calculated using the assumptions in subsection (c)(2)(C), below.

(B)    **Deferred Vested Pension Cash-Outs.** The lump sum payable to a Window-Eligible Employee who is eligible for a Deferred Vested Pension shall equal the actuarial equivalent present value of the Deferred Vested Pension otherwise payable to the Participant in the form of a Single Life Annuity commencing at Normal Retirement Age (or age at Separation From Service, if later), as determined under the provisions of the Plan other than this section 6.13. Such actuarial equivalent present value shall be calculated using the assumptions in subsection (c)(2)(C), below.

(C)    **Assumptions for Determining Cash-Out Amount.** The lump sum payable to a Window-Eligible Employee who elects a Service Pension or a Deferred Vested Pension cash-out shall equal the greatest of the amounts determined using the assumptions in (i), (ii) and (iii), below:

(i)    The "GATT" amount determined using:

V00197

4

I.    Interest Rate:  An interest rate equal to 100% of the annual interest rate on 30-year Treasury securities (published in the Federal Reserve Statistical Release) for the second calendar month preceding the first day of the calendar quarter containing the Annuity Starting Date.

II.    Mortality: Mortality based on "the applicable mortality table" described by the Secretary of the Treasury under Code section 417(e).

III.    Age:  The Window-Eligible Employee's age shall be measured in whole years and months as of the fifteenth day of the second month of the calendar quarter that contains the Employee's Annuity Starting Date.

(ii)    The "PBGC" amount determined using:

I.    Interest Rate:  An interest rate equal to (a) if the actuarial present value of the pension using the "applicable interest rate" does not exceed $25,000, the applicable interest rate, and (b) if the actuarial present value of the pension using the "applicable interest rate" does exceed $25,000, 120% of the applicable interest rate, except that the resulting present value shall not be less than $25,000.  For this purpose "applicable interest rate" means the applicable PBGC interest rate for the calendar month prior to the first calendar month in the calendar quarter in which the Employee's Separation From Service occurs.  The applicable PBGC interest rate for cash-out of a Service Pension shall be the PBGC immediate rate for lump sums and for cash-out of a Deferred Vested Pension shall be the PBGC deferred or immediate rates for lump sums, as applicable.

II.    Mortality:  Mortality based on the Non-Insured Unisex Pension 1984 (UP84) Mortality Table.

III.    Age:  The Window-Eligible Employee's age shall be measured in whole years and months as of the fifteenth day of the second month of the calendar quarter in which the Employee's Separation From Service occurs.

(iii)    The "GATT" amount determined using:

I.    Interest Rate:  An interest rate based on "the applicable interest rate" under Code section 417(e) for the second calendar month preceding the first day of the calendar quarter containing the Annuity Starting Date.

II.    Mortality: Mortality based on "the applicable mortality table" described by the Secretary of the Treasury under Code section 417(e).

III.    Age:  The Window-Eligible Employee's age shall be measured in whole years and months as of the fifteenth day of the second month of the calendar quarter that contains the Employee's Annuity Starting Date.

V00198

5

Notwithstanding the above, the lump sum payable to a Window-Eligible Employee whose Separation From Service occurs on or after October 1, 2003 and on or before November 30, 2003 and who elects a Service Pension or a Deferred Vested Pension cash-out shall equal the greater of (a) the lump sum amount determined using the most favorable of the assumptions in (i), (ii) and (iii), above, as in effect on the Window-Eligible Employee's Annuity Starting Date or (b) the lump sum amount determined using the most favorable interest rate and mortality basis that applied to determine the lump sum amount payable under section 6.11 to a Window-Eligible Employee whose Separation From Service and Annuity Starting Date occurred during the third calendar quarter of 2003, except that the Window-Eligible Employee's age as of his actual Annuity Starting Date shall be used instead of his age as of the third calendar quarter of 2003.

(D)    **Adjustment for Minimum Pension.**  The lump sum amount for any benefit otherwise subject to adjustment by the minimum pension provisions of section 5.3(d) shall be actuarially adjusted using the assumptions in (C) to reflect the value of future increases in the minimum.

(E)    **Effect of Lump Sum Payment.**  Subsequent to payment of a lump sum to any Window-Eligible Employee under this section 6.13, neither the Window-Eligible Employee nor his or her spouse or other beneficiary shall have the right to any further benefit whatsoever under the Plan and no right to any ad hoc increase that may be adopted under the Plan at any future date; provided, however, that this provision shall preclude payment of a death benefit payable under section 8.3 only for a Window-Eligible Employee who notifies the Benefit Administrator in writing at the time he or she elects the lump sum that he or she is eligible for and intends to apply 10-year averaging treatment under federal income tax laws to the lump sum.

(F)    **Special Rules for Disabled Employees.**  An Eligible Employee who has a Separation From Service on or after January 1, 2004 and on or before October 31, 2004 due to his or her exhaustion of 52 weeks of sickness disability benefits and is eligible for a Service Pension or a Deferred Vested Pension upon his or her Separation From Service shall qualify as an Window-Eligible Employee eligible to make an election under subsection (b) of this Section 6.13.  A Window-Eligible Employee described in the preceding sentence or in subsection (a) who elects to receive payment of his or her Service Pension or Deferred Vested Pension on an Annuity Starting Date under this section 6.13 shall be deemed to have waived any right to receive a Disability Pension and to have elected instead to cash-out the accrued benefit under this Plan consisting of the Service Pension or Deferred Vested Pension to which he or she is otherwise entitled, without reference to any special rules pertaining to Eligible Employees who resign or retire due to disability.

(G)    **Social Security Supplements.**  In the event a Window-Eligible Employee who has elected a lump sum is entitled to a social security supplement under Exhibit IV, such social security supplement shall not be paid as a

V00199

6

lump sum. The social security supplement shall be paid in the form of a temporary annuity as described in Exhibit IV.

(d)    **Effect of Cash-Out on Prior Service.** Notwithstanding any other provision in the Plan to the contrary, all prior Net Credited Service and Pension Accrual Service of an individual who receives a lump sum payment under this section 6.13 shall thereafter be disregarded for all purposes under the Plan.

**8. Effective October 1, 2003, Section 7.1(c) of the Plan shall be amended in its entirety to read as follows:**

(c)    **Separation From Service Due to Death Occurring On or After January 1, 2001 For a Participant Who is an Eligible Employee On or After August 6, 2000.** The following provisions apply in the case of a Vested Participant who is an Eligible Employee at some time on or after August 6, 2000 and whose Separation From Service occurs due to death on or after January 1, 2001:

(1)    **In General.** A death benefit shall be paid to the Beneficiary of a Vested Participant whose Separation From Service is due to death on or after January 1, 2001. If (A) the Participant's Beneficiary pursuant to (2), below, dies before the benefit described in this subsection is paid or begins pursuant to (3), below, or (B) if the Participant has no Beneficiary pursuant to (2), below, the benefit is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2)    **Beneficiary.** A Participant's Beneficiary shall be determined under the following rules:

(A)    A Participant may designate any living person as his or her primary or contingent Beneficiary for the death benefit described in this section 7.1(c), and may change such designation from time to time prior to his or her death or Annuity Starting Date, in accordance with procedures prescribed by the Plan Administrator. However, if the Participant is married, the Participant's surviving spouse is the Beneficiary, unless the Participant designates a person other than his or her spouse as primary Beneficiary and his or her spouse consents to such designation as described in section 7.3. Notwithstanding the preceding sentence, a Participant's election of a non-spouse Beneficiary made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs shall automatically become null and void as of such first day.

(B)    If all designated primary and contingent Beneficiaries of a Participant die before benefits are paid or begin pursuant to (3), below, if the Participant has not designated a Beneficiary, if the Participant's surviving spouse has not consented to the Participant's designation of a non-spouse Beneficiary, or if the non-spouse designation was made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs and death occurs after such first day, the Beneficiary is the Participant's surviving spouse. If the Participant described in the preceding

V00200

7

sentence has no surviving spouse, the Participant has no Beneficiary for purposes of this section 7.1(c).

(3)    **Form and Timing of Payment.**  Subject to section 7.6, the following rules shall apply for purposes of determining the form and timing of payment to a Beneficiary under this section 7.1(c):

(A)    **Payment to Non-Spouse Beneficiary.**  If a Participant's Beneficiary is someone other than his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the Beneficiary's lifetime; provided, however, that the death benefit shall be paid to the non-spouse Beneficiary in a lump sum as soon as administratively practicable following the Participant's death in the event the Participant's death occurs (i) when the Participant qualifies as a Window-Eligible Employee under section 6.11 or 6.13 or (ii) on or after January 1, 2004 and on or before October 31, 2004.

(B)    **Payment to Spouse Beneficiary.**  If a Participant's Beneficiary is his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the surviving spouse's lifetime, unless the surviving spouse of a Participant who dies prior to Normal Retirement Age elects to defer commencement of the monthly annuity to a date not later than the date the Participant would have attained Normal Retirement Age had he or she survived.  Notwithstanding the preceding sentence, in the event the Participant's death occurs (i) when the Participant qualifies as a Window-Eligible Employee under section 6.11 or 6.13, or (ii) on or after January 1, 2004 and on or before October 31, 2004, the surviving spouse may elect to have the death benefit paid in a lump sum as soon as administratively practicable following the Participant's death.  The surviving spouse's election shall be made within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. The surviving spouse may defer payment of the monthly annuity as described above, but may only defer payment of the lump sum (if available) if the Participant's death occurs on or after October 1, 2003.

(4)    **Amount.**  The following provisions shall determine the amount of any payment to be made to a Beneficiary under this section 7.1(c):

(A)    **Annuity Payment Amount.**  Except as provided in (C), below, the amount of each monthly annuity payment shall be equal to the amount the Beneficiary would have received following the Participant's death, if −

(i)    the Participant's Separation From Service had occurred on the day of his or her death,

(ii)    the Participant had been eligible for and commenced receipt of an unreduced Service Pension on the day following such Separation From

Service, in the form of a Qualified 65-Percent Joint and Survivor Annuity (a Qualified 50-Percent Joint and Survivor Annuity if the Beneficiary is not the Participant's surviving spouse and is more than 25 years younger than the Participant), and

(iii)    the amount payable during the Participant's lifetime had been reduced by applying Table 4B.

(B)    **Lump Sum Payment Amount.**  Except as provided in (C), below, the lump sum payable to a Beneficiary under this section 7.1(c) shall equal the actuarial equivalent present value, calculated using the assumptions in section 6.11(c)(2)(C) or 6.13(c)(2)(C), as applicable, of the monthly annuity otherwise payable to the Beneficiary under section 7.1(c)(4)(A) (i) for deaths occurring before October 1, 2003, on an Annuity Starting Date as of the day following the Participant's death or (ii) for deaths occurring on or after October 1, 2003, as of the Beneficiary's Annuity Starting Date.  For purposes of applying the assumptions in section 6.11(c)(2)(C) or 6.13(c)(2)(C), the date of the Participant's death shall be the date of the Participant's Separation From Service and the Beneficiary's age shall be used in place of the Participant's age.

(C)    **Minimum Death Benefit.**  Notwithstanding (A) and (B), above, if the Participant's death occurs on or after January 1, 2004 and on or before October 31, 2004:

(i)    The monthly annuity payable for the Beneficiary's life (if any) shall not be less than the actuarial equivalent, in the form of a monthly single life annuity for the Beneficiary's life starting on the Beneficiary's Annuity Starting Date, of the lump sum amount that would have been paid to the Participant under section 6.13 if lump sum distributions had been available under that section at the Participant's death, the Participant had separated from service on his or her date of death, and the Participant had elected to receive payment of his or her benefit in a lump sum as of the Beneficiary's Annuity Starting Date.  For this purpose, actuarial equivalent annuities shall be determined using the assumptions described in section 6.13(c)(2)(C)(iii).

(ii)    The lump sum amount payable to the Beneficiary (if any) shall not be less than the lump sum amount that would have been paid to the Participant under section 6.13 if lump sum distributions had been available under that section at the Participant's death, the Participant had separated from service on his or her date of death, and the Participant had elected to receive payment of his or her benefit in a lump sum as of the Beneficiary's Annuity Starting Date.

9.  **Effective August 3, 2003, Section 7.2(c) of the Plan is amended in its entirety to read as follows:**

(c)    **Death After Separation From Service Occurring On or After August 6, 2000 – With Death Occurring On or After January 1, 2001.**  The following provisions apply in the case of a Vested Participant whose last day as an Eligible Employee

occurred on or after August 6, 2000 and who dies after Separation From Service and on or after January 1, 2001 and prior to his or her Annuity Starting Date.

(1)    **In General.**  A death benefit shall be paid to the Beneficiary of a Vested Participant whose last Separation From Service occurs on or after August 6, 2000 and who dies on or after January 1, 2001, and before the Annuity Starting Date of a Service Pension, Deferred Vested Pension, or Disability Pension.  If (A) the Participant's Beneficiary pursuant to (2), below, dies before the benefit described in this subsection is paid or begins pursuant to (3), below, or (B) if the Participant has no Beneficiary pursuant to (2), below, the benefit is forfeited and no death benefit shall be paid under this subsection on behalf of the Participant.

(2)    **Beneficiary.**  A Participant's Beneficiary shall be determined under the following rules:

(A)    A Participant may designate any living person as his or her primary or contingent Beneficiary for the death benefit described in this section 7.2(c), and may change such designation from time to time prior to his or her death or Annuity Starting Date, in accordance with procedures prescribed by the Plan Administrator. However, if the Participant is married, the Participant's surviving spouse is the Beneficiary, unless the Participant designates a person other than his or her spouse as primary Beneficiary and his or her spouse consents to such designation as described in section 7.3.  Notwithstanding the preceding sentence:

(i)    a Participant's election of a non-spouse Beneficiary made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs shall automatically become null and void as of the first day of the Plan Year in which the Participant's 35th birthday occurs; and

(ii)    except in the case of a Service or Disability Pension, an individual shall not be treated as a surviving spouse unless he or she shall have been married to the Participant for the entire one year period preceding the Participant's death.

(B)    If all designated primary and contingent Beneficiaries of a Participant die before benefits are paid or begin pursuant to (3), below, if the Participant has not designated a Beneficiary, if the Participant's surviving spouse has not consented to the Participant's designation of a non-spouse Beneficiary, or if the non-spouse designation was made prior to the first day of the Plan Year in which the Participant's 35th birthday occurs and death occurs after such first day, the Beneficiary is the Participant's surviving spouse.  If the Participant described in the preceding sentence has no surviving spouse, the Participant has no Beneficiary for purposes of this section 7.2(c).

V00203

(3)    **Form and Timing of Payment.**  Subject to section 7.6, the following rules shall apply for purposes of determining the form and timing of payment to a Beneficiary under this section 7.2(c):

(A)    **Payment to Non-Spouse Beneficiary.**  If a Participant's Beneficiary is someone other than his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity commencing immediately following the Participant's death and continuing for the Beneficiary's lifetime; provided, however, that the death benefit shall be paid to the non-spouse Beneficiary in a lump sum as soon as administratively practicable following the Participant's death in the event the Participant's death occurs (i) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, (ii) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003, or (iii) when the Participant would have been eligible to elect a lump sum under section 6.13.

(B)    **Payment to Spouse Beneficiary.**  If a Participant's Beneficiary is his or her surviving spouse, the death benefit shall be paid in the form of a monthly annuity payable for the surviving spouse's lifetime. Such benefit shall commence immediately following the Participant's death but, in the case of a Participant who dies prior to Normal Retirement Age, only if the surviving spouse elects within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. Except as provided below, if such spouse does not elect immediate payment, payment shall be deferred until the Annuity Starting Date elected by the spouse which shall be a date not earlier than the date the Participant would have attained Earliest Retirement Age and not later than the date the Participant would have attained Normal Retirement Age had he or she survived. Notwithstanding the preceding sentence, in the event the Participant's death occurs (I) for IBEW-New England Employees, on or after March 1, 2001 and prior to January 1, 2004, (II) for other Eligible Employees, on or after August 1, 2002 and prior to August 1, 2003, or (iii) when the Participant would have been eligible to elect a lump sum under section 6.13, the surviving spouse may elect to have the death benefit paid in a lump sum or in an immediate annuity for the spouse's life, as soon as administratively practicable following the Participant's death. The surviving spouse's election shall be made within such time and in accordance with such procedures as may be prescribed by the Plan Administrator. If the Participant's death occurs before October 1, 2003, the lump sum (if available) is available only if immediate payment is elected and the surviving spouse may not defer payment of the lump sum to a later date. If the surviving spouse of a Participant who dies prior to Earliest Retirement Age does not elect the immediate lump sum or the immediate annuity within the time prescribed by the Plan Administrator, payment of the death benefit may not begin until the date the Participant would have attained the Earliest Retirement Age; provided, however, that if the Participant qualified as a Window-Eligible Employee under section 6.13, the surviving spouse may elect any Annuity Starting Date up to the Participant's Normal Retirement Age that would have been available to the Participant under section 6.13.

11

(4)    **Amount.**  The following provisions shall determine the amount of any payment to be made to a Beneficiary under this section 7.2(c):

(A)    **Annuity Payment Amount.**  Except as provided in (C), below, the amount of each monthly annuity payment shall be equal to the amount the Beneficiary would have received following the Participant's death, if –

(i)    the Participant had survived and commenced receipt of a Qualified 65-Percent Joint and Survivor Annuity (a Qualified 50-Percent Joint and Survivor Annuity if the Beneficiary is not the Participant's surviving spouse and is more than 25 years younger than the Participant) on the Beneficiary's Annuity Starting Date, applying the reductions described in Article IV and Table 2A to reduce benefits for commencement dates prior to Earliest Retirement Age, and

(ii)    died on the day following the Beneficiary's Annuity Starting Date.

(B)    **Lump Sum Payment Amount.**  Except as provided in (C), below, the lump sum payable to a Beneficiary under this section 7.2(c) shall equal the actuarial equivalent present value (calculated using the assumptions in section 6.11(c)(2)(C) or 6.13(c)(2)(C), as applicable) of the monthly annuity otherwise payable to the Beneficiary under section 7.2(c)(4)(A) (i) for deaths occurring before October 1, 2003, on an Annuity Starting Date as of the day following the Participant's death or (ii) for deaths occurring on or after October 1, 2003, as of the Beneficiary's Annuity Starting Date.  For purposes of applying the assumptions in section 6.11(c)(2)(C) or 6.13(c)(2)(C), the date of the Participant's death shall be deemed to be the date of the Participant's Separation From Service and the Beneficiary's age shall be used in place of the Participant's age.

(C)    **Minimum Death Benefit.**  Effective October 1, 2003, if a Participant who is a Window-Eligible Employee under section 6.13:

(i) dies after Separation From Service, while he or she has in effect a valid election (with spousal consent) to receive payment of his Service Pension or Deferred Vested Pension in a lump sum, and before his or her elected Annuity Starting Date, the benefit paid to the Participant's Beneficiary under this section 7.2(c) shall not be less than:

(I) if the Beneficiary is to receive a lump sum, the lump sum that would have been paid to the Participant if he or she had survived until the Annuity Starting Date; or

(II) if the Beneficiary is to receive payment as an annuity, the actuarial equivalent (determined using the assumptions described in section 6.13(c)(2)(C)(iii) of the lump sum described in (I), above, in the form of a

V00205

monthly single life annuity for the Beneficiary's life starting on the Annuity Starting Date; or

(ii) dies after Separation From Service and before his or her Annuity Starting Date and either while he or she has in effect a valid election (with spousal consent if required) to receive payment of his or her pension in any form of payment other than a lump sum, or before he or she makes an election to commence payment of his or her pension in any form, the benefit paid to the Participant's Beneficiary under this section 7.2(c) shall not be less than:

(I) if the Beneficiary is to receive a lump sum, the lump sum that would have been paid to the Participant if he or she had commenced payment on the Beneficiary's Annuity Starting Date; or

(II) if the Beneficiary is to receive payment as an annuity, the actuarial equivalent (determined using the assumptions described in section 6.13(c)(2)(C)(iii)) of the lump sum described in (I), above, in the form of a monthly single life annuity for the Beneficiary's life starting on the Beneficiary's Annuity Starting Date.

**10. The references to "section 6.11" in sections 8.3(a) and 8.3(f) are revised to refer to "section 6.11 or 6.13."**

**11. Effective January 1, 2004, the following is added to Table 1 - Pension Band Amounts of the Plan:**

| Pension Band Number | Monthly Pension Band Amount Applied to Eligible Employee with Pension Effective Date (i.e. first day following last day on payroll) on or after November 1, 2004 and before October 1, 2005 | Monthly Pension Band Amount Applied to Eligible Employee with Pension Effective Date (i.e. first day following last day on payroll) on or after October 1, 2005 and before October 1, 2006 | Monthly Pension Band Amount Applied to Eligible Employee with Pension Effective Date (i.e. first day following last day on payroll) on or after October 1, 2006 and before October 1, 2007 | Monthly Pension Band Amount Applied to Eligible Employee with Pension Effective Date (i.e. first day following last day on payroll) on or after October 1, 2007 |
|---|---|---|---|---|
| 101 | $35.06 | $36.11 | $37.19 | $38.31 |
| 102 | $36.55 | $37.65 | $38.78 | $39.94 |
| 103 | $38.08 | $39.22 | $40.40 | $41.61 |
| 104 | $39.51 | $40.70 | $41.92 | $43.18 |
| 105 | $40.99 | $42.22 | $43.49 | $44.79 |
| 106 | $42.47 | $43.74 | $45.05 | $46.40 |
| 107 | $43.98 | $45.30 | $46.66 | $48.06 |
| 108 | $45.46 | $46.82 | $48.22 | $49.67 |
| 109 | $46.96 | $48.37 | $49.82 | $51.31 |
| 110 | $48.41 | $49.86 | $51.36 | $52.90 |
| 111 | $49.90 | $51.40 | $52.94 | $54.53 |
| 112 | $51.40 | $52.94 | $54.53 | $56.17 |
| 113 | $52.86 | $54.45 | $56.08 | $57.76 |

13

| Pension Band Number | Monthly Pension Band Amount Applied to Eligible Employee with Pension Effective Date (i.e. first day following last day on payroll) on or after November 1, 2004 and before October 1, 2005 | Monthly Pension Band Amount Applied to Eligible Employee with Pension Effective Date (i.e. first day following last day on payroll) on or after October 1, 2005 and before October 1, 2006 | Monthly Pension Band Amount Applied to Eligible Employee with Pension Effective Date (i.e. first day following last day on payroll) on or after October 1, 2006 and before October 1, 2007 | Monthly Pension Band Amount Applied to Eligible Employee with Pension Effective Date (i.e. first day following last day on payroll) on or after October 1, 2007 |
|---|---|---|---|---|
| 114 | $54.34 | $55.97 | $57.65 | $59.38 |
| 115 | $55.80 | $57.47 | $59.19 | $60.97 |
| 116 | $57.30 | $59.02 | $60.79 | $62.61 |
| 117 | $58.78 | $60.54 | $62.36 | $64.23 |
| 118 | $60.26 | $62.07 | $63.93 | $65.85 |
| 119 | $61.74 | $63.59 | $65.50 | $67.47 |
| 120 | $63.22 | $65.12 | $67.07 | $69.08 |
| 121 | $64.68 | $66.62 | $68.62 | $70.68 |
| 122 | $66.19 | $68.18 | $70.23 | $72.34 |
| 123 | $67.66 | $69.69 | $71.78 | $73.93 |
| 124 | $69.13 | $71.20 | $73.34 | $75.54 |
| 125 | $70.61 | $72.73 | $74.91 | $77.16 |
| 126 | $72.09 | $74.25 | $76.48 | $78.77 |
| 127 | $73.58 | $75.79 | $78.06 | $80.40 |
| 128 | $75.06 | $77.31 | $79.63 | $82.02 |
| 129 | $76.54 | $78.84 | $81.21 | $83.65 |
| 130 | $78.01 | $80.35 | $82.76 | $85.24 |
| 131 | $79.53 | $81.92 | $84.38 | $86.91 |
| 132 | $80.98 | $83.41 | $85.91 | $88.49 |
| 133 | $82.47 | $84.94 | $87.49 | $90.11 |
| 134 | $83.96 | $86.48 | $89.07 | $91.74 |
| 135 | $85.38 | $87.94 | $90.58 | $93.30 |

**12. Verizon Services Corp. is added to Schedule A of the Plan as a Participating Company, effective February 1, 2004.**

**13. Effective October 1, 2003, the references to "section 6.11(c)(2)(C)(i)" in sections 2(a) and 3(e)(i) of Exhibit VIII are revised to refer to "section 6.13(c)(2)(C)(iii)" and the reference to "section 6.11(c)(2)(C)(i)(I)" in section 2(b)(ii) of Exhibit VIII is revised to refer to "section 6.13(c)(2)(C)(iii)(I)."**

V00207

**VERIZON EMPLOYEE BENEFITS COMMITTEE**
Resolutions of the Chairperson

## Adoption of Amendments Required as a Condition of Favorable Determination Letter

WHEREAS, THE UNDERSIGNED, in his capacity as Chairperson of the Verizon Employee Benefits Committee ("VEBC"), which status he holds by virtue of his status as the most senior Human Resources officer of Verizon Communications Inc. ("Company"), is authorized to act for the VEBC and the Company and its affiliates, as applicable, to approve the text of a benefit plan amendment corresponding to the terms of a collective bargaining agreement that relates to employees of the Company or an affiliate or that is necessary for compliance with applicable law or does not substantially alter the cost of benefits under the benefit plan;

WHEREAS, the Verizon Pension Plan for New York and New England Associates (the "Plan") has been restated to include amendments through December 15, 2001 and such restatement has since been amended;

WHEREAS, it is necessary to amend the Plan to include the provisions required by the Internal Revenue Service as a condition of the favorable determination letter issued to the Plan dated June 27, 2003;

RESOLVED, that the Plan is hereby amended as described in the attached amendment to the Plan, generally effective January 1, 1999, except that, with respect to a particular provision, if a different effective date is otherwise specified in the attachment or is required by law, such other effective date shall apply.

FURTHER RESOLVED, that Legal Counsel to the VEBC is authorized to restate the terms of the Plan in a manner that is consistent with this amendment.

APPROVED, this _____ day of September, 2003.


Signed:    _____

Ezra D. Singer
Executive Vice President --
Human Resources and Chairperson of
Verizon Employee Benefits Committee

V00208

## AMENDMENT TO THE VERIZON PENSION PLAN
## FOR NEW YORK AND NEW ENGLAND ASSOCIATES

1.    Section 12.8(d) of the Plan, relating to the limits applicable under section 415 of the Code, is amended to read in its entirety as follows:

**(d)      Limitation Compensation**
shall mean the total of regular, overtime, bonus and other cash compensation paid or made available to the Employee during the Plan Year, but not including (i) non-taxable contributions to a Plan of deferred compensation or any distributions from a plan of deferred compensation, (ii) amounts realized from the exercise of a non-qualified stock option, or when restricted stock or property becomes freely transferable or is no longer subject to substantial risk of forfeiture, (iii) amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option, (iv) other amounts which receive special tax benefits, and (v) solely for limitation years beginning before January 1, 1998, amounts deferred as a result of a salary reduction election under section 401(k), 125 or 132(f)(4) of the Code.

2.    Sections 15.4 and 19.1 of the Plan, relating to nondiscriminatory benefits on Plan termination and restrictions on distributions, are amended to read in their entirety as follows:

**15.4    Nondiscriminatory Benefits on Plan Termination.**
In the event of termination of the Plan, the restrictions and limitations described in section 19.1 shall apply.

*          *          *          *          *

**19.1    Restrictions on Distributions.**
With respect to distributions that commence on or after January 1, 1994, the provisions of this section 19.1 shall apply:

(a)    Upon the termination of the Plan, the benefit of each highly compensated employee and each highly compensated former employee (both as defined in section 414(q) of the Code) shall be limited to a benefit that is nondiscriminatory under section 401(a)(4) of the Code.

(b)    The annual payments under the Plan with respect to a Participant shall not exceed the annual payments that would be made with respect to the Participant under a straight life annuity that is the actuarial equivalent of his accrued benefit under the Plan.  The preceding sentence shall not apply to a Participant for a calendar year if: (1) the Participant is not among the 25 highly compensated employees and highly compensated former employees (both as defined in section 414(q) of the Code) of the Company and Affiliates with the greatest compensation in that calendar year or any prior calendar year; (2) after satisfying all benefits payable to the Participant under the Plan, the value of Plan assets does not fall below 110 percent of the Plan's current liabilities (as defined in section 412(l)(7) of the Code); (3) the value of the benefits payable with respect to the Participant under the Plan is less than 1 percent of the value of the

V00209

Plan's current liabilities (as defined in section 412(l)(7) of the Code and determined before distribution to the Participant); or (4) the value of the benefits payable with respect to the Participant under the Plan does not exceed the amount described in section 411(a)(11)(A) of the Code. If the Plan is terminated while the restrictions pursuant to this subsection (b) are in effect, amounts in excess of those restrictions shall first be applied in a nondiscriminatory manner to the satisfaction of any Plan liabilities to Participants who are not subject to the restrictions, and any balance remaining shall then be applied in a nondiscriminatory manner to any Plan liabilities that may be outstanding with respect to Participants who are subject to the restrictions.

(c)    This section 19.1 is intended to satisfy the requirements of IRS Regulations § 1.401(a)(4)-5(b). This section 19.1 shall not be construed in a manner that would impose limitations that are more stringent than those required by IRS Regulations section 1.401(a)(4)-5(b). If Congress should provide by statute, or the United States Treasury Department or the Internal Revenue Service should provide by regulation, ruling, or other guidance of general applicability, that the foregoing restrictions are no longer necessary for the Plan to meet the requirements of section 401(a) of the Code or any other applicable provision of the Internal Revenue Code then in effect, such restrictions shall become void and shall no longer apply, without the necessity of further amendment to the Plan.

3.    Article XVII of the Plan, relating to the top-heavy provisions of the Plan, is amended to read in its entirety as follows:

**17.1    In General.**
This Article XVII shall apply only if the Plan is Top-Heavy, as defined below. If, as of any Determination Date, as defined below, the Plan is Top-Heavy, the provisions of Section 17.4, below, shall take effect as of the first day of the Plan Year next following the Determination Date and shall continue to be in effect until the first day of any subsequent Plan Year following a Determination Date as of which it is determined that the Plan is no longer Top-Heavy.

**17.2    Definitions.**
For purposes of this Article XVII, the following definitions shall apply, and shall be interpreted in accordance with the provisions of section 416 of the Code and the regulations thereunder:

(a)    "Aggregation Group" means a group of Affiliate Plans consisting of each Affiliate Plan in the Required Aggregation Group and each other Affiliate Plan selected by the Committee for inclusion in the Aggregation Group that would not, by its inclusion, prevent the group of Affiliate Plans included in the Aggregation Group from continuing to meet the requirements of sections 401(a)(4) and 410 of the Code.

(b)    "Average Compensation" means the Participant's average Compensation, as defined in section 17.2(c), below, for the period of consecutive years (not exceeding 5) during which the Participant had the greatest aggregate Compensation from the Company, excluding (i) years ending before

V00210

1984, and (ii) years commencing after the last Top-Heavy Year, and adjusted, in accordance with section 416(c)(1)(D)(ii) of the Code, for years not included in a year of ERISA Service.

(c)    "Compensation" means compensation for a calendar year as defined in the last sentence of section 12.1, but shall not exceed the annual compensation limit in effect for the calendar year under section 401(a)(17) of the Code.

(d)    "Determination Date" means the December 31 immediately preceding the Plan Year for which the determination is made.

(e)    "Affiliate Plan" means any stock bonus, pension, or profit-sharing plan of the Company and the Affiliates intended to qualify under section 401(a) of the Code.

(f)    "Key Employee" means any employee of the Company and the Affiliates who satisfies the criteria set forth in section 416(i)(1) of the Code.

(g)    "Required Aggregation Group" means one or more Affiliate Plans comprising each Affiliate Plan in which a Key Employee is a participant and each Affiliate Plan that enables any Affiliate Plan in which a Key Employee is a participant to meet the requirements of section 401(a)(4) or 410 of the Code.

(h)    "Top-Heavy" means that the Plan is included in an Aggregation Group under which, as of the Determination Date, the sum of the present value of the cumulative accrued benefits for Key Employees under all defined benefit plans in the Aggregation Group and the aggregate of all accounts of Key Employees under all defined contribution plans in the Aggregation Group exceeds 60 percent of the analogous sum determined for all employees. The determination of whether the Plan is Top-Heavy shall be made in accordance with section 416(g)(2)(B) of the Code and the regulations thereunder.

(i)    "Top-Heavy Ratio" means the percentage calculated in accordance with section 17.2(h) hereof and section 416(g)(2) of the Code and the regulations thereunder.

(j)    "Top-Heavy Year" means a Plan Year for which the Plan is Top-Heavy.

Unless otherwise specified herein, other terms in this Article XVII have the respective meanings ascribed thereto by the other provisions of the Plan.

### 17.3   Determination of Top-Heavy Ratio.

In determining the Top-Heavy Ratio with respect to any Plan Year, the following rules shall apply:

(a)    The accrued benefit of any current Participant shall be calculated, as of the most recent valuation date that is within a 12-month period ending on the Determination Date, as if the Participant had voluntarily terminated

employment as of such valuation date. Such valuation date shall be the same valuation date used for computing Plan costs for purposes of the minimum funding provisions of section 412 of the Code. Unless, as of the valuation date, the Plan provides for a nonproportional subsidy, the present value of the accrued benefit shall reflect a pension commencing at age 65 (or attained age, if later). If, as of the valuation date, the Plan provides for a nonproportional subsidy, the pension shall be assumed to commence at the age at which the pension is most valuable.

(b)     The present value of such accrued benefit shall be calculated by multiplying the accrued benefit by the appropriate factor in the following table based on the Participant's age as of the Determination Date:

| Age | Deferred Annuity Factor To Age 65 | Age | Deferred Annuity Factor To Age 65 |
|---|---|---|---|
| 19 | 0.36752 | 45 | 2.18380 |
| 20 | 0.39337 | 46 | 2.34220 |
| 21 | 0.42104 | 47 | 2.51265 |
| 22 | 0.45067 | 48 | 2.69619 |
| 23 | 0.48240 | 49 | 2.89392 |
| 24 | 0.51637 | 50 | 3.10709 |
| 25 | 0.55274 | 51 | 3.33707 |
| 26 | 0.59169 | 52 | 3.58536 |
| 27 | 0.63340 | 53 | 3.85366 |
| 28 | 0.67806 | 54 | 4.14383 |
| 29 | 0.72589 | 55 | 4.45797 |
| 30 | 0.77713 | 56 | 4.79844 |
| 31 | 0.83202 | 57 | 5.16786 |
| 32 | 0.89084 | 58 | 5.56923 |
| 33 | 0.95388 | 59 | 6.00589 |
| 34 | 1.02145 | 60 | 6.48169 |
| 35 | 1.09389 | 61 | 7.00098 |
| 36 | 1.17156 | 62 | 7.56874 |
| 37 | 1.25486 | 63 | 8.19069 |
| 38 | 1.34422 | 64 | 8.87343 |
| 39 | 1.44010 | 65 | 9.62458 |
| 40 | 1.54301 | 66 | 9.41000 |
| 41 | 1.65348 | 67 | 9.19088 |
| 42 | 1.77212 | 68 | 8.96748 |

| Age | Deferred Annuity Factor To Age 65 | Age | Deferred Annuity Factor To Age 65 |
|---|---|---|---|
| 43 | 1.89957 | 69 | 8.73999 |
| 44 | 2.03654 | 70 | 8.50892 |

(c)     The Plan shall be aggregated with all Affiliate Plans included in the Aggregation Group.

**17.4    Top-Heavy Minimum Benefits.**

(a)     In any Top-Heavy Year, each Participant shall be entitled to the greater of:

(i)      the pension he otherwise is entitled to under the Plan, or

(ii)     an annual benefit that, when expressed as a single life annuity commencing at his Normal Retirement Date (with no ancillary benefits), is equal to 2 percent of the Participant's Average Compensation for each of the Participant's first 10 years of Pension Accrual Service after 1983 during which the Plan is Top-Heavy.

The annual benefit described in paragraph (ii), above, shall not be adjusted to take into account the availability of preretirement death benefits under the Plan.

(b)     A Participant who is credited with one Hour of Service in any Top-Heavy Year shall have a nonforfeitable interest in that portion of the Participant's accrued benefit in accordance with the following schedule:

Full Years of ERISA Service   Nonforfeitable Percentage

| | |
|---|---|
| Less than 2 years | 0% |
| 2, but less than 3 years | 20% |
| 3, but less than 4 years | 40% |
| 4, but less than 5 years | 60% |
| 5 or more | 100% |

(c)     For each Top-Heavy Year, the Annual Compensation of each Participant taken into account under the Plan for all Plan Years (including Plan Years before the first Top-Heavy Year) shall not exceed his Compensation (as defined in section 17.2(c)); provided that any benefits accrued before a Top-Heavy Year (determined without regard to any Plan amendments adopted after the end of the Plan Year next preceding the Top-Heavy Year) shall not be reduced as a result of the application of this subsection (c).

(d)     The benefit required by section 17.4(a) and vested pursuant to the provisions of section 17.4(b) shall not be forfeitable under provisions that

V00213

6

otherwise would be permitted by section 411(a)(3)(B) (relating to suspension of benefits upon reemployment) or 411(a)(3)(D) (relating to forfeitures upon withdrawal of mandatory contributions) of the Code.

(e)    The Plan shall meet the requirements of this section 17.4 without taking into account, in accordance with section 416(e) of the Code, contributions or benefits under chapter 21 of the Code (relating to the Federal Insurance Contributions Act), Title II of the Social Security Act, or any other federal or state law.

(f)    The requirements of this section 17.4 shall not apply with respect to any employee included in a unit of employees covered by an agreement that the Secretary of Labor finds to be a collective bargaining agreement between employee representatives and one or more Affiliates if there is evidence that retirement benefits were the subject of good faith bargaining between such employee representatives and the Affiliate.

**17.5    Termination of Top-Heavy Status.**
If, for any Plan Year after a Top-Heavy Year, the Plan is no longer Top-Heavy, the provisions of Section 17.4, above, shall not apply with respect to such Plan Year; provided that

(a)    the accrued benefit of any participant shall not be reduced on account of the operation of this section 17.5;

(b)    each Participant shall remain fully vested in any portion of the Participant's accrued benefit that was fully vested before the Plan ceased to be Top-Heavy; and

(c)    any Participant who was a participant in a Top-Heavy Year and who has completed at least 3 years of ERISA Service as of the first day of the Plan Year in which the Plan is no longer Top-Heavy may elect to remain subject to the provisions of Section 17.4(b).

**17.6    Interpretation.**
This Article XVII is intended to satisfy the requirements imposed by section 416 of the Code and shall be construed in a manner that will effectuate this intent. This Article XVII shall not be construed in a manner that would impose requirements that are more stringent than those imposed by section 416 of the Code.

4.    Section 18.1 of the Plan, relating to leased employees, is amended to read in its entirety as follows:

**18.1    Treatment of Leased Employees Under the Plan.**

(a)    **Eligibility and Vesting.**

To the extent required by the Code, solely for purposes of determining when an individual has completed a year of ERISA Service for purposes of vesting and eligibility to commence participation, hours of service as a leased employee (as

7

defined in subsection (c) of this section 18.1) shall be treated as Hours of Service as an Employee.

**(b)**     **No Benefit Accrual.**

With respect to any period for which an individual is a leased employee (as defined subsection (c) of this Section 18.1), the individual shall not become a Participant and—

(1)     the individual's pay shall not be treated as Compensation recognized under the Plan,

(2)     the individual's service shall not be recognized as part of Net Credited Service or Pension Accrual Service, whether or not the individual subsequently becomes an Eligible Employee within the meaning of Article III.

**(c)**     **Leased Employee.**

"Leased employee" shall mean any person who (1) is not employed in an employer-employee relationship with an Affiliate and (2) provides services to an Affiliate if (A) such services are provided pursuant to an agreement between the Company and any other person (a "leasing organization"), (B) such person has performed such services for the Affiliate on a substantially full-time basis for a period of at least one year, and (C) such services are performed under primary direction or control by the Affiliate. This definition, effective January 1, 1997, is intended to be coextensive with Code Sections 414(n) and (o) and any applicable regulations and shall be interpreted so as to further this intent.

5.     Section 20.11 of the Plan, relating to direct rollovers, is amended to read in its entirety as follows:

**20.11  Direct Rollover to Eligible Retirement Plan.**

**(a)**     **Right to Elect Rollover.**

This section 20.11 applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this section 20.11, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement Plan specified by the distributee in a direct rollover.

**(b)**     **Definitions.**

(1)     Eligible Rollover Distribution: An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that any eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives

8

(or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; and any distribution to the extent such distribution is required under section 401(a)(9) of the Code. Effective for distributions made on or after January 1, 2002, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income. However, such portion may be paid only to an individual retirement account or annuity described in Code section 408(a) or (b), or to a qualified defined contribution plan described in Code section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(2)    Eligible Retirement Plan: An eligible retirement plan is any of the following that accepts the distributee's eligible rollover·distribution: an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code (other than an endowment contract), a qualified trust described in section 401(a) of the Code, an annuity plan described in section 403(a) of the Code and, effective for distributions made on or after January 1, 2002, an annuity contract described in section 403(b) of the Code and an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state which agrees to separately account for amounts transferred into such plan from this Plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, except that for distributions made to a surviving spouse before January 1, 2002, "eligible retirement plan" shall be limited to an individual retirement account described in section 408(a) of the Code or an individual retirement annuity described in section 408(b) of the Code.

(3)    Distributee: A distributee includes an employee or former employee. In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(4)    Direct Rollover: A direct rollover is a payment by the Plan to the eligible retirement Plan specified by the distributee.

V00216

9

6.    Section 3 of Exhibit I to the Plan, relating to post-retirement medical benefits, is amended to read in its entirety as follows:

3.    If, notwithstanding section 2 of this Exhibit I, any portion of a Transfer (and income allocable thereto) is not used as provided by clause (i) of the last sentence thereof, such portion shall be returned by the Health Benefits Account to the transferor plan (in this case, the Plan's Pension Fund).

10

**VERIZON EMPLOYEE BENEFITS COMMITTEE**
Resolutions of the Chairperson

**Acceleration of Pension Band Increase and New Participating Companies**

WHEREAS, THE UNDERSIGNED, in his capacity as Chairperson of the Verizon Employee Benefits Committee ("VEBC"), which status he holds by virtue of his status as the most senior Human Resources officer of Verizon Communications Inc. ("Company"), is authorized to act for the VEBC and the Company and its affiliates, as applicable, to approve the text of a benefit plan amendment corresponding to the terms of a collective bargaining agreement that relates to employees of the Company or an affiliate or that is necessary for compliance with applicable law or does not substantially alter the cost of benefits under the benefit plan;

WHEREAS, the Verizon Pension Plan for New York and New England Associates (the "Plan") has been restated to include amendments through December 15, 2001 and such restatement has since been amended;

WHEREAS, it is necessary to amend the Plan to reflect the provisions of recent collective bargaining agreements changing to February 1, 2003 the effective date of the 4% pension band increase originally bargained to take effect on July 1, 2003 and to revise the list of Participating Companies;

RESOLVED, that in accordance with the terms of relevant collective bargaining agreements, the Plan is hereby amended as described in the attached amendment to the Plan.

FURTHER RESOLVED, that Legal Counsel to the VEBC is authorized to restate the terms of the Plan in a manner that is consistent with this amendment.

APPROVED, this ⅃⅂ day of _____, 2003.

                    Signed:    _____
                               Ezra D. Singer
                               Executive Vice President --
                               Human Resources and Chairperson of
                               Verizon Employee Benefits Committee

## AMENDMENT TO THE VERIZON PENSION PLAN
## FOR NEW YORK AND NEW ENGLAND ASSOCIATES

1.    **Section 2.43 of the Plan is amended to read as follows, effective June 8, 2003:**

**2.43 Non-Management Employee**
shall mean a regular or temporary Employee who receives a regular and stated compensation from a Participating Company, and who is either --

(a) in a bargaining unit which participates under this Plan pursuant to a collective bargaining agreement with a Participating Company;

(b) a non-Salaried Employee who is not in a bargaining unit, who is in a position designated by the Participating Company as covered by the Plan, and whose terms and conditions of employment are based on a collective bargaining agreement described in subsection (a); or

(c) a Salaried Employee who has such status for one year or less as the result of a temporary promotion from a prior non-Salaried Employee status in which the Employee was participating in this Plan.

In the case of an Employee in a bargaining unit described in subsection (a), participation in this Plan shall be subject to any restrictions imposed by the applicable collective bargaining agreement.

2.    **Section 2.49 of the Plan is amended to read as follows, effective May 1, 2003:**

**2.49 Pension Band Amount**
shall mean the dollar amount of pension benefit associated with a Non-Management Employee's Pension Band Number, as shown in Table 1.    Notwithstanding the preceding sentence:

(a) for an Eligible Employee (other than an Eligible Employee in a bargaining unit represented by a collective bargaining agent that has not agreed to this provision) whose Separation From Service occurs on or after November 19, 2001 and on or before December 30, 2001, the Pension Band Amount applied to calculate the Employee's Basic Monthly Pension Benefit under Article V upon Separation From Service shall equal 105% of the Pension Band Amount that would have applied without regard to this sentence; and

(b) for an Eligible Employee (other than an Eligible Employee in a bargaining unit represented by a collective bargaining agent that has not agreed to this provision) (i) whose Separation From Service occurs on or after May 4, 2002 and on or before June

2

30, 2002 or (ii) who is an IBEW-New England Employee whose Separation From Service occurred on April 6, 2002 and who is part of the same surplus as IBEW-New England Employees whose Separation From Service occurred on June 1, 2002, the Pension Band Amount applied to calculate the Employee's Basic Monthly Pension Benefit under Article V upon such Separation From Service shall equal 105% of the Pension Band Amount that would have applied without regard to this sentence; and

(c) for an Eligible Employee (other than an Eligible Employee in a bargaining unit represented by a collective bargaining agent that has not agreed to this provision) whose Separation From Service occurs on or after January 31, 2003 and on or before June 30, 2003, the Pension Band Amount applied to calculate the Employee's Basic Monthly Pension Benefit under Article V upon Separation From Service shall equal the Pension Band Amount for the Eligible Employee's Pension Band Number that is identified in Table 1 as effective July 1, 2003; provided, however, that in no event shall interest be paid on any true-up payment made to an Eligible Employee as a result of implementation of this provision.

Benefits payable from the Plan pursuant to the preceding sentence shall include benefits required to be paid pursuant to the terms of an agreement relating to settlement of a claim or lawsuit with respect to a Participant's or Beneficiary's entitlement to benefits under the Plan. Such benefits shall be paid at such time and in such form, and shall be subject to such limits, as apply to other similar benefits provided by the Plan.

**3. The attached Schedule A replaces the current Schedule A effective June 8, 2003.**

3

## SCHEDULE A: PARTICIPATING COMPANIES

The following are Participating Companies as of January 1, 1999:

Bell Atlantic Yellow Pages Company (Verizon Yellow Pages Company effective July 1, 2000)

Empire City Subway Co. Ltd.

New England Telephone and Telegraph Company (Verizon New England Inc. effective July 1, 2000)

New York Telephone Company (Verizon New York Inc. effective July 1, 2000)

Telesector Resources Group, Inc.


The following company is a Participating Company as of March 1, 2000:

Bell Atlantic Network Data Inc. (Verizon Advanced Data Inc. effective July 1, 2000)


The following companies are Participating Companies as of June 8, 2003:

Verizon Mid-Atlantic Directory Sales Co.

Verizon Directory Services Inc.

4

## VERIZON EMPLOYEE BENEFITS COMMITTEE
Resolutions of the Chairperson

### Early Retirement Eligibility Program, Eligibility for 5% Pension Band Increase and EGTRRA Amendments

WHEREAS, THE UNDERSIGNED, in his capacity as Chairperson of the Verizon Employee Benefits Committee ("VEBC"), which status he holds by virtue of his status as the most senior Human Resources officer of Verizon Communications Inc. ("Company"), is authorized to act for the VEBC and the Company and its affiliates, as applicable, to approve the text of a benefit plan amendment corresponding to the terms of a collective bargaining agreement that relates to employees of the Company or an affiliate or that is necessary for compliance with applicable law or does not substantially alter the cost of benefits under the benefit plan;

WHEREAS, the Verizon Pension Plan for New York and New England Associates (the "Plan") has been restated to include amendments through December 15, 2001 and such restatement has since been amended;

WHEREAS, it is necessary to amend the Plan to reflect the provisions of recent collective bargaining agreements providing for an Early Retirement Eligibility (ERE) Program and modifying the eligibility requirements for the 5% pension band increase and to adopt good faith compliance amendments relating to the requirements of the Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA);

RESOLVED, that in accordance with the terms of relevant collective bargaining agreements and applicable law, the VEBC hereby amends the Plan as described in the attached amendment to the Plan.

FURTHER RESOLVED, that Legal Counsel to the VEBC is authorized to restate the terms of the Plan in a manner that is consistent with this amendment.

WHEREAS, recent collective bargaining agreements also require amendments to certain other benefit plans;

RESOLVED, that the VEBC hereby approves modifications to the relevant retiree welfare plans, as set forth in such recent collective bargaining agreements, to provide that Plan participants who participate in the ERE Program (and their dependents) shall be eligible for retiree welfare benefits in the same manner and to the same extent that such participants (and their dependents) would have been eligible for such benefits if such participants had been service-pension eligible under the Plan at termination of employment.

APPROVED, this _____ day of _____, 2002.

Signed:    _____

Ezra D. Singer
Executive Vice President --
Human Resources and Chairperson of
Verizon Employee Benefits Committee

V00222

## AMENDMENT TO THE VERIZON PENSION PLAN
## FOR NEW YORK AND NEW ENGLAND ASSOCIATES

**1.    This amendment is effective for Plan Years beginning after December 31, 2001. The provisions of this amendment shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this amendment.**

(a)    Increase in Compensation Limit.  The annual compensation limit of each Participant taken into account in determining benefit accruals in any Plan Year beginning after December 31, 2001, shall not exceed $200,000.  Annual compensation means compensation during the Plan Year or such other consecutive 12-month period over which compensation is otherwise determined under the Plan (the determination period).  For purposes of determining benefit accruals in a Plan Year beginning after December 31, 2001, compensation for any determination period beginning before January 1, 2002 shall be limited to $200,000.

(b)    Cost-of-Living Adjustment.  The $200,000 limit on annual compensation in subsection (a) shall be adjusted for cost-of-living increases in accordance with Code section 401(a)(17)(B).  The cost-of-living adjustment in effect for a calendar year applies to annual compensation for the determination period that begins with or within such calendar year.

**2.    Effective January 1, 2002, the last sentence of Section 2.13, which indicates that the Benefit Administrator is Pricewaterhouse Coopers LLP, is deleted from the Plan.**

**3.    Section 2.49 of the Plan is amended to read as follows:**

**2.49 Pension Band Amount**
shall mean the dollar amount of pension benefit associated with a Non-Management Employee's Pension Band Number, as shown in Table 1.    Notwithstanding the preceding sentence:

(a) for an Eligible Employee (other than an Eligible Employee in a bargaining unit represented by a collective bargaining agent that has not agreed to this provision) whose Separation From Service occurs on or after November 19, 2001 and on or before December 30, 2001, the Pension Band Amount applied to calculate the Employee's Basic Monthly Pension Benefit under Article V upon Separation From Service shall equal 105% of the Pension Band Amount that would have applied without regard to this sentence; and

(b) for an Eligible Employee (other than an Eligible Employee in a bargaining unit represented by a collective bargaining agent that has not agreed to this provision) (i) whose Separation From Service occurs on or after May 4, 2002 and on or before June 30, 2002 or (ii) who is an IBEW-New England Employee whose Separation From

2

V00223

Service occurred on April 6, 2002 and who is part of the same surplus as IBEW-New England Employees whose Separation From Service occurred on June 1, 2002, the Pension Band Amount applied to calculate the Employee's Basic Monthly Pension Benefit under Article V upon such Separation From Service shall equal 105% of the Pension Band Amount that would have applied without regard to this sentence.

Benefits payable from the Plan pursuant to the preceding sentence shall include benefits required to be paid pursuant to the terms of an agreement relating to settlement of a claim or lawsuit with respect to a Participant's or Beneficiary's entitlement to benefits under the Plan. Such benefits shall be paid at such time and in such form, and shall be subject to such limits, as apply to other similar benefits provided by the Plan.

**4.    The following new Section 5.17 is hereby added to the Plan:**

**5.17    Settlement of Certain Claims.**
The Plan Administrator will comply will the terms of that certain settlement agreement dated October 9, 2002, between the (i) EEOC, (ii) several unions covering certain employees and former employees of former Bell Atlantic Corporation and (iii) Bell Atlantic Corporation relating to certain child care leaves of absence described in such settlement agreement.

**5.    Section 6.11(c)(2)(C)(i)(II) of the Plan is hereby amended to read as follows:**

II.    <u>Mortality:</u> Mortality based on "the applicable mortality table" described by the Secretary of the Treasury under Code section 417(e).

**6.    This amendment is effective for limitation years ending after December 31, 2001, except as provided otherwise in the amendment.  The provisions of this amendment shall supersede the provisions of Article XII of the Plan to the extent those provisions are inconsistent with the provisions of this amendment:**

(a)    <u>Effect on Participants</u>.  Benefit increases resulting from the increase in the limitations of Code section 415(b) will be provided to those Participants in the Plan who complete one Hour of Service on or after the first day of the first limitation year ending after December 31, 2001.

(b)    <u>Definitions</u>.

(i)    <u>Defined Benefit Dollar Limitation</u>.  The "defined benefit dollar limitation" is $160,000, as adjusted, effective January 1 of each year, under Code section 415(d) in such manner as the Secretary of the Treasury shall prescribe, and payable in the form of a straight life annuity.  A limitation as adjusted under Code section 415(d) will apply to limitation years ending with or within the calendar year for which the adjustment applies.

(ii)  <u>Maximum Permissible Benefit</u>.  The "maximum permissible benefit" is the lesser of the defined benefit dollar limitation or the defined benefit compensation limitation (both adjusted where required, as provided in (A) and, if applicable, in (B) or (C) below).

(A)  If the Participant has fewer than 10 years of participation in the Plan, the defined benefit dollar limitation shall be multiplied by a fraction, (I) the numerator of which is the number of years (or part thereof) of participation in the Plan and (II) the denominator of which is 10.  In the case of a Participant who has fewer than 10 years of service with the employer, the defined benefit compensation limitation shall be multiplied by a fraction, (I) the numerator of which is the number of years (or part thereof) of service with the employer and (II) the denominator of which is 10.

(B)  If the benefit of a Participant begins before age 62, the defined benefit dollar limitation applicable to the Participant at such earlier age is an annual benefit payable in the form of a straight life annuity beginning at the earlier age that is the actuarial equivalent of the defined benefit dollar limitation applicable to the participant at age 62 (adjusted under (A) above, if required).  The defined benefit dollar limitation applicable at an age before age 62 is determined as the lesser of (I) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using the interest rate and mortality table (or tabular factor) used for determining early retirement benefits under the Plan and (II) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using a 5% interest rate and the applicable mortality table as defined in Section 6.11(c)(2)(C)(i)(II) of the Plan.  Any decrease in the defined benefit dollar limitation determined in accordance with this paragraph (B) shall not reflect a mortality decrement if benefits are not forfeited upon the death of the Participant.  If any benefits are forfeited upon death, the full mortality decrement is taken into account.

(C)  If the benefit of a Participant begins after the Participant attains age 65, the defined benefit dollar limitation applicable to the Participant at the later age is the annual benefit payable in the form of a straight life annuity beginning at the later age that is actuarially equivalent to the defined benefit dollar limitation applicable to the participant at age 65 (adjusted under (A) above, if required).  The actuarial equivalent of the defined benefit dollar limitation applicable at an age after age 65 is determined as (I) the lesser of the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using the interest rate and mortality table (or other tabular factor) used for determining late retirement benefits under the Plan and (II) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using a 5% interest rate assumption and the applicable mortality table as defined in Section 6.11(c)(2)(C)(i)(II) of the Plan.  For these purposes, mortality between age 65 and the age at which benefits commence shall be ignored.

(c)  <u>Plan Aggregation Rules</u>.  Effective for limitation years beginning after December 31, 2001, a multiemployer plan is not combined with or aggregated with a

non-multiemployer plan for purposes of applying the Code section 415(b)(1)(B) compensation limit to the non-multiemployer plan.

**7.    Effective January 1, 2002, the following sentence is added at the end of Section 14.5:**

Notwithstanding anything in this section 14.5 or any other provision of the Plan to the contrary, the Plan shall process claims for benefits in accordance with the requirements of Department of Labor regulations section 2560.503-1.

**8.    Effective January 1, 2002, Section 14.7 of the Plan is amended to read as follows:**

**14.7  Notices; Communications.**
Communications to the Claims Administrator shall be addressed to:  Verizon Benefits Center, Claims Review Unit, Post Office Box 1457, Lincolnshire, IL 60069-1457.  The Claims Administrator, at the address stated in the previous sentence, is hereby designated as agent for service of legal process with respect to any claims arising under the Plan, with a mandatory requirement that a copy of any such notice be served on Verizon Communications Inc., Legal Department, Employee Benefits, 1095 Avenue of the Americas, 37th Floor, New York, NY 10036.

**9.    Effective for distributions made after December 31, 2001, Section 20.11 of the Plan is amended to read as follows:**

**20.11 Direct Rollover to Eligible Retirement Plan.**

(a)    **Right to Elect Rollover.** This section 20.11 applies to distributions made on or after January 1, 2002.  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this section 20.11, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(b)    **Definitions.**

(1)    <u>Eligible Rollover Distribution</u>: An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that any eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; and any distribution to the extent such distribution is required under section 401(a)(9) of the Code.  A portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income.  However, such portion may be

5

paid only to an individual retirement account or annuity described in Code section 408(a) or (b), or to a qualified defined contribution plan described in Code section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(2)    Eligible Retirement Plan: An eligible retirement plan is any of the following that accepts the distributee's eligible rollover distribution: an individual retirement account described in section 408(a) of the Code, a qualified trust described in section 401(a) of the Code, an annuity plan described in section 403(a) of the Code, an annuity contract described in section 403(b) of the Code, and an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state which agrees to separately account for amounts transferred into such plan from this Plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code.

(3)    Distributee:    A distributee includes an employee or former employee. In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(4)    Direct Rollover: A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

**10.    This amendment applies for purposes of determining whether the Plan is a top-heavy plan under section 416(g) of the Code for Plan Years beginning after December 31, 2001, and whether the Plan satisfies the minimum benefits requirements of section 416(c) of the Code for such years. The provisions of this amendment shall supersede the provisions of Article XVII of the Plan to the extent those provisions are inconsistent with the provisions of this amendment:**

(a) Determination of top-heavy status.

(i) Key employee.    Key employee means any employee or former employee (including any deceased employee) who at any time during the Plan Year that includes the determination date was an officer of the employer having annual compensation greater than $130,000 (as adjusted under section 416(i)(1) of the Code for Plan Years beginning after December 31, 2002), a 5-percent owner of the employer, or a 1-percent owner of the employer having annual compensation of more than $150,000. For this purpose, annual compensation means compensation within the meaning of section 415(c)(3) of the Code. The determination of who is a key employee will be made in accordance with section 416(i)(1) of the Code and the applicable regulations and other guidance of general applicability issued thereunder.

6

V00227

(ii) <u>Determination of present values and amounts</u>. This paragraph (ii) shall apply for purposes of determining the present values of accrued benefits and the amounts of account balances of employees as of the determination date.

(A) <u>Distributions during year ending on the determination date</u>. The present values of accrued benefits and the amounts of account balances of an employee as of the determination date shall be increased by the distributions made with respect to the employee under the Plan and any plan aggregated with the Plan under section 416(g)(2) of the Code during the 1-year period ending on the determination date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under section 416(g)(2)(A)(i) of the Code. In the case of a distribution made for a reason other than severance from employment, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

(B) <u>Employees not performing services during year ending on the determination date</u>. The accrued benefits and accounts of any individual who has not performed services for the employer during the 1-year period ending on the determination date shall not be taken into account.

(iii) <u>Minimum benefits</u>. For purposes of satisfying the minimum benefit requirements of section 416(c)(1) of the Code and the Plan, in determining years of service with the employer, any service with the employer shall be disregarded to the extent that such service occurs during a Plan Year when the Plan benefits (within the meaning of section 410(b) of the Code) no key employee or former key employee.

**11.    Effective August 15, 2002, the following new Exhibit VIII is added to the Plan:**

**EXHIBIT VIII**
**EARLY RETIREMENT ELIGIBILITY PROGRAM**

**1.    In General.**

This Exhibit VIII describes pension enhancements under the ERE Program for certain Eligible Employees who voluntarily separate under an EIPP or IPP Offer made as part of the 2002 surplus declaration. This Exhibit VIII is not intended to be a permanent part of the Plan, but is of temporary duration and limited applicability.

**2.    Definitions.**

The following capitalized terms, when used in this Exhibit VIII, shall have the following meanings, notwithstanding any different definition of such terms elsewhere in the Plan.

7

V00228

(a)    "Accrued Benefit Derived From the Accumulated Repayment" means the monthly pension, payable in the form of a single life annuity commencing on the Eligible Participant's Normal Retirement Date, that, as of the Eligible Participant's Annuity Starting Date, is the actuarial equivalent of the Eligible Participant's Accumulated Repayment. For this purpose, actuarial equivalence is determined using the applicable interest rate and the applicable mortality table determined under section 6.11(c)(2)(C)(i) of the Plan as of the Eligible Participant's Annuity Starting Date.

(b)    "Accumulated Repayment" means the gross amount of prior Plan distributions repaid by the Eligible Participant to the Plan pursuant to section 2(e)(v), below:

(i) with interest on such amount compounded annually at a rate of 120% of the federal mid-term rate, as in effect under Code section 1274 for the first month of each Plan Year, through the Eligible Participant's Annuity Starting Date; and

(ii) with interest compounded annually, projected from the Eligible Participant's Annuity Starting Date until the Eligible Participant's Normal Retirement Date, using the applicable interest rate determined under section 6.11(c)(2)(C)(i)(I) of the Plan as of such Annuity Starting Date.

(c)    "Company" means any Participating Company that is a party to a collective bargaining agreement covering Eligible Employees under the Plan which provides for the ERE Program, but only for such portion of the ERE Program Separation Period as such agreement remains in effect.

(d)    "EIPP or IPP Offer" means an offer of the Enhanced Income Protection Plan ("EIPP") or the Income Protection Plan ("IPP") made as part of a surplus declaration under the force adjustment provisions in the applicable collective bargaining agreement.

(e)    "Eligible Participant" means an Eligible Employee who:

(i)    at the time of his or her Separation From Service, is an Eligible Employee and a member of a bargaining unit represented by a collective bargaining agent that has agreed to the ERE Program;

(ii)    voluntarily separates from the Company under the terms of an EIPP or IPP Offer pursuant to which the Eligible Employee's Separation From Service occurs during the ERE Program Separation Period;

(iii)    at the time of his or her Separation From Service, either (1) is eligible for a Service Pension (whether or not unreduced), or (2) would have become eligible for a Service Pension if he or she had continued his or her employment as an Eligible Employee for up to three additional years;

8

V00229

(iv)    makes an election to participate in the ERE Program (or is deemed to make such election) in the form and manner and within the election period prescribed by the Plan Administrator in accordance with the terms of the applicable collective bargaining agreement, and does not revoke such election before the end of the election period; and

(v)    if he or she had commenced receiving pension payments from the Plan before electing to participate in the ERE Program, repays to the Plan the gross amount of all prior Plan distributions within 60 days of the date he or she submits his or her election to participate in the ERE Program to the Plan Administrator.

(f)    "ERE Program" means the Early Retirement Eligibility Program provided for in this Exhibit VIII for Eligible Participants who voluntarily separate during the ERE Program Separation Period.

(g)    "ERE Program Separation Period" is the period beginning on June 15, 2002 (or such other date as may be provided in the applicable collective bargaining agreement) and ending on December 31, 2002, unless extended. The ERE Program Separation Period may be extended for periods of up to 90 days, through August 2, 2003, upon written agreement between one or more Participating Companies and the applicable collective bargaining agent.

Each other capitalized term in this Exhibit VIII shall have the meaning given to such term elsewhere in the Plan.

3.    **Computation of Pension Under the ERE Program.**

The following pension enhancements shall apply to an Eligible Participant:

(a)    An Eligible Participant may elect to terminate his or her participation in the ERE Program and elect an Annuity Starting Date that is the day following his or her Separation From Service or the first day of any following month. Such election shall be made in the form and/or at such time as may be prescribed by the Plan Administrator in accordance with the provisions of the Plan governing Annuity Starting Date elections.

(b)    For purposes of determining the pension payable under the Plan to an Eligible Participant as of his or her elected Annuity Starting Date (before adjustment for payment in any optional form):

(i)    Pension Accrual Service shall be determined under the provisions of the Plan other than this Exhibit VIII as of the Eligible Participant's Separation From Service;

(ii)    The Pension Band Amount and the annual average of Supplemental Amounts shall be determined under the provisions of the Plan other than this Exhibit VIII as of the Eligible Participant's Separation From Service;

9